**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2021 JUL 22  PM 4: 04

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Civil Action No. _____

(To be supplied by the court)

Tonya McDaniel, Ashley McDaniel_____, Plaintiff's

v.

Dominium Management Services, LLC_____,

Mel Terrazas_____, Defendant(s).

*(List each named defendant on a separate line.  If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names.  The names of the defendants listed in the above caption must be identical to those contained in Section B.  Do not include addresses here.)*

---

## COMPLAINT

| NOTICE |
| --- |
| Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files.  Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number.  A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.<br><br>**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.** |

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.*

  Ashley McDaniel 14270 E 104th Ave Commerce City, Colorado 80022 Mailbox #72

(Name and complete mailing address)

  720-244-1240, ashaleyreneemcd@gmail.com

(Telephone number and e-mail address)

  Tonya Renee McDaniel 14270 E 104th Ave Commerce City, Colorado 80022 Mailbox #72

(Name and complete mailing address)

  720-244-1240, mommat2real@gmail.com

(Telephone number and e-mail address)

## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."*

Defendant 1:    14350 E 104th Ave Commerce City, Colorado 80022
                     (Name and complete mailing address)

                      763-452-3112, DOMINIUMAPARTMENTS.COM
                     (Telephone number and e-mail address if known)


Defendant 2:    Mel Terrazas, 14350 E 104th Ave Commerce City, Colorado 80022
                     (Name and complete mailing address)

                      720-259-8076,  Mel.Terrazas@dominiuminc.com
                     (Telephone number and e-mail address if known)

2

**C.      JURISDICTION**

*Identify the statutory authority that allows the court to consider your claim(s): (check one)*

_____    Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)

## Title VI of the Civil Rights Act

## The Fair Housing Act

## Section 504 of the Rehabilitation Act

## Americans with Disabilities Act

_____

3

## D. STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE: Title VI of the Civil Rights Act_____

Supporting facts:

My family consists of my mother Tonya McDaniel as the head of household suffering from a severe learning disability resulting in a diagnosis of PTSD, myself Ashley McDaniel her youngest daughter and her live-in aide, and my minor child M. McDaniel. My family has identified as black Hebrew Jews on all applications having anything to do with the North Range Crossings apartment application process on August 31st, 2018. The harassment, racism, and discrimination from staff and property management began right after moving into the North Range Crossing property. During our official lease signing, it was stated by staff members that North Range Crossings is a smoke-free property. We expressed to property management that our last property was smoke-free as well however, due to religious practice we burn various items for ritualistic reasons that would result in smoke, such as candles, sage, smudging, burning incense, spices, herbs, and oils as a form of offering and sacrifice. All of these ritualistic practices are protected by religious rights and freedoms under federal law and due to this being a HUD property. At the lease signing meeting, we explained that denying this burning practice is a

4

violation of our religious freedoms and the HUD discrimination laws because we have a
Section-8 voucher and North Range is HUD funded building. After a brief verbal exchange and
being told no, the property management conceded and finally agreed to allow us to burn our
religious sacrifices on the property. However, after this first initial adverse contact with property
management for the past 2+ years, my family has been the target of apartment management
retaliation, discrimination, harassment, false allegations, and multiple threats of eviction. Over
the years I have kept detailed emails complaining about the harassment and discrimination to the
corporate office.

On several occasions, my family has been inconvenienced and targeted by various staff
members for asserting my family's religious rights at our very first lease signing meeting. The
targeting by staff has resulted in multiple false allegations being alleged by staff members against
my family over the years to result in an eviction. After heated exchanges with staff, threats of a
lawsuit, multiple complaints, providing proof against various false allegations from staff
members, I have been able to protect my family from threats of illegal eviction up and to this
point. I have kept detailed documentation of all incidences in which my family has been the
target of discrimination, retaliation, and harassment by the North Range Crossings staff. In May
of 2019, the property management office lost an important piece of documentation on purpose
and tried to fine my family with a lease pet violations fee for $300.00, $150.00 per cat. At that
time the tactic of discrimination and racism being used by staff was the attachment of fines and
fees being placed directly to the rent to result in an eviction if the fee went unpaid. After an

investigation providing proof, my family was able to prove that we actually did hand in the

proper documentation for the cats to the office, and in fact, the documentation was withheld by

the office on purpose to cause a violation and a fine. During this same time of being accused of a

pet lease violation, our household was also being falsely accused of not complying with updated

household family member information. The second false allegation happened while the pet fee

was being disputed. North Range management falsely claimed my household was not in

compliance with CHFA the Colorado Housing Finance Authority. After my family went to the

CHFA headquarters located in downtown Denver and spoke with a CHFA supervisor directly we

were proven to have complied with all of CHFA paperwork. After we complained to CHFA

directly and due to the poor handling of documentation the office at North Range was audited by

CHFA in 2019 and discrepancies in paperwork were found internally at the North Range

Crossings Office. After my family was able to prove harassment and discrimination by North

Range staff a member from corporate named David Lepak gave us written confirmation that we

can break our lease at any time without the cost of the penalty due to this issue.

In August 2020 my family was informed during the lease renewal process that a

"mistake" was made within the office that resulted in our rent amount not being updated with

HUD for an entire year and my family was liable to pay for the year of back owed rent. Instead

of the property management realizing it was in fact their own office error and correcting the

problem within, my family had to complain to HUD through our housing case manager at

Colorado Coalition for the Homeless. After this meeting, my family began complaining to HUD

and suggesting this back rent amount was done on purpose by the property management to bring

yet another "lease violation" and false eviction. While this back rent issue was under dispute the

property management served multiple demands for compliance letters to lead to eviction because

we could not pay current rent with the back owed rent. After an investigation into the complaint,

the property waived half of the late rent fee and HUD paid the other half of the back owed rent,

and my family had to pay 3 months of back ent that had accumulated. After the incident with the

office neglect leading to unpaid rent charges, I personally formally requested through email that

Mel Terrazas the current property manager not handle any more of our documentation and

paperwork, as we felt this was a tactic done on purpose by her to result in an eviction.


At the end of last year, the property management began to send out email blasts

addressing noise complaints on the property due to residents being quarantined inside due to

covid-19. These noise-compliant emails were being sent to the entire apartment complex

residents. Up and to this point my household has never been accused of any noise complaints.

After these email blasts were sent to the entire property the property manager Mel Terrazas

began to email my family personally about a noise complaint from my unit. These noise

accusations only began from Mel after the eviction for the unpaid rent failed, and I requested she

does not handle our housing file any longer. Through email, I questioned Mel back and ask what

is the nature of the noise compliant as we have a neighbor who makes furniture and we hear

constant banging, we just know what she is doing, or was it my child's hoverboard, or the washer

and dryer. I received no reply from Mel or the office to my emails. On 9-9-2020 Mel sent another

email from the office of a noise complaint stating a loud t.v and loud walking sounds during the day. The noise ordinance hours are from 9 am to 10 pm. I requested from Mel the times of the noise and I was never met with an answer. No official demand for compliance was ever served to my door to state the nature of the noise, the length of the noise, or the time of day. Instead on 5-18-2021, my unit was served with a "notice to quit" signed by Mel herself. Mind you no demand for compliance was served to correct any behavior before the notice to quit was served. This is where racism and discrimination come into play. On the notice to quit is stated "multiple documented harassment complaints from neighboring tenants of the North Range Crossing community". After receiving this notice and going directly to the office I questioned Mel on video and asked what harassment complaints is she referring to, and if there were noise violations why were they not properly served on the unit? Mel explained that the office did not serve any official noise complaints or harassment complaints due to fear of harassment. Mel also explained that the harassment listed on the notice to quit was the "fear of harassment" and that no harassment had taken place. Harassment and the "fear" of harassment are two completely different things. The notice to quit says multiple complaints of harassment. There has never been one incident of my family ever harassing a neighbor. To say that about my household is slander and defamation character. If there was a noise complaint a proper demand for compliance should have been served from the office. However, Mel is using this as an excuse to personally get rid of "difficult tenants". Being my family consists of two black women who are stereotyped as aggressive we were not served a demand for compliance to be able to correct our behavior, instead because of racism we are deemed as harassing. The property management Mel has used

8

this as an opportunity to evict my family right after the courts reopen after the pandemic is ending. The only reason there is a fear of harassment is due to our race and skin color traits. So instead of renewing our lease at the property, Mel has served this Notice to quit to threaten and intimidate my family into moving off the property. Due to racism and discrimination and being a direct target of the office staff since the arrival to this unit I am now forced to file this complaint with HUD due to my household being on the government program section 8. I know how important my record is to my housing process and the property knows that as well. The property is discriminating against my household for paying the rent with a voucher instead of cash. I have witnessed others who are on the section 8 program also and they too get treated differently than the cash-paying tenants. The property has aimed to evict Section 8 tenants at a faster rate than those without a voucher. We stated to the office that this continued harassment is to see to make sure that my family loses our voucher. Mel claims that the notice to quit is not an "eviction" action however we have to leave the property by July 31, 2021, or an eviction will ensue. If I have the notice to quit in my file with the contents it says without a dispute I can lose my housing voucher, also if I cannot place my voucher in a certain amount of time I can lose it as well. We have been looking into moving for some time but the pandemic has set us back. We are currently on a month-to-month basis to break our lease after the first pet violation was proven to be on purpose by a since let go staff member. We have explained to the property that we plan to move regardless and refusing to renew our lease is just further harassment and discrimination. I have threatened a federal lawsuit against the property for housing discrimination and discrimination against Tonya McDaniel's disability. The threat of a lawsuit has gotten us this far

9

however I never followed through due to actions being corrected by upper management. However, this most recent notice to quit is the last straw, I am beginning the process to formally complain to HUD so that civil litigation can ensue and I have complained to all the proper channels. Mel Terrazas has used her position along with devious tactics to inconvenience my family for her own discriminatory reasons. However, the mere harassment of my family was not enough and now Mel is seeking to inconvenience my family even further with an eviction. If I have an eviction on my record I can potentially lose my voucher as well. This property has made multiple attempts to harass my family and evict my family resulting in a loss of our section 8 voucher. The property management does not harass tenants that pay rent with cash to the same degree that they do of their tenants with section 8 housing vouchers. Another tactic of discrimination and racism is the attachment of fines and fees being placed directly to the rent to result in an eviction if the fee goes unpaid. However, due to covid-19 the fines and fees were unable to be as egregious and excessive as complained of in the past. These noise complaint allegations are unfounded and are being used as a tactic to harass my family due to our religion, race, creed, and color.

After the eviction attempt failed with the back rent Mel has changed tactics and began to harass my family with false noise complaints, almost directly after the back rent issue was resolved we began getting emails of "noise issues". On May 3rd Mel sent a letter requesting that we attend an appointment to resign our lease scheduled for May 11th. We have expressed that due to our last lease signing experience with Mel that she personally did not handle any of our

10

current paperwork at this new lease signing appointment. Due to this personal request on 5-18-2021 a few days later after not attending the meeting on 5-11-2021 from the notice mailed on 5-3-2021, Mel has decided to personally serve a notice to quit with false noise complaint allegations, and false allegations of harassment. Up until 5-18-2021, there has never been a formal demand for compliance, nothing has been served about any noise being generated from this unit before we requested Mel, not handle our new lease signing. Before the notice to quit was served on 5-18-2021 Mel along with North Range has made no mention of any harassment allegations from neighbors, not through email, not orally in person, or over the phone, or in writing. Mel wanted to resign the lease on 5-11-2021, found out we did not want to resign with her and seven days later we are loud and harassing the tenants enough not to resign our lease and be evicted? My household is being subjected to this discrimination in hopes that we will have no means to protect ourselves from an illegal eviction. My family has a right to dispute these allegations against us and address our accusers. We have a right to address all allegations in this falsified notice to quit and have an opportunity to defend ourselves from bogus false claims. No police have ever been dispatched to this unit for any noise complaints or for complaints of arguing or shouting. The office has reached out multiple times to my family to resign our lease and staff has made no mention of any outstanding complaints about noise or harassment. Mel along with office staff has had ample time to inform my family of any discrepancies in our file before offering to sign a new lease. No mention of any harassment at all whatsoever before we requested a new staff member sign us. The eviction threat is being used by Mel directly as an intimidation tactic to force my family off the property with no factual legal basis. At no point and

11

time has Mel or North Range reached out to my housing counselor located at the Colorado

Coalition for the Homeless by the name of Joshua Whitney. Joshua Whitney is the point man for

any and all pertinent housing issues pertaining to our housing here at North Range. Joshua is the

housing counselor for the Coalition for the Homeless working in conjunction with the local HUD

office. Joshua is supposed to be contacted by North Range personally to handle any housing

issues that could potentially arise over a lease term. Again at no point and time was our housing

counselor ever informed of any harassment issues or excessive noise complaints that would

affect our housing status. If there was an actual noise or harassment issue property management

is supposed to reach out to our housing counselor to resolve the issues before it affects the

housing voucher status. My mother Tonya McDaniel suffers from server dyslexia which has

resulted in PTSD from the inability to complete daily tasks efficiently. Due to Tonya's disability,

she has a reasonable accommodation voucher and a live-in-aide. Property management at North

Range is aware of my mother's disability yet they have made a point to exacerbate it at every

turn. Property management along with the staff at North Range has discriminated against Tonya

McDaniels federally protected disability rights by harassing, threatening, intimidating, and

bulling her due to her race, religion, ethnicity, and disability. The outlined behavior from

property management has resulted in Tonya McDaniel suffering from panic attacks, anxiety

attacks, insomnia, paranoia, loss of appetite, stress, depression, as activation to her post-

traumatic stress disorder.

Due to the prolonged alleged noise complaints being issued by tenants along with North Range to our unit we felt it was important to show what actually constituted a noise violation and what noise level is actually permitted by law. The Colorado Noise Statute 25-12-103 - Maximum permissible noise levels are as follows

| 7:00 a.m. to | 7:00 p.m. to |
| 7:00 p.m | next 7:00 a.m. |

Zone-

| Residential | 55 db(A) | 50 db(A) |
| Commercial | 60 db(A) | 55 db(A) |
| Light industrial | 70 db(A) | 65 db(A) |
| Industrial | 80 db(A) | 75 db(A) |

My household never goes above the 50 to 65-decibel level at all at any given time knowing this is the sound barrier threshold. However, North Range Crossings has insisted on alleging disturbing the peace complaints about walking on the floor after 10 pm. It has come to my family's attention that a neighboring 2nd-floor tenant who happens to be white was having the same issues of average sounds carrying and traveling easy throughout her unit to her 1st-floor unit neighbor, the 1st-floor tenant is white as well. After speaking to both of my white 1st floor and 2nd-floor neighbors it has been made known that our two exact same situations were being handled in two very completely separate manners. Our unit has a child present around half the month due to her father having another household, my 2nd floor neighboring unit has a child the same age present home 24/7, my unit has one small cat, their unit has a large dog that barks often

even when simply passing their door. My 2nd-floor neighbor was not harassed and bombarded by noise complaint emails every time her 1st-floor neighbor complained of a simple noise violation to the office staff members. Instead, my 2nd-floor neighbor would only receive the initial noise complaint email blast sent to all tenants, warnings from the North Range office staff. After questioning the property manager Mel Terrazas she made it known that no noise complaints are on file for my 2nd-floor neighbor and no noise violations are on record for her unit from the 1st-floor tenant. However, that 1st-floor tenant was complaining to the office so much about her 2nd-floor neighbor that she was moved to a 3rd-floor unit due to the noise issue of the animal and noise traveling easily. The ongoing issue of sound traveling through the building's units is a universal structural issue, however, the following actions from property management will show how they handle the same exact issue in a discriminatory fashion within relationship to my household.

When our white 1st-floor neighbor repeatedly verbally complained on our 2nd floor white neighbor she was never prompted to file a formal written complaint by the office. Our neighboring 2nd-floor white tenant was never formally emailed a noise violation complaint after being informed of formal complaints multiple times. Instead of filing multiple unnecessary noise complaints, the 2nd-floor white tenant was informed by property management of sound complaints through a mass email sent to everyone. My 2nd floor neighbor was offered warnings and corrections. My unit was not extended this courtesy. Even after adjusting certain behaviors the noise still continued from the 2nd floor neighbor and so did the verbal complaints. However,

14

the 2nd-floor neighbor was still not officially served with a noise complaint. Management never prompted the neighbor of the 1st floor to file a written complaint. Instead, Mel Terras mediated the situation and offered either tenant to apply to move to a new unit within the same North Range Complex that was more accommodating to their needs. This option was not extended to my family or the unit beneath us. Instead, my unit was served with a notice to quit our lease before any mediation was offered by management. So in short my white neighbor was not harassed with noise complaint emails when complained about, she was able to be warned only through a mass email chain letter from the property, mediation was offered to solve the white tenants issue before an eviction action was threatened or a notice to quit was served, the 1st-floor tenant was placed in a 3rd-floor unit waitlist to help solve the issue and eventually moved to a 3rd-floor unit within the same building due to the noise issues. At no point and time was my family ever given a verbal warning about any alleged noise complaints, my family has been bombarded with false noise allegation emails repeatedly, no mediation was ever offered or extended to my family or the one beneath us for either to pick and option to move within the properties available units. My family was never offered any warnings to correct the behavior at all. Instead of being offered to move units like our white neighbor we were only threatened to leave the property entirely with an eviction. The same noise issue for two separate people resulted in an eviction threat for one but was simply met with a solution for the other. This type of behavior is discriminatory in nature and should be punishable under this federal statutes.

**D.    STATEMENT OF CLAIM(S)**

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM TWO: _____The Fair Housing Act_____

      Supporting facts:

      I hereby assert all of the same allegations put forth in count one to be used as supporting

facts in support of count two along with the following facts. The Fair Housing Act protects

people from discrimination when they are renting or buying a home, getting a mortgage, seeking

housing assistance, or engaging in other housing-related activities. Additional protections apply

to federally-assisted housing.The fair housing act was violated by the defendants when they

refused to resign a lease with the plaintiffs solely based on their religion, race, creed, color,

income status, and family status, engaged is harassment, retaliation, and bulling tactics. The

plaintiffs have a section 8 voucher which is provided by the government. The defendants have

expressed the need to harass and attempt to evict all Section 8 tenants as a means to have only

"cash-paying" tenants on the property. When a family is on section 8 the payments come from the

government at a later date than all the cash-paying tenants. The defendants are attempting to

bridge the gap between section 8 tenants and cash tenants by harassing section 8 tenants until they

move voluntarily or by constantly threatening eviction on the section 8 tenants. Threatening an

eviction on a section 8 tenant is threatening the entire voucher itself, which can leave the entire

household homeless at no fault of their own.  The fair housing act was violated when the defendants began to partake in multiple discriminatory actions against the plaintiffs deliberately to take away the enjoyment of real property. The fair housing act was violated when the defendants made up false defamatory allegations in order to prevent the leasing of real property to the plaintiff's. The false defamatory allegations were that of the plaintiffs making threats and harassment to neighbors. These allegations were only alleged by property management for racially charged discriminatory reasons. Being that the plaintiff's household is made up of black women the false narrative and stereotype of aggression was placed on my family without having a single incident or interaction with the neighbors. Placing something defamatory and false in the plaintiff's housing file is a deliberate act of discrimination in order to provoke the false narrative to not lease the property to the plaintiffs. The plaintiffs take these allegations seriously as these false allegations are being used to discriminate against the plaintiffs and garnish a false eviction. The plaintiffs have a right to enjoy and lease real property without the fear of discrimination and retaliation.

## D.   STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).*

CLAIM THREE:   ____Americans with Disabilities Act_____

     Supporting facts:

The Congress finds that

(1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;

(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

(5) individuals with disabilities continually encounter various forms of discrimination, including

outright intentional exclusion, the discriminatory effects of architectural, transportation, and

communication barriers, overprotective rules and policies, failure to make modifications to

existing facilities and practices, exclusionary qualification standards and criteria, segregation, and

relegation to lesser services, programs, activities, benefits, jobs, or other opportunities;

(6) census data, national polls, and other studies have documented that people with disabilities, as

a group, occupy an inferior status in our society, and are severely disadvantaged socially,

vocationally, economically, and educationally;

(7) the Nation's proper goals regarding individuals with disabilities are to assure equality of

opportunity, full participation, independent living, and economic self-sufficiency for such

individuals; and

(8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people

with disabilities the opportunity to compete on an equal basis and to pursue those opportunities

for which our free society is justifiably famous, and costs the United States billions of dollars in

unnecessary expenses resulting from dependency and non-productivity.


Due to the disability of Tonya McDaniel, she has been diagnosed with a severe case of

post-traumatic stress disorder as a result of various life incidents that caused irreparable harm to

her mentally and physically. The defendants are aware of the disability of the plaintiff, but instead

of accommodating her, they are using it to discriminate against her. Mel Terrazas has referred to

the plaintiff Tonya McDaniel as a "difficult tenant" based on her disability alone. This term

"difficult tenant" in and of itself is discriminatory as Tonya McDaniel is suffering from a learning disability that comes off as being socially awkward. Tonya suffers from paranoia and an array of other symptoms brought on by outside stress and agitations. Due to the disability of Tonya, it is imperative that outside added stressors must be kept as minimal as possible. Discrimination against Tonya has occurred through various means of lack of proper communication from staff, such as staff misplacing important documents on purpose and blaming the disability of the plaintiff as the reason for the error, and allotting various punishments due to their bias against her disability. The defendants have not protected the rights of Tonya as a tenant with a disability in a HUD property. Due to the lack of protection from property management, and in fact, property management making the plaintiff a direct target due to her disability. The plaintiff in this case has been forced to disclose her private medical diagnosis and information to her bottom floor neighbors to help self mediate the situation property management has let get out of control. This personal information had to be divulged to the neighbors due to harassment from the neighbors and property management about simple noises heard through the walls not noise complaints or disturbing the peace. These simple noise heard would be the result of a dish falling, the t.v being on, walking on the floor, or the washer and dryer running , etc. My mother will have sleepless nights and the only thing that calms her is a movie or an arts and craft activity. Due to the disability of the plaintiff she has a legal reasonable accommodation added to her Section 8 voucher for an art room in which she is actively working on therapeutic arts and crafts, including sculptures, clay molds, and vases. The noises that are being heard are a direct result of the disability of the plaintiff. Multiple times the plaintiffs have expressed to the office that the "noise

20

complaints" being alleged are being taken out of context as no real loud activities take place on a

daily basis. The fact of the matter is that the building is made where sound carries and travels

easily. Any type of sound made can be heard through the walls but it is not being made

deliberately to cause a disturbance. Due to the discriminatory actions of property management

they refused to mediate our situation as they did with other tenants without a disability we were

forced to write a letter stating that the noises heard are that from Tonya's therapeutic activities

taking place. Without the help from property management as the professional bridge between

tenants the property management actually worked as an instigator to help provoke a toxic

interaction between neighbors instead of solving it. Dominium is creating an environment to

exacerbate the disability of the plaintiff until she feels threatened and intimidated enough to

simply move off the property.

**D.    STATEMENT OF CLAIM(S)**
*State clearly and concisely every claim that you are asserting in this action.  For each claim,
specify the right that allegedly has been violated and state all facts that support your claim,
including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s)
involved in each claim, and the specific facts that show how each person was involved in each
claim.  You do not need to cite specific legal cases to support your claim(s).*

CLAIM FOUR:   ___Section 504 of the Rehabilitation Act_____

   Supporting facts:

I hereby assert all of the same allegations put forth in count three to be used as supporting facts in

support of count four along with the following facts. Section 504 of the 1973 Rehabilitation Act

is the first disability civil rights law to be enacted in the United States. It prohibits discrimination

against people with disabilities in programs that receive federal financial assistance. The real

property at the question in the center of this case is a HUD building also known as the U.S.

Department of Housing and Urban Development. The HUD program is a federally funded

program that allows the private third-party owner to participate in the building of properties to

cater to low-income families and families with disabilities, and other housing programs such as

Section 8. Being that the defendant Dominium is a part of a program that receives federal

assistance it is illegal for any representative to engage in any discriminatory actions against

someone with disabilities. In this case, the defendant through its representatives discriminated

against the plaintiffs by imposing more restrictions on the plaintiffs than their non disable

counterparts. Defendants discriminated against the plaintiffs in the refusal to lease the property

due to issues with the disability of Tonya McDaniel. The defendant's discriminated against the

plaintiff's disability when behavioral bias allegations were made against the plaintiffs that she

was "threatening" simply due to a plaintiff having a disability. Just because you are diagnosed

with a disability does not give you the right to falsely accuse someone of being threatening when

no threatening interaction ever occurred.

**E.      REQUEST FOR RELIEF**

*State the relief you are requesting or what you want the court to do.  If additional space is needed to identify the relief you are requesting, use extra paper to request relief.  Please indicate that additional paper is attached and label the additional pages regarding relief as "E. REQUEST FOR RELIEF."*

At this time the plaintiff's respectfully pray for the court to grant the following damages as a relief: $1,000,000 for exemplary damages to be award to the victims due to the conduct of the defendant's who caused the victims harm in a willfully malicious, oppressive, fraudulent, wanton, or grossly reckless manner. For punitive damages to be imposed so that the plaintiff will no longer engage in the illegal behavior alleged in this case in the future, to add more regulations in place for staff to properly mediate with black tenants and tenants with disabilities. Injunctive relief to clear the adverse Section 8 housing record and the North Range Crossing housing file of any and all false claims, disability bias, and discriminatory statements. $1,000,000 for moral damages including physical suffering, mental anguish, fright, serious anxiety, besmirched reputation, wounded feelings, moral shocks, social humiliation, and depression. $1,000,000 in compensatory damages as a result of severe emotional distress.

## F.   PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.


_____
(Plaintiff's signature)

_____
(Date)                7-22-2021


_____
(Plaintiff's signature)

_____
(Date)                7-22-2021


24