## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01997-RMR-NYW

TONYA MCDANIEL and
ASHLEY MCDANIEL,

     Plaintiffs,

v.

DOMINIUM MANAGEMENT SERVICES, LLC and
MEL TERRAZAS,

     Defendants.

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

---

Defendants pursuant to Fed. R. Civ. P. 12(b)(6) hereby move to dismiss the Amended

Complaint [ECF 10] for the following reasons:[1]

### STATEMENT OF FACTS

The following are facts drawn from the Amended Complaint and only presumed true on

this Motion, for the reasons detailed in the Standard of Review section below, to the extent they

are alleged in a specific, non-conclusory, and non-speculative manner.

On August 31, 2018, Plaintiffs Tonya and Ashley McDaniel (the "McDaniels" or

"Plaintiffs") started the application process to rent a unit in the multi-tenant housing complex

called North Range Crossing ("NRC") managed by Defendant Dominium Management Services,

---

[1]**CERTIFICATE OF CONFERRAL**: Pursuant to D.C.COLO.L.CivR 7.1(b), no conferral between the parties is required before the filing of this Rule 12 Motion, and no such conferral is required under the RMR Practice Standards posted on the Court's website.

LLC ("Dominium"). *See* [ECF 10] at 4 [¶1], 15 [¶¶9-10], 16 [¶¶2-4].[2] The McDaniels moved into an NRC dwelling on an unidentified date and resided there for over two years. *See* [ECF 10] at 4-5 [¶¶1, 5]. Defendant Mel Terrazas ("Terrazas") was a Dominium "representative" and engaged in that capacity, for the company, in certain property management functions for the NRC. *See id.* at 6-7 [¶10], 14 [¶¶3, 5], 16 [¶5], 17 [¶6].

During the NRC unit application process, the McDaniels notified unidentified Dominium representatives they identified as "Black Hebrew Jews." *See* [ECF 10] at 4[¶1]. Defendants also at some undetermined point, in some unidentified fashion, became "aware" that Tonya McDaniel was diagnosed with multiple disabilities. *See id.* at 13-14 [¶¶1-2]. While signing their lease for their unit, the McDaniels sought an accommodation of the NRC's "smoke free property" policy by informing unidentified members of "property management" of their "race and religious practices" involving regular burning of items within the unit that they "explained" was required to be granted as result of their' "religious freedoms and the HUD discrimination laws …." *See id.* at 5 [¶¶3, 4]. Unidentified Dominium staff initially told the McDaniels their request could not be granted, but "[a]fter a brief verbal exchange," staff granted the request. *See id.* at 5 [¶5].

Following the NRC unit lease signing, the McDaniels claim, in repeated conclusory fashion, to have been continuing "target[s]" by unidentified Dominium staff for, and thereby subject to, discrimination, retaliation, harassment, and bullying. *See* [ECF 10] at 6 [¶¶2, 5], 7[¶7],

---

[2] This and other facts stated within the Amended Complaint relied on in this Motion were alleged exclusively in support of claims of Tonya McDaniel that the Court dismissed in its screening of the complaint under D.C.COLO.LCivR 8.1(a). *See* [ECF 8-9]. However, consistent with the *pro se* pleading liberal construction rule discussed in the Standard of Review section below, Defendants argue on this Motion that the Amended Complaint's claims remaining after screening are implausibly plead considering *all* factual matter alleged in the pleading and even if some matter is only alleged in support of a dismissed claim.

9 [¶2], 10-11 [¶10]. In support, the Amended Complaint asserts that Terrazas and unidentified Dominium staff treated a white neighbor of the McDaniels more favorably than the McDaniels with respect to neighbor noise complaints against both on the "same noise issue." *See* [ECF 10] at 6-7 [¶¶8-13], 14-15 [¶¶6-8]. That "same noise issue" was "simple noise" arising from typical residential living in both units that purportedly did not violate the applicable noise rules and policies. *See id.* In response to receiving repeated complaints against the McDaniels, Dominium staff "bombarded" the McDaniels with "noise complaint emails" conveying the complaints' allegations and without anyone from Dominium prior providing either Plaintiff a verbal warning. *See id.* Eventually, Dominium provided the McDaniels notice to quit the apartment at the end of their lease term based on the noise complaints against them without, prior, anyone from Dominium offering them mediation or a move to a different NRC rental unit to resolve the complaints against them. *See id.* On the other hand, in response to receiving complaints against the McDaniels' white neighbor for the "same noise issue," Dominium staff did not directly send the neighbor formal noise complaints based thereon or prompted the complainant to file a formal complaint against the neighbor. *See id.* Instead, Dominium staff provided written notification of the complaints against the neighbor through a mass email sent by an unidentified staff member to all tenants, after the accused neighbor received prior verbal warnings from staff. *See id.* Terrazas eventually on Dominium's behalf successfully mediated the dispute by offering these tenants the opportunity to move to a different unit. *See id.*

The Amended Complaint then alleges that Defendants ultimately decided not to renew McDaniels' lease for an NRC unit based on both the neighbor noise complaints and claimed false allegations of threatening and harassing neighbors made against the McDaniels. *See* [ECF 10] at

6 [¶7], 9 [¶2].[3] Terrazas and other unidentified Dominium staff purportedly "made up false defamatory allegations" about the McDaniels "making threats and harassment to neighbors" to justify the McDaniels not being leased a unit and to "garnish [their] false eviction," which the staff placed in the McDaniels' "housing file" for that purpose. *See* [ECF 10] at 10 [¶¶7-10]. Further, prior to the non-renewal, "Terrazas referred to … Tonya McDaniel as a 'difficult tenant' based on [her] disability," *see* [ECF 10] at 14 [¶3], with Defendants having "misplace[ed] important documents on purpose and blaming [Tonya McDaniel's] disability," "allott[ed] unidentified "various punishments" against her on account of her disability, and "impos[ed] more restrictions" on her than other unidentified non-disabled neighbors. *See* [ECF 10] at 14 [¶4], 16 [¶5].

## PROCEDURAL HISTORY

On July 22, 2021, the McDaniels filed a *pro se* Complaint that asserted discrimination and retaliation claims based on differential/disparate treatment theories against the Defendants under, amongst other statutes, Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*; and the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. § 3601 *et seq. See* [ECF 1] at 3-22. On October 12, 2021, the Court subsequently ordered the McDaniels to file an amended complaint within 30 days upon, per D.C.COLO.LCivR 8.1(a), summarily reviewing and dismissing the Complaint after the Court identified certain pleading deficiencies therein. *See* [ECF 8] at 1; [ECF 9] at 1-3, 7-8. On November 12, 2021, Plaintiffs filed the *pro se* Amended Complaint, which continued all their previously proposed claims against the Defendants. *See* [ECF 10] at 3. On December 23, 2012, the Court upon magistrate recommendation, that no Plaintiff subsequently

---

[3] At the same time, based on the facts alleged, the McDaniels assert that the failure to renew was due to their disability, religion, race, creed, color, family status, Section 8 status, income status, and their "asserting their civil rights." *See* [ECF 10]. at 5 [¶¶5-6], 9-11 [¶¶2-4, 11], 15 [¶10].

objected to, ordered only the Amended Complaint's Title VI and FHA claims to proceed. *See* [ECF 12] at 1; [ECF 13] at 1, 3-4; [ECF 14] at 1-2. Now, Defendants file this Motion seeking this Court's review thereof under Rule 12(b)(6).

<u>**STANDARD OF REVIEW**</u>

On a motion under Rule 12(b)(6), to withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553, 570 (2007)). In turn, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Either the entire complaint or a specific asserted claim therein is subject to dismissal "with prejudice," with an opportunity for the plaintiff to replead deemed futile, when "no amendment could cure the defect[s]" the court relies on to order dismissal. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001).

Assessing an entire complaint's facial plausibility considers whether the factual material stated within the complaint is sufficient to have "nudged [the plaintiff's] claims" asserted by complaint "across the line from conceivable to plausible…." *Twombly*, 550 U.S. at 570. In this analysis, *only* specific, non-conclusory, and non-speculative alleged facts are presumed true and considered. *Id.* at 555-56; *Iqbal* at 678-80. Any allegation that constitutes a conclusory, bare, or conjectural statement of law, fact, or application of law to fact must be disregarded in the analysis. *Id*. Then, a claim is only plausibly alleged when the complaint's alleged specific, non-generalized facts "enough to raise a right to relief above the speculative level…." *Twombly*, 550 U.S. at 555-

56 (citations omitted). *see, e.g., Rohwedder v. Rocky Mt. Pies, LLC*, 2021 U.S. App. LEXIS 24786, at *4 (10th Cir. 2021) (unpublished) (affirming dismissal of *pro se* discrimination claims plead through "broad assertions of legal bases for … claims and generalized allegations" but without "specific facts [alleged] giving rise to these claims").  "The nature and specificity of the allegations required to state a plausible claim for relief," rather than a speculative one, "will vary based on context." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). When "a complaint" at best "pleads facts that are 'merely consistent' with a defendant's liability" on a claim, "it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). If the specific, non-conclusory, and non-speculative factual material contained in the complaint "do[es] not permit the court to infer more than the mere possibility" of liability by a defendant on an asserted claim, in relation to <u>any</u> required *prima facie* element thereof, then the claim must be dismissed. *See Davis v. BAE Sys. Tech. Sols. & Servs.*, 764 F. App'x 741, 743-47 (10th Cir. 2019) (unpublished).

Now, a complaint filed by a *pro se* plaintiff requires a liberal construction. But, a plaintiff's *pro se* status "<u>does not relieve</u>" them of "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (emphasis added); *see also Chase v. Divine*, 543 F. App'x 767, 769 (10th Cir. 2013) (unpublished) (*pro se* plaintiff not "excuse[d] … from complying with the pleading requirements of *Iqbal*.").

## ARGUMENT

### I.  Individual Liability is Not Legally Cognizable or is Implausibly Plead

Title VI is legislation enacted pursuant to Congress' spending clause power that conditions a program or activity's receipt of federal funds on compliance with the statute's discrimination

ban. *See* 42 U.S.C. §§ 2000d & 2000d-1; *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) The 10th Circuit along with the consensus of sister circuits have held that such an exercise of congressional power does "not authorize suits against a person in anything other than an official or governmental capacity, for it is only in that capacity that the funds are received." *Wood v. Yordy*, 753 F.3d 899, 903-04 (9th Cir. 2014) (collecting authority); *see also* 42 U.S.C. § 2000d-4a (defining "program or activity" to mean the operations of entities/instrumentalities, not individuals). The McDaniels' Title VI claims brought against Terrazas must accordingly be dismissed with prejudice. *See also Price ex rel. Price v. La. Dep't of Educ.*, 329 F. App'x 559, 561 (5th Cir. 2009) (unpublished); *Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003); *Mwabira-Simera v. Howard Univ.*, 692 F. Supp. 2d 65, 70 (D.D.C. 2010).

Then, while case law recognizes individual liability on FHA claims, an individual is only personally liable on them when they had the power and authority to directly effectuate the challenged conduct and, in fact, so exercised that power and authority. *See Meadowbriar Home for Children Inc. v. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996); *Tuggles v. City of Antioch*, Case No. C08-0194 JCS, 2009 U.S. Dist. LEXIS 92495, at *62-64 (N.D. Cal. Oct. 9, 2009). When a worker is claimed liable under the FHA for the challenged conduct of their employer, there must be specific facts alleged rendering plausible the worker exercised discretionary power and authority on behalf of the employer in a meaningful and decisive manner and thereby directly caused that employer's challenged conduct. *See id.; see also Meyer v. Holley,* 537 U.S. 280, 286, 291 (2003). That is not plausibly alleged by specific facts, at best, permitting the reasonable inference the person had the "right to control" the worker's work, for that does not on its own establish under common law agency doctrine a legally sufficient work relationship by which the worker could

have exercised power and authority to directly cause their employer's challenged conduct. *See Meyer,* 537 U.S. at 286, 291. Here, based on her sketchily developed Dominium role and duties, the Amended Complaint seeks to hold Terrazas liable for her work for Dominium. Yet Terrazas' own and the other Dominium staff's purported misconduct is alleged in a vague, overgeneralized, speculative, and conclusory fashion.[4] There are also no specific facts alleged making it reasonable to infer that Terrazas exercised discretionary power and authority on behalf of Dominium or over other Dominium staff in a manner directly causing the alleged adverse acts against the McDaniels. *See* [ECF 10] at 5-7 [¶¶5-13], 9-10 [¶¶2-11], 14-15 [¶¶2-10], 16 [¶¶5-7]. The Amended Complaint's FHA claim against Terrazas should accordingly be dismissed.[5]

## II.   No Circumstances Sufficiently Alleged Raising Plausible Inference of the Illicit Intent of a Defendant Having Caused the Alleged Adverse Acts.

Just like with respect to Title VII discrimination and retaliation claims proceeding on a differential/disparate treatment theory, an essential element of the *prima face* case of the same claims brought under the Title VI and the FHA is that the alleged adverse action is taken against the plaintiff under circumstances raising a plausible inference that illicit discriminatory or retaliatory intent of a defendant caused the adverse action. *See Khalik,* 671 F.3d at 1192-94; *Davis,*

---

[4] For, example, there are no specific facts asserted within the Amended Complaint providing necessary context for and developing the what, when, where, and how of Terrazas' and other staff's conduct relative to the non-renewal of the McDaniels' NRC unit lease and Defendants' purported fabrication of complaints against them, purposeful misplacement of significant unidentified records and imposition of unidentified "various punishments," "more restrictions," and other "discriminatory behavior" on them. *See* [ECF 10] at 9-10 [¶¶2-11], 14-15 [¶¶2-10], 16 [¶¶5-7].

[5] While it is not clear whether the Amended Complaint names Terrazas as a party in her official capacity as a Dominium representative, to the extent the Court so construes it, such official capacity claims should be dismissed with prejudice as duplicative of the same claims directly brought against Dominium. *See, e.g., Andrews v. Eaton Metal Prods.*, Civ. Action No. 20-cv-00176-PAB-NYW, 2020 U.S. Dist. LEXIS 181828, at *11 (D. Colo. Sept. 8, 2020), *adopted by* 2020 U.S. Dist. LEXIS 180271 (D. Colo. Sept. 30, 2020).

764 F. App'x at 744-47; *see also Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*, 685 F.3d 917, 919-23 (10th Cir. 2012) (applying Title VII proof scheme to FHA discrimination claims); *Bryant v. Indep. Sch. Dist. No. I-38,* 334 F.3d 928, 930 n.1 (10th Cir. 2003) ("Courts often use Title VII proof scheme for Title VI claims"). Here, there are multiple pleading defects in the Amended Complaint's apparent attempt to establish such circumstances for the alleged targeting and differential treatment. While the McDaniels' religion, creed, gender, familial status, and disabilities are cognizable FHA protected classes, they are not under Title VI, and consequently all such Title VI discrimination claims plead cannot survive this Motion. *Compare* 42 U.S.C. §§ 3604(a)-(f), 3605(a), & 3606 *with* 42 U.S.C. § 2000d; *see* [ECF 10] at 9-11 [¶¶2, 4, 11], 14-15 [¶¶2-10], 16-17 [¶¶4-7].[6] The Amended Complaint further admits to purported animus of the Defendants toward their Section 8 voucher recipient and income statuses as the real reason for the alleged adverse acts taken against them, *see* [ECF 10] at 9[¶3], yet neither are protected classes that Title VI or the FHA prohibits discrimination based on. *See* 42 U.S.C. §§ 2000d, 3604(a)-f, 3605(a), 3606, *White Oak Prop. Dev., LLC v. Wash. Twp.*, Case No. 1:07cv595, 2009 U.S. Dist. LEXIS 29347, at *24, 2009 WL 961175 (S.D. Ohio Apr. 7, 2009). The Amended Complaint's admission that non-illicit bias is behind the alleged acts against the McDaniels renders implausibly plead the contradictory allegations on Defendants' illicit intent behind the adverse acts. *See Iqbal*, 556 U.S. at 681-82 (holding a complaint implausibly alleged discrimination when specifically alleged facts did not foreclose non-illicit discriminatory intent behind the challenged adverse acts); *Petzschke v. Century Aluminum Co.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (in assessing a complaint

---

[6] The Amended Complaint also contradictorily alleges the failure to renew the lease was "entirely due to the [McDaniels'] race" and, at the same time, "due to [Tonya McDaniel's] disability …." *See id*. at 6 [¶7], 15 [¶10].

under *Iqbal/Twombly*, when the complaint presents "two possible explanation, only one which can be true and only one which results in liability," there must be specific facts alleged "tending to exclude the possibility that the alternative explanation is true … in order to render plaintiffs' allegations plausible…."); *see, e.g., Triestman v. McGinty*, 1:16-cv-1403 (GLS/CFH), 2018 U.S. Dist. LEXIS 144823, at *3 n.4, 2018 WL 4078262 (N.D.N.Y. Aug. 27, 2018).

Even with these contradictions put aside, there are no specific facts stated within the Amended Complaint sufficiently developing circumstances plausibly raising the inference that any Defendant held illicit discriminatory or retaliatory intent under Title VI or the FHA toward the McDaniels that the Defendant acted upon in a manner directly resulting in the alleged adverse acts against the McDaniels. *See Cinnamon Hills*, 685 F.3d at 921-22; *McGowan v. Eufala*, 472 F.3d 736, 746-47 (10th Cir. 2006). The Amended Complaint is heavily reliant instead on impermissible conclusion and sheer speculation. *See* [ECF 10] at 4-7 [¶¶2, 5-13], 9-11 [¶¶2-4, 6-8, 10-11], 14-15 [¶¶3-10], 16-17 [¶¶5-7]). The Amended Complaint undermines the plausibility of their allegations of illicit intent by apparently and conclusorily invoking the McDaniels "asserting their civil rights" and every conceivable protected class under both statutes as all being behind the alleged adverse acts against them. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019). Indeed, the Amended Complaint's factual allegations focus predominantly on the McDaniels' shared race, Tonya McDaniel's alleged disabilities, and conclusorily and vaguely alleged neighbor comparators who are white or non-disabled. *See id.* at 6 [¶¶7-13], 10 [¶8], 14-15 [¶¶2-10], 16-17 [¶¶5-7]. In that focus, the Amended Complaint makes an apparent, speculative leap of logic that simply because white or non-disabled comparators were treated differently than the McDaniels, the Defendants acted upon illicit intent in that differential treatment. *See id.* at 6 [¶¶8-13], 15 [¶8],

16-17 [¶¶5-7]. A plausible inference of illicit discriminatory intent is not raised by just alleging the Defendants treated a white or non-disabled neighbor of the McDaniels more favorably than the black McDaniel family with a disabled family member. *See Bekkem*, 915 F.3d at 1274-75; *Ghareeb v. Bd. of Trs. at the Univ. of N. Colo.*, 849 F. App'x 746, 749-50 (10th Cir. 2021) (unpublished). There is simply no plausible inference on the other specifically alleged circumstances of Defendants' alleged targeting and differential treatment of the McDaniels that either Defendant held and acted on illicit Title VI/FHA discriminatory or retaliatory intent toward the McDaniels that caused the alleged misconduct. *See also Khalik,* 671 F.3d at 1193-94; *Davis*, 764 F. App'x at 744-47. The grant of the "smoking" accommodation request after initial brief pushback by Dominium staff does not reasonably infer such illicit intent. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 359 (6th Cir. 2015).[7] The Amended Complaint is silent on the procedural irregularity under applicable Dominium policy or custom of the alleged disparate treatment of the McDaniels. *See Ghareeb*, 849 F. App'x at 749-50. The stray, isolated alleged remark by Terrazas that Tonya McDaniel was a "difficult tenant" on its face does not reasonably infer animus toward those disabilities or any other Title VI/FHA protected class, and it amounts to sheer speculation to draw such an inference on the specifically alleged circumstances and without alleged context for the remark.[8] The causal connection between the only specifically alleged protected activity of the

---

[7] Also, while the accommodation request allegedly pushed-back on only has a discernible link, as alleged, to accommodating racial and religious practices, not a limitation arising from a disability, *see id.* at 5 [¶¶3-5], Title VI by its plain language does not impose on Dominium an accommodation obligation in a federally funded program or activity and the FHA imposes only a fair housing accommodation obligation for disabilities. *See* 42 U.S.C. §§ 2000d, 3604(f).

[8] This is particularly so because the Amended Complaint does not set forth specific facts, as discussed in Section I, *supra*, rendering plausible that Terrazas exercised any decision-making power and authority on behalf of Dominium that caused the challenged adverse acts. *See Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir. 1995) (citation omitted).

McDaniels, i.e., their accommodation requests,[9] and the alleged adverse acts are not plausibly alleged on specific facts and overly attenuated relative to the apparent timing of all that activity at the outset of the McDaniels' over two-year NRC rental. *See McGowan*, 472 F.3d at 744; *Anderson v. Coors Brewing, Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).[10] There are simply no specifically alleged facts plausibly supporting that either Defendant acted upon illicit Title VI/FHA animus and thereby caused the alleged disparate/differential treatment of the McDaniels. Accordingly, *Iqbal/Twombly* facial plausibility analysis requires the Amended Complaint be dismissed for failure to plausibly allege a requisite Title VI/FHA *prima facie* claim element.

### III.   No Plausibly Alleged Materially Adverse Acts have been Pled

A required *prima facie* element of the Title VI and FHA claims brought by the Amended Complaint is the taking of a <u>materially</u> adverse action against a plaintiff. *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1028-29 (10th Cir. 2012); *see also Cinnamon Hills*, 685 F.3d at 919-22; *Bryant*, 334 F.3d at 930 n.1. Materiality of the action is assessed on "a case-by-case approach" through examination of the "unique factors relevant" to the at-issue housing program or activity. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998). Here, that is the rental of a dwelling in a multi-tenant housing complex. *See, e.g., Conlin v. Law Offices of Kirk A.*

---

[9] This Motion assumes only for the sake of argument that their accommodation requests are sufficiently alleged as activity protected from retaliation under the FHA. However, it is not plausibly alleged Title VI protected activity because there are no specific facts alleged reasonably suggesting a tenant would reasonably believe they have right to the McDaniels' requested accommodations in federally funded housing programs or activities and when there is no such Title VI right. *See Reznik v. Incontact Inc.*, 2021 U.S. App. LEXIS 35512, at *9-10 (10th Cir. 2021); 42 U.S.C. § 2000d.

[10] The Amended Complaint fails to identify the date of McDaniels' initial notice of the non-renewal, *see* [ECF 10] at 6-7 [¶¶7, 11], 9 [¶2], but the initial Complaint alleged the McDaniels received notice over 2 ½ years from their initial accommodation request. *See* [ECF 1] at 4-5, 8.

*Cullimore, LLC*, Case No. 2:17-cv-1213-TC-DBP, 2020 U.S. Dist. LEXIS 126363, at \*29-32, \*42-44, 2020 WL 4015731 (D. Utah Jul. 16, 2020). For there to be a material adverse action sufficiently plead on the discrimination claims, there must be specific facts beyond conclusion and speculation alleged plausibly suggesting an objectively reasonable person would find the McDaniels were subject to a significant adverse change in or a significant denial of a housing benefit, privilege, or opportunity in their NRC unit rental. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). On the retaliation claims, there must be the same set of facts alleged plausibly suggesting an objectively reasonable person would have been deterred from engaging in the alleged activity protected from retaliation under Title VI and the FHA if that person had known, prior to engaging in that activity, they would be subject to that adverse action. *See McGowan*, 472 F.3d at 742-43. And specifically on the FHA retaliation claim, due to the FHA's plain language, the alleged adverse action must more narrowly plausibly amount to coercion, threats, or intimidation of the plaintiff or interference with the plaintiff's exercise of their fair housing rights. *See Conlin*, 2020 U.S. Dist. LEXIS 126363 at \*42-44. Ultimately, no matter the claim, a material adverse action is only sufficiently alleged if the specific facts allow a reasonable inference the alleged adverse acts were objectively more than "petty slights, minor annoyances, [a] simple lack of good manners," or another "trivial harm[]." *See Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006); *see also EEOC v. C.R Eng., Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011).

Putting aside Dominium's failure to renew the McDaniels' lease, the Amended Complaint appears to maintain implausible adverse actions reliant on targeting, bullying, and differential treatment. In reference to the asserted more favorable treatment of the McDaniels' white neighbor over the McDaniels with respect to the "same" noise complaints, the Amended Complaint does

not contain specific facts providing the timing, amount, and manner of the allegedly "same" complaints and the nature, timing, amount, and manner of the alleged "same" noise emanating from each unit that the complaints put at-issues, but rather, describes both the complaints and noise in conclusory, overgeneralized, and conjectural fashion. *See* [ECF 10] at 6-7 [¶¶8-13], 14-15 [¶¶6-8]. There is even less alleged to support the similarly situated nature of the unidentified non-disabled neighbors allegedly treated more favorably by Defendants than the disabled Tonya McDaniel. *See* [ECF 10] at 16 [¶¶5-7]. The Amended Complaint consequently insufficiently alleges how the McDaniels and their white and non-disabled neighbors were, at the time, similarly situated renters in all material respects, including having engaged in comparably serious complained-of conduct by neighbors. *See Bekkem*, 915 F.3d at 1274-75; *Khalik,* 671 F.3d at 1193-94, *Lucero v. Sandia Corp.*, Civ. No. 09-908 JH/WDS, 2011 U.S. Dist. LEXIS 21863, at *14-15 (D.N.M. Jan. 3, 2011), *aff'd* 495 F. App'x 903, 909-12 (10th Cir. 2012) (unpublished); *see also McGowan,* 472 F.3d at 745; *Cinnamon Hills*, 685 F.3d at 920-21.

The other alleged instances of targeting, bullying, and differential treatment of the McDaniels are similarly set forth in the Amended Complaint in overgeneralized, speculative, and conclusory fashion *See id.* at 5-6 [¶¶2-7], 9-10 [¶¶2-11], 14-15 [¶¶2-10]. The Amended Complaint does not sufficiently develop the nature, amount, timing, manner, and overall context of the alleged fabricated complaints of "threats and harassment" claimed alongside the noise complaints to justify the failure to renew the McDaniels' NRC lease. *See id*. at 6-7 [¶¶7-11], 10 [¶¶7-10]. Nowhere in the Amended Complaint is the alleged "misplacement of important documents," "allotted punishments," and "more restrictions" identified and the who, what, when, where, and how that happened, and their overall context, sufficiently developed with specific facts. *See id.* at

14 [¶¶4-5], 16 [¶5]. The alleged reference to Tonya McDaniel by Terrazas "as a 'difficult tenant' based on [Ms. McDaniel's] disability alone" and the initial push-back alleged by Dominium staff on the McDaniels' granted accommodation request are both alleged in the same vague, overly general, conjectural, and conclusory fashion. *See id.* at 5 [¶¶2-5], 14 [¶3].[11] At bottom, despite what the above cited case-law requires to plausibly allege a *prima facie* case on Title VI and FHA claims, the Amended Complaint does not plausibly allege any of this purported misconduct under that precedent's articulated governing standards for a materially adverse action. Even viewed as a whole, the allegations contained in the Amended Complaint do not plausibly allege actionable harassment under Title VI or the FHA, i.e., the McDaniels being subjected by the Defendants to conduct so severe, pervasive, and objectively offensive that it deprived them of a federally funded housing benefit, privilege, or opportunity *See Bryant*, 334 F.3d at 934 (applying same standard to federal funded educational benefits, privileges, and opportunities).

Accordingly, the Title VI and FHA claims based on these alleged adverse actions must be dismissed as implausibly plead.

## **<u>CONCLUSION</u>**

Based on the foregoing, Defendants' Motion to Dismiss must be granted and the Amended Complaint should be dismissed in its entirety.

---

[11] Moreover, the initial push-back alleged on Tonya McDaniel's accommodation request at the outset of Plaintiffs renting the NRC unit, *see id.* at 5 [¶¶3-5], "could have interfered" with that activity but "did not have the [purported] desired effect." *See Conlin*, 2020 U.S. Dist. LEXIS 126363 at *42-44 (no adverse action on an FHA retaliation claim for alleged attempted interference in granted fair housing disability accommodation).

Dated this 4th day of February 2022.

                                      **ROBINSON & HENRY, P.C.**

                                      s/Daniel A. Jacobs

                                      Daniel A. Jacobs, Esq.
                                      Eric J. Neeper, Esq.
                                      1805 Shea Center Drive
                                      Highlands Ranch, Colorado
                                      Telephone: (303) 688-0944
                                      Facsimile: (303) 470-0620
                                      E-mail:  daniel.jacobs@robinsonandhenry.com
                                      eric@robinsonandhenry.com
                                      *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of February 2022, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** was filed electronically via the CM/ECF system and a copy of the foregoing will be served and mailed, via email and U.S. Mail at the address on currently on file with the Court, postage prepaid, to the *pro se* Plaintiffs, as follows:

Ashley McDaniel
14270 East 104th Avenue
Mailbox #72
Commerce City, CO 80022
Email: ashaleyreneemcd@gmail.com

Tonya McDaniel
14270 East 104th Avenue
Mailbox #72
Commerce City, CO 80022
Email: mommat2real@gmail.com

Additionally, pursuant to D.C.COLO.LCivR 7.1(e), all unpublished citations identified in the above Motion to Dismiss are provided to *pro se* Plaintiffs, electronically and via U.S. Mail, postage prepaid, to the addresses indicated above.

**ROBINSON & HENRY, P.C.**

s/Joyce M. Vigil
Joyce M. Vigil | Senior Paralegal