**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-01997-RMR-NYW

TONYA MCDANIEL and
ASHLEY MCDANIEL,

      Plaintiffs,

v.

DOMINIUM MANAGEMENT SERVICES, LLC and
MEL TERRAZAS,

      Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

    This matter is before the court on Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion" or "Motion to Dismiss").  [Doc. 30, filed February 4, 2022].   This court considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated February 3, 2022, [Doc. 29], and the Memorandum dated February 7, 2022.  [Doc. 32].  The court concludes that oral argument will not materially assist in the resolution of this matter.  Accordingly, upon review of the Motion, the related briefing, and the applicable case law, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED**.

### BACKGROUND

    The court takes the following facts from the Amended Complaint [Doc. 10] and presumes they are true for purposes of the Motion to Dismiss.  Plaintiffs Tonya McDaniel and Ashley McDaniel are Black Hebrew single mothers who practice Judaism and who are eligible for Section

8 housing.  [Doc. 10 at 9-11 ¶¶ 4, 10].[1]  On August 31, 2018, Plaintiffs began the application process to live in an apartment at North Range Crossings, which is a federally funded property operated by the United States Department of Housing and Urban Development ("HUD").  [*Id.* at 4-5, ¶¶ 1, 3].  Plaintiffs identified as Black Hebrew Jews on all rental applications submitted to North Range Crossings.  [*Id.* at 4, ¶ 1].

At Plaintiffs' lease signing, staff informed Plaintiffs that North Range Crossings is a smoke-free property.  [*Id.*].  Plaintiffs then told property management that due to their race and religious practices, they burn "various items for ritualistic reasons that would result in smoke, such as candles, sage, smudging, burning incense, spices, herbs, and oils as a form of offering and sacrifice." [*Id.* at 4-5, ¶¶ 1, 3].  Plaintiffs further explained that denying them the ability to engage in these practices would be a violation of Plaintiffs' religious freedom and housing discrimination laws.  [*Id.* at 5, ¶ 4].  Although property management initially told the Plaintiffs that they would not be able to burn their religious sacrifices on the property, management later conceded and permitted Plaintiffs to engage in their rituals.  [*Id.* at 5, ¶ 5].

Plaintiffs allege that for the past two years, they have been the target of retaliation, discrimination, harassment, false allegations, and multiple threats of eviction from North Range Crossings management and staff, which began immediately after Plaintiffs began living at North Range Crossings  [*Id.* at 5, ¶¶ 2, 5-6].  For example, Plaintiffs state that they "have been bombarded with false noise allegation emails repeatedly" and have been threatened with eviction due to those false noise complaints.  [*Id.* at 7, ¶ 13].  However, such noise complaints arose out of "simple

---

[1] Where the court refers to the filings made in Electronic Case Filing ("ECF") system in this action, it uses the convention [Doc. ____].  Because Plaintiffs' Amended Complaint contains repeating paragraph numbers, the court references Plaintiffs' allegations by both the page number and paragraph number.

noises" such as a dish inadvertently falling, the television, walking on the floor, the washer or dryer running, or Tonya McDaniel's therapeutic art activities.  [*Id.* at 14, ¶ 6].  Plaintiffs state that they have kept a "detailed log of all inciden[ts] in which [they] have been the target" of such harassing conduct.  [*Id.* at 6, ¶ 7].  Plaintiffs assert that they have been targeted on the basis of their race, and further allege that "North Range Crossings" refused to re-sign Plaintiffs' lease due only to their race.  [*Id.* at 5-6, ¶¶ 5, 7].

Furthermore, Plaintiffs allege that they have been treated less favorably than their white neighbors.  For instance, Plaintiffs allege that their white first-floor neighbor repeatedly raised noise complaints about Plaintiffs' white second-floor neighbor, but the first-floor neighbor was never prompted by "the office" to file a formal written complaint and the second-floor neighbor was never formally emailed a noise violation complaint.  [*Id.* at 6, ¶ 8].  Instead, the second-floor neighbor was informed of the noise complaints through a mass email "sent to everyone residing in the units."  [*Id.*].  The second-floor neighbor was further offered "warnings and corrections," but was never threatened with eviction, despite the fact that the second-floor neighbor continued to make noise and continued to prompt noise complaints.  [*Id.* at 6, ¶ 9; *id.* at 7, ¶ 11].  Moreover, Defendant Mel Terrazas ("Ms. Terrazas")[2] mediated the conflict between the first- and second-floor neighbors and offered each tenant the opportunity to move into a new unit at North Range Crossings.  [*Id.* at 6-7, ¶ 10].  The first-floor neighbor eventually moved into a third-floor unit.  [*Id.* at 7, ¶ 12].  Plaintiffs were not offered mediation or the opportunity to move units and were instead served with a "notice to quit the lease."  [*Id.* at 7, ¶¶ 11, 13].

---

[2] Plaintiffs do not specify Ms. Terrazas's connection to North Range Crossings in their Amended Complaint.  *See* [Doc. 10].  Plaintiffs refer to Ms. Terrazas as "defendant['s] . . . representative," [Doc. 10 at 16, ¶ 5], which the court liberally construes as an assertion that Ms. Terrazas is a "representative" of Defendant Dominium Management Services, LLC.

Plaintiffs initiated this action pro se on July 22, 2021, naming Ms. Terrazas and Dominium Management Services, LLC ("Dominium")[3] as Defendants in this matter. [Doc. 1]. After the Honorable Gordon P. Gallagher granted Plaintiffs leave to proceed *in forma pauperis*, [Doc. 6], and ordered Plaintiffs to file an amended pleading, *see* [Doc. 9], Plaintiffs filed the Amended Complaint on November 12, 2021, raising the following claims: (1) a claim under Title VI of the Civil Rights Act of 1964 ("Claim One"); (2) a claim under the Fair Housing Act ("FHA") ("Claim Two"); (3) a claim under Section 504 of the Rehabilitation Act ("RA") ("Claim Three"), and (4) a claim under the Americans with Disabilities Act ("ADA") ("Claim Four"). [Doc. 10 at 3].

On December 2, 2021, Judge Gallagher conducted a preliminary review of the Amended Complaint. *See* [Doc. 13]. First, Judge Gallagher determined that Claims Three and Four were subject to dismissal and recommended that they be dismissed without prejudice. [*Id.* at 3-4]. Then, upon finding that Claims One and Two are not appropriate for summary dismissal, Judge Gallagher recommended that those claims be drawn to a presiding judge. [*Id.*]. The Honorable Lewis T. Babcock accepted the Recommendation on December 23, 2021 and dismissed Claims Three and Four. [Doc. 14 at 1]. The case was then directly assigned to the undersigned Magistrate Judge. [*Id.*]. Upon the Parties' decision to decline consent to the jurisdiction of a Magistrate Judge, *see* [Doc. 26], the case was re-assigned to the presiding judge, the Honorable Regina M. Rodriguez, and referred to the undersigned. [Doc. 28; Doc. 29].

Defendants filed the instant Motion to Dismiss on February 4, 2022, arguing that Claims One and Two should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 30 at 6]. Plaintiffs responded in opposition on March 9, 2022,

---

[3] Plaintiffs do not explain Dominium's connection to or relationship with North Range Crossings. *See* [Doc. 10]. In their Motion to Dismiss, Defendants state that North Range Crossings is managed by Dominium. [Doc. 20 at 1-2].

4

*see* [Doc. 52], and Defendants have since replied.  [Doc. 57].  The Motion to Dismiss is thus ripe for recommendation, and I consider the Parties' arguments below.

**LEGAL STANDARDS**

## I.       Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").

At the pleading stage, a plaintiff need not establish a prima facie case to survive dismissal. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  But a plaintiff must nevertheless establish a plausible cause of action, and "the elements of each alleged cause of action help to determine whether [the plaintiff] has set forth a plausible claim." *Id.*  The court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary

5

to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## II.   Pro Se Pleadings

In applying the above principles, this court is mindful that Plaintiffs proceed pro se and the court thus affords their papers and filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the court cannot and does not act as their advocate, *Hall*, 935 F.2d at 1110, and applies the same procedural rules and substantive law to Plaintiffs as to represented parties. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

Defendants assert numerous arguments in their Motion to Dismiss. First, they argue that Plaintiffs' Title VI claim against Ms. Terrazas should be dismissed because Title VI does not provide a cause of action against individuals. [Doc. 30 at 7]. Defendants also maintain that Plaintiffs' FHA claim against Ms. Terrazas must be dismissed, as Plaintiffs' allegations are insufficient to state a plausible claim under Rule 12(b)(6). [*Id.* at 7-8]. Next, Defendants assert that Plaintiffs' Amended Complaint contains insufficient factual allegations to state either a Title VI or an FHA claim against Dominium. [*Id.* at 8-15]. In addressing the Parties' arguments, the court first sets out the relevant law and the legal standards applicable to Plaintiffs' claims. Then, the court addresses the sufficiency of Plaintiffs' claims against Ms. Terrazas under both Title VI and the FHA before turning to Plaintiffs' same such claims against Dominium.

## I.      Applicable Law

### A.      Title VI of the Civil Rights Act

Title VI prohibits intentional discrimination on the basis of race, color, or national origin in any federally funded program or activity.  42 U.S.C. § 2000d.; *see also Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (Title VI prohibits only intentional discrimination).  Moreover, "[a]lthough Title VI does not explicitly create a claim for retaliation, courts have held that such a cause of action exists."  *I.G. by & through Grunspan v. Jefferson Cty. Sch. Dist. through Bd. of Educ. for Jefferson Cty. Sch. Dist.*, 452 F. Supp. 3d 989, 1002 (D. Colo. 2020) (citing cases). Plaintiffs' Amended Complaint references both discrimination and retaliation in the context of their Title VI claim.  *See* [Doc. 10 at 5, ¶ 5]; *see also* [Doc. 30 at 13 (Defendants construing Plaintiffs' Amended Complaint as asserting both retaliation and discrimination claims)]. Accordingly, the court construes Plaintiffs' Title VI claim as asserting both theories of liability. *Haines*, 404 U.S. at 520-21.

Courts analyze Title VI claims using the legal standards applicable to Title VII claims.  *See Babakr v. Goerdel*, No. 20-2037-SAC-JPO, 2021 WL 736323, at *11 (D. Kan. Feb. 25, 2021) (applying Title VII standards to Title VI discrimination claim); *Bird v. Regents of New Mexico State Univ.*, No. CIV 08-851 WJ/RHS, 2013 WL 11324311, at *3 (D.N.M. July 3, 2013), *aff'd*, 619 F. App'x 733 (10th Cir. 2015) (applying Title VII standards to Title VI retaliation claim).  To state a claim of discrimination under Title VI, a plaintiff must allege facts establishing that (1) the defendant discriminated against the plaintiff on the basis of race, color, or national origin, and (2) the entity engaging in discrimination is receiving federal financial assistance.  *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993); *Al Ghareeb v. Bd. of Trustees at Univ. of N. Colo.*, No. 19-cv-00228-STV, 2020 WL 136647, at *5 (D. Colo. Jan. 13, 2020).  A

prima facie cause of discrimination is met by establishing (1) membership in a protected class; (2) an adverse action; and (3) disparate treatment amongst similarly situated individuals. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005). "A complaint raising a claim of discrimination does not need to conclusively establish the prima facie case of discrimination, but it must contain more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (quotation and alteration marks omitted). And to state a Title VI claim based on alleged retaliation, a plaintiff must allege that (1) the plaintiff engaged in protected activity; (2) the plaintiff suffered a material adverse action; and (3) there exists a causal connection between the protected activity and the adverse action. *I.G.*, 452 F. Supp. 3d at 1002.

### B.    The Fair Housing Act

The Fair Housing Act was "designed primarily to prohibit discrimination in the sale, rental, financing, or brokerage of private housing and to provide federal enforcement procedures for remedying such discrimination." *Otero v. N.Y. City Hous. Auth.*, 484 F.2d 1122, 1133 (2d Cir. 1973) (emphasis omitted). Under the FHA, it is unlawful to

> refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin[,]

or to otherwise

> discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a)-(b). To state an FHA discrimination claim based on disparate treatment, a plaintiff must allege that "(1) she is a member of a protected class; (2) she was denied a rental relationship or otherwise treated differently in the terms, conditions, or privileges of her rental

relationship or in the provision of services or facilities to her as a tenant; and (3) the different treatment was, at least in part, because of her [protected status]." *Wilson v. Guardian Mgmt., LLC*, 383 F. Supp. 3d 1105, 1108 (D. Or. 2019).   The alleged discriminatory treatment must be attributable to the named defendants.  *Cox v. Phase III, Invs*., No. CIV.A. H-12-3500, 2013 WL 3110218, at *10 (S.D. Tex. June 14, 2013).

The FHA additionally prohibits "discriminatory harassment that unreasonably interferes with the use and enjoyment of a home, i.e., a hostile housing environment."  *Ngiendo v. Pep-KU, LLC*, No. 18-4127-SAC-TJJ, 2019 WL 3430570, at *3 (D. Kan. July 30, 2019), *aff'd*, 825 F. App'x 577 (10th Cir. 2020) (citing *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 861 (7th Cir. 2018)).   To state an FHA discrimination claim based on a hostile housing environment, a plaintiff must allege facts showing that (1) the plaintiff is a member of a protected class; (2) the challenged conduct was unwelcome; (3) the challenged conduct was based on the plaintiff's protected characteristic; (4) the challenged conduct was sufficiently severe or pervasive to alter the plaintiff's living conditions and create an abusive environment; and (5) the defendant knew or should have known about the harassment.  *Ngiendo*, 2019 WL 3430570, at *3; *see also Jackson v. Park Place Condos. Ass'n, Inc*., 619 F. App'x 699, 703 (10th Cir. 2015) (explaining that the Tenth Circuit has looked to hostile-work-environment decisions for guidance in assessing claims of a hostile housing environment).  "Trivial or isolated manifestations of a discriminatory environment are not actionable. . . .  Rather, harassing conduct must be severe or pervasive."  *Id.*

Finally, the FHA also prohibits retaliation, making it unlawful to "coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of [her] having exercised or enjoyed," any right granted or protected under the FHA.  42 U.S.C. § 3617.  In their Amended Complaint, Plaintiffs allege that Defendants "engaged in . . . retaliation . . . tactics to

prevent residency in a HUD unit." [Doc. 10 at 9, ¶ 2]. And in the Motion to Dismiss, Defendants raise arguments related to "the FHA retaliation claim." [Doc. 30 at 13]. Thus, the court liberally construes Plaintiffs' Amended Complaint as asserting a retaliation claim under the FHA. To state such a claim, Plaintiffs must allege that (1) they engaged in a protected activity; (2) they suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there is a causal link between their protected activity and the adverse action. *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1187 (D. Colo. 2016) (citing *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1180 (9th Cir. 2006)).

## II.    Plaintiffs' Claims Against Ms. Terrazas

Defendants first seek dismissal of each of Plaintiffs' claims against Ms. Terrazas. [Doc. 30 at 6-8]. With respect to Claim One, they assert that claims against an individual are not cognizable under Title VI. [*Id.* at 7]. Moreover, while Defendants concede that the FHA provides for individual liability, they maintain that individuals may be held liable for FHA violations only "when [the individual] had the power and authority to directly effectuate the challenged conduct and, in fact, so exercised that power and authority." [*Id.*]. In response, Plaintiffs assert that their FHA claim should not be dismissed based on allegations not raised in the Amended Complaint— namely, that Ms. Terrazas is employed as the "property manager" of an unidentified entity; Ms. Terrazas "exercised discretionary power and authority on behalf of Dominium or over other Dominium staff in a manner directly causing the alleged adverse acts;" and Ms. Terrazas "act[ed] by and in part of Dominium [and] holds personal liability for her actions while representing the discriminatory views of the Dominium brand and its officers." [Doc. 52 at 9]. Plaintiffs do not raise any specific responsive arguments with respect to their Title VI claim against Ms. Terrazas. *See generally* [*id.*].

### A.   Individual Liability Under Title VI

"Title VI forbids discrimination only by recipients of federal funding; therefore, individual employees of such entities are not liable under Title VI."  *Webb v. Swensen*, 663 F. App'x 609, 613 (10th Cir. 2016); *see also* 42 U.S.C. § 2000d-4a (defining "program or activity" as, *inter alia*, any governmental department or agency, higher education institution, corporation, or any other entity); *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018) ("Title VI does not provide for individual liability.").  For this reason, the proper defendant in a Title VI case is the entity that receives federal funding, not an individual.  *Kelly v. Rice*, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005); *see also Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003) ("It is beyond question . . . that individuals are not liable under Title VI."); *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1356 (6th Cir. 1996) ("Plaintiff's claim also fails because she asserts her claim against [individual defendants] and not against the school, the entity allegedly receiving the financial assistance").

Because "[t]he law is clear that individuals are not subject to liability under Title VI in their individual capacities," *Silva v. St. Anne Cath. Sch.*, 595 F. Supp. 2d 1171, 1179 (D. Kan. 2009), Ms. Terrazas cannot be held individually liable under Title VI.  *Shotz*, 344 F.3d at 1171.  The court thus agrees with Defendants that dismissal of Plaintiffs' Title VI claim against Ms. Terrazas is appropriate.  *Verdi*, 306 F. Supp. 3d at 542; *Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 230 (D. Mass. 2015).  Accordingly, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED** insofar as the Motion seeks dismissal of Claim One against Mel Terrazas and that this claim be **DISMISSED with prejudice**.[4]

---

[4] "[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice." *Ghailani v. Sessions*, 859 F.3d 1295, 1304 (10th Cir. 2017).  However, where amendment of a claim would be futile, the Tenth Circuit has instructed that dismissal with prejudice is appropriate.

## B.    Failure to State an FHA Claim Against Ms. Terrazas

Defendants next contend that Plaintiffs' FHA claim against Ms. Terrazas should be dismissed for failure to state a claim.  Specifically, while they acknowledge that claims against individuals are cognizable under the FHA, they assert that "an individual is only personally liable . . . when [the individual] had the power and authority to directly effectuate the challenged conduct and, in fact, so exercised that power and authority."  [Doc. 30 at 7].  Defendants argue that the Amended Complaint lacks specific, non-conclusory factual allegations from which an inference could be drawn that Ms. Terrazas exercised discretionary power and authority over the alleged wrongdoers such that any unlawful conduct could be attributed to her.  [*Id.* at 8].  Plaintiffs counter that they have alleged facts "rendering plausible [that Ms. Terrazas] exercised discretionary power and authority on behalf of the employer purposefully and decisively and thereby directly caused discriminatory conduct."  [Doc. 52 at 9].[5]  Upon review of the Amended Complaint, the court respectfully agrees with Defendants.

---

*Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  District courts across the country have dismissed Title VI claims with prejudice when such claims are asserted against individuals, reasoning that such claims are futile.  *See, e.g.*, *Webb v. Susquehanna Twp. Sch. Dist.*, 93 F. Supp. 3d 343, 351 (M.D. Pa. 2015); *Mears v. Bd. of Educ. of the Sterling Reg'l High Sch. Dist.*, No. 13-3154 NLH-JS, 2014 WL 1309948, at *7 (D.N.J. Mar. 31, 2014); *Makhzoomi v. Sw. Airlines Co.*, No. 18-cv-00924-DMR, 2018 WL 3861771, at *5 (N.D. Cal. Aug. 14, 2018).  Because Title VI claims are not cognizable against individuals, any Title VI claim asserted against Ms. Terrazas would be subject to dismissal, and thus, amendment of this claim would be futile.  *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) (amendment would be futile if the claim would nevertheless be subject to dismissal).  Accordingly, the court recommends that Claim One be dismissed with prejudice against Ms. Terrazas.

[5] In their Response, Plaintiffs assert new factual allegations that are not contained in their Amended Complaint, such as asserting that Ms. Terrazas was employed as a "property manager," that she "file[d] for eviction," and that she threatened Plaintiffs with evictions "solely based on" Plaintiffs' membership in a protected class and Plaintiffs' assertion of religious rights.  [Doc. 52 at 9-10].  But "a plaintiff may not amend [her] complaint through allegations contained in a response to a motion to dismiss," *Miller v. Inst. for Def. Analyses*, No. 17-cv-02411-NYW, 2018 WL 10563049, at *4 (D. Colo. May 29, 2018), and the court cannot consider factual allegations raised for the first time in a response brief.  *See Smallen v. W. Union Co.*, 950 F.3d 1297, 1305 (10th Cir. 2020) (the

"An action under the FHA is essentially an action in tort," and "an agent who assists [her] principal in committing a violation of the FHA is [herself] liable as a joint tortfeasor." *Arnal v. Aspen View Condo. Ass'n, Inc.*, 245 F. Supp. 3d 1261, 1267 (D. Colo. 2017) (quoting *Chavez v. Aber*, 122 F. Supp. 3d 581, 593 (W.D. Tex. 2015) and *Dillon v. AFBIC Dev. Corp.*, 597 F.2d 556, 562 (5th Cir. 1979) (alteration marks omitted)).  As such, courts have found that individuals may be held liable for discriminatory conduct under the FHA, so long as the individual participated in, authorized, or ratified the commission of a fair-housing violation.  *Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1227 (W.D. Wash. 2012).

Indeed, personal participation is a necessary element of individual liability under the FHA, and courts routinely find that a plaintiff fails to state an FHA claim where the plaintiff has not tied any of the alleged wrongful conduct to a named defendant.  *See, e.g.*, *Shipman v. Gelso*, No. 3:11-cv-1162, 2011 WL 5554252, at *3 (M.D. Pa. Nov. 15, 2011) (granting motion to dismiss where the complaint did not "allege any facts indicating that the . . . Defendants took any steps to make the rental property unavailable."); *Hemisphere Bldg. Co. v. Vill. of Richton Park*, No. 96 C 1268, 1996 WL 721132, at *4 (N.D. Ill. Dec. 12, 1996) ("The alleged discriminatory decision here is the denial of the zoning petition, which only the Village Board had the authority to do; the remaining individual defendants were not in a position to 'otherwise make unavailable or deny' housing to Plaintiffs as required by 42 U.S.C. § 3604(f)."); *Meadowbriar Home for Children v. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996) ("It is axiomatic that for an official to make a dwelling unavailable, that official must first have the authority and power to do so.  In other words, the official must be in a position to directly effectuate the alleged discrimination.").

---

court can "only consider facts alleged in the complaint itself in evaluating the sufficiency of the complaint.").  Accordingly, the court does not consider these new factual averments in issuing this Recommendation.

Plaintiffs reference Ms. Terrazas by name only when alleging that Ms. Terrazas mediated a noise dispute between Plaintiffs' white neighbors and offered each of the white tenants to move into a new unit at North Range Crossings to alleviate their conflict.  [Doc. 10 at 6-7, ¶ 10].[6] Plaintiffs, who are Black, were not offered the same option.  [*Id.*].  As set forth above, to state an FHA discrimination claim based on disparate treatment, Plaintiffs must allege that (1) they are members of a protected class; (2) they were treated differently in the terms, conditions, or privileges of their rental relationship; and (3) the difference in treatment was due to Plaintiffs' protected status.  *Wilson*, 383 F. Supp. 3d at 1108.

There is no doubt that Plaintiffs belong to a protected class, *see Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 915 (10th Cir. 2004), and the court will assume, without deciding, that Plaintiffs have sufficiently alleged that they were denied certain privileges in the rental relationship[7] and that the difference in treatment was, at least in part, due to Plaintiffs' race.  *See Ngiendo v. Univ. Partners, LLC*, No. 2:20-cv-02393-HLT-TJJ, 2021 WL 5038780, at *7 (D. Kan. Oct. 27, 2021) (the plaintiff adequately stated a race discrimination claim where she alleged that she was given a filthy, moldy apartment while white tenants were given better housing, as such facts were sufficient at the pleading stage to allege a racial animus).  However, the court

---

[6] Plaintiffs also allege that Ms. Terrazas discriminated against Tonya McDaniel on the basis of her disability.  *See* [Doc. 10 at 16-17, ¶¶ 5-7].  But Ms. McDaniel states in Plaintiffs' Response that she is "not arguing that her disability [versus her neighbors'] nondisability is a claim for FHA. . . . Rather that is a claim [she] will bring forth at a later time."  [Doc. 52 at 2].  This court also notes that Judge Gallagher dismissed Plaintiffs' claims of disability discrimination under the Rehabilitation Act and the ADA [Doc. 13], and disability is not a basis for relief under either Title VI or the FHA.  Thus, this court does not include any of Plaintiffs' allegations regarding disability discrimination in this Recommendation.

[7] Defendants do not argue that being given the opportunity to mediate a noise dispute between neighbors or being permitted to move units are not "privileges" of the rental of a dwelling under the FHA, *see generally* [Doc. 30], and thus, the court assumes, for purposes of this Recommendation, that these accommodations do constitute such privileges.

respectfully cannot conclude that Plaintiffs' Amended Complaint—even construed liberally—sufficiently alleges that Ms. Terrazas was personally involved in that disparate treatment, as required to state a claim under the FHA.

First, while Plaintiffs allege that Ms. Terrazas offered their white neighbors the option to mediate their disagreement or move into new units, *see* [Doc. 10 at 6-7, ¶ 10], Plaintiffs do not allege that they were entitled to this option, that they requested this option, or that Ms. Terrazas, specifically, denied them this same option; instead, they simply state that "[t]his option *was not extended*" to them. [*Id.* (emphasis added)]. Nor do Plaintiffs allege facts suggesting that Ms. Terrazas had authority or control over extending this option to Plaintiffs; while Plaintiffs suggest that Ms. Terrazas is a "representative" of Dominium, *see* [*id.* at 16, ¶ 5], they raise no allegations with respect to her position or authority at North Range Crossings or Dominium—so as to plausibly allege that Ms. Terrazas was in "a position to directly effectuate" the alleged disparate treatment. *Meadowbriar*, 81 F.3d at 531; *see also Siler v. Abbott House Inc.,* No. 16-22991-CIV, 2017 WL 5494989, at *10 (S.D. Fla. Nov. 16, 2017) (plaintiff failed to state a claim where she did not allege how the individual defendant was personally involved in the challenged conduct).

Plaintiffs' more generalized assertions fare no better; the Amended Complaint presents a number of allegations concerning the alleged discriminatory or retaliatory conduct of general unidentified parties such as "staff members," "staff," "North Range Crossings," "property management," or "management." [Doc. 10 at 5-6, ¶¶ 6-11]. But not only do Plaintiffs not identify any specific person who is alleged to have engaged in this conduct, these factual assertions also lack any specific connection to Ms. Terrazas. For instance, Plaintiffs do not allege that Ms. Terrazas exercised authority over these unnamed individuals, that she directed North Range Crossings staff to discriminate or retaliate against Plaintiffs, that she was aware of North Range

Crossings staff's discriminatory or retaliatory conduct and failed to address that conduct, or that Ms. Terrazas was otherwise "in a position to directly effectuate" the alleged discrimination or retaliation. *Meadowbriar*, 81 F.3d at 531. At bottom, the Amended Complaint contains insufficient facts to demonstrate that Ms. Terrazas had the ability to remedy any discrimination or retaliation occurring at North Range Crossings by North Range Crossings or Dominium staff or management. *Hemisphere Bldg. Co.*, 1996 WL 721132, at *4.

For these reasons, the court respectfully concludes that the connection between the factual assertions of wrongful conduct and Ms. Terrazas are too attenuated to create a plausible inference of Ms. Terrazas's personal involvement in the alleged wrongful conduct. Accordingly, the Amended Complaint does not contain sufficient factual allegations to establish Ms. Terrazas's personal participation in the alleged unlawful conduct, as required to state an FHA claim. The court thus respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED** insofar as it seeks dismissal of Plaintiffs' FHA claim against Ms. Terrazas and that this claim be **DISMISSED without prejudice**.

### III. Plaintiff's Claims Against Dominium

Next, Defendants assert that Plaintiffs' Title VI and FHA claims against Dominium should be dismissed for failure to state a claim. *See generally* [Doc. 30 at 8]. Defendants address these claims together, and in so doing, raise essentially identical arguments for dismissal of the claims under Title VI and the FHA. *See* [*id.* at 8-15]. Defendants' Motion purports to assert two main arguments: (1) that Plaintiffs fail to allege facts showing that Dominium acted with "illicit discriminatory or retaliatory intent," so as to plead "an essential element of the *prima facie* case of the . . . claims brought under . . . Title VI and the FHA," [*id.* at 8-10]; and (2) that Plaintiffs fail to allege facts plausibly establishing that they suffered a material adverse action, which according to

Defendants is "[a] required *prima facie* element of the Title VI and FHA claims." [*Id.* at 12-14]. But within those two general overarching assertions, Defendants raise a number of diverging sub-arguments, which are addressed below.[8] *See generally* [*id.* at 8-15].

### A.    "Illicit Intent"

Defendants first maintain that Plaintiffs have not set forth sufficient facts establishing that Dominium "held illicit discriminatory or retaliatory intent," which Defendants state is "an essential element of the *prima facie* case" of discrimination or retaliation under either Title VI or the FHA. [Doc. 30 at 8, 10].  As a preliminary matter, the court notes that Defendants' argument is essentially an assertion that Plaintiffs have not established a prima facie Title VI or FHA case at the pleading stage.  *See* [*id.* at 8, 12].  But Plaintiffs need not establish a prima facie case to survive a motion to dismiss.  *Khalik*, 671 F.3d at 1192; *Quarrie v. New Mexico Inst. of Mining & Tech.*, No. 13-cv-0349 MV/SMV, 2014 WL 11456597, at *3 (D.N.M. Feb. 25, 2014), *report and recommendation adopted*, 2014 WL 11456599 (D.N.M. Apr. 3, 2014).  Rather, Plaintiffs "only need[] to allege sufficient factual detail to state a plausible claim of racial discrimination" or retaliation.  *Quarrie*, 2014 WL 11456597, at *3; *see also Haws v. Norman*, No. 2:15-cv-00422-EJF, 2017 WL 4221064, at *9 (D. Utah Sept. 20, 2017) (in FHA retaliation context, concluding that "the requirement of a causal connection between the request for accommodation and the purported retaliation adequately addresses intent").

Indeed, although Defendants cursorily cite numerous cases for the apparent proposition that Plaintiffs must meet some factual threshold to show Dominium's "illicit intent" in discriminating or retaliating against Plaintiffs and have not done so, *see* [Doc. 30 at 10-11],

---

[8] This court notes that Plaintiffs' allegations specific to Dominium, are sparse at best.  *See* [Doc. 10].  However, because Plaintiffs proceed pro se, and Dominium admits that it manages North Range Crossings [Doc. 30 at 1-2], this court proceeds to Defendants' substantive arguments.

Defendants cite no case law establishing such a pleading standard, make no argument setting forth any such pleading standard, and do not explain why Plaintiffs' allegations fail to meet this undefined standard.  *See generally* [*id.*].  The court has reviewed each of the cases cited by Defendants, which do not set forth any specific pleading requirements for establishing "illicit intent" at the pleading stage and do not appear to be analogous to the instant case.  *See, e.g.*, *Khalik*, 671 F.3d at 1192-94 (discussing the burden-shifting framework in Title VII cases generally and finding the plaintiff's allegations insufficient to state a claim, but not setting forth any requirements for pleading discriminatory intent); *Davis v. BAE Sys. Tech. Sols. & Servs. Inc.*, 764 F. App'x 741, 744-47 (10th Cir. 2019) (in Title VII retaliation case, discussing deficiencies in the plaintiff's allegations, but not discussing any pleading requirements for showing retaliatory intent); *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 921-22 (10th Cir. 2012) (at summary judgment stage in case asserting FHA, ADA, and RA claims, concluding that the plaintiff had failed to offer sufficient *evidence* of intentional discrimination); *Bekkem*, 915 F.3d at 1274-75 (discussing why the plaintiff's conclusory allegations were insufficient to state a claim, but not discussing any pleading standards for establishing "illicit intent").

The court could locate no authority in its independent research requiring a plaintiff to plead certain facts establishing "illicit intent" to state a Title VI or FHA claim.  *Cf. Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1232 (D.N.M. 2015) ("The federal judicial system's notice-pleading regime is little served by plaintiffs alleging the defendant's state of mind: the defendant knows it to a certainty, while the plaintiff is merely guessing.").  As explained above, to state a claim for relief, the Tenth Circuit does not "mandate the pleading of any specific facts in particular," but instead simply requires facts that "satisfy the plausibility requirement."  *Khalik*, 671 F.3d at 1194.  Absent any clear, supported argument from Defendants explaining the purported

the deficiency, the court is respectfully unpersuaded by Defendants' argument that Plaintiffs' allegations are missing some undefined necessary allegation to state a claim under either Title VI or the FHA.  "If the plaintiff pleads facts that, if true, would give rise to a reasonable inference that the elements of the cause of action are established, then that is good enough for the motion-to-dismiss stage."  *Griego*, 100 F. Supp. 3d at 1233.

Similarly, the court is respectfully not persuaded by Defendants' argument that Plaintiffs' "admission that non-illicit bias is behind the alleged acts against the McDaniels"—i.e., that because Plaintiffs allege that Defendants are attempting to evict all Section 8 tenants, *see* [Doc. 10 at 9, ¶ 3], Plaintiffs have "admit[ted]" that their income status is "the real reason for the alleged adverse acts taken against them"—"renders implausibly [pled] the contradictory allegations on Defendants' illicit intent behind the adverse acts."  [Doc. 30 at 9].  Insofar as Defendants suggest that Plaintiffs have "admitted" that they were discriminated against due to their financial status rather than their race, the court respectfully disagrees.  Plaintiffs consistently and repeatedly assert that they were subjected to discrimination on the basis of their race.  *See, e.g.*, [Doc. 10 at 5, ¶ 5; at 6, ¶ 7].  It is well-settled that a plaintiff may plead alternative theories of recovery, *Kaiser v. Bowlen*, 181 F. Supp. 2d 1200, 1201 (D. Colo. 2002); *see also* Fed. R. Civ. P. 8(d)(2)-(3), and Plaintiffs' assertion that Defendants "have expressed the need to harass and attempt to evict all Section 8 tenants as a means to have only 'cash-paying' tenants on the property," *see* [Doc. 10 at 9, ¶ 3], does not negate Plaintiffs' allegations of race discrimination.  Fed. R. Civ. P. 8(d)(3).  Accordingly, dismissal of Plaintiffs' discrimination claims is not warranted on this basis.

**B.      The Sufficiency of Plaintiffs' Allegations**

Next, Defendants argue that Plaintiffs have failed to allege facts demonstrating a material adverse action taken by Dominium against Plaintiffs, which Defendants assert is a requisite component of a prima facie discrimination or retaliation case under either the FHA or Title VI. [Doc. 30 at 12].  In so doing, Defendants raise numerous sub-arguments concerning the sufficiency of Plaintiffs' allegations generally.  *See generally* [*id.* at 11-15].  For purposes of clarity and concision, the court focuses only on two of the sub-arguments raised by Defendants: (1) that Plaintiffs fail to "develop the nature, amount, timing, manner, and overall context" of the alleged adverse actions taken against them, rendering their FHA and Title VI claims deficient on any theory, *see* [*id.* at 14]; and (2) with respect to the retaliation claims, Plaintiffs fail to allege facts establishing a causal connection between any protected activity and any alleged retaliatory acts. [*Id.* at 11-12].  First, the court addresses the sufficiency of the Plaintiffs' allegations supporting a retaliation claim, both under Title VI and the FHA.  Then, the court analyzes whether Plaintiffs have alleged sufficient facts to state a discrimination claim against Dominium under either statute.

**1.      Plaintiff's Retaliation Claims Under Title VI and the FHA**

To state a claim of retaliation in violation of Title VI, a plaintiff must allege "(1) that she engaged in protected activity; (2) that she suffered a material adverse action; and (3) that a causal connection existed between the protected activity and the adverse action."  *I.G.*, 452 F. Supp. 3d at 1002.  The elements of an FHA retaliation claim mirror the same claim under Title VI, requiring allegations that (1) the plaintiff engaged in a protected activity; (2) the plaintiff suffered an adverse action in the form of coercion, intimidation, threats, or interference on the part of the defendant; and (3) there is a causal link between the plaintiff's protected activity and the defendant's adverse action.  *Arnal*, 226 F. Supp. 3d at 1187.

Defendants attack Plaintiffs' allegations related to the latter two elements of an FHA or Title VI retaliation claim.[9]  First, they argue that Plaintiffs have failed to allege the existence of a material adverse action because "[p]utting aside Dominium's failure to renew the McDaniels' lease," (which Plaintiffs do not allege was in retaliation of any protected activity),[10] Plaintiffs allege nothing more than "implausible adverse actions reliant on targeting, bullying, and differential treatment" that are presented "in [an] overgeneralized, speculative, and conclusory fashion."  [Doc. 30 at 13, 14].  They also assert that Plaintiffs fail to allege a causal connection between any protected activity and any adverse action, as the allegations are "overly attenuated relative to the apparent timing of all that activity at the outset of the McDaniels' over two-year NRC rental."  [*Id.* at 11-12].  Plaintiffs do not respond to these arguments.  *See generally* [Doc. 52].

---

[9] While Defendants "assume[] . . . that [Plaintiffs' accommodation requests are sufficiently alleged as activity protected from retaliation under the FHA," Defendants argue that requesting a religious accommodation "is not plausibly alleged Title VI protected activity because there are no specific facts alleged reasonably suggesting a tenant would reasonably believe they have right to the McDaniels' requested accommodations in federally funded housing programs or activities and when there is no such Title VI right [sic]."  [Doc. 30 at 12 n.9].  In support, they cite *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1263 (10th Cir. 2021).  In *Reznik*, the Tenth Circuit discussed that for Title VII retaliation claims based on protected opposition to discrimination, a plaintiff "need not establish that the conduct she opposed actually violated Title VII," but instead, she must establish only that "she had both a subjective good faith and objectively reasonable belief that it did."  *Id.* at 1260.  Defendants do not explain how *Reznik* is applicable here or why Plaintiffs' allegations are deficient.  *See* [Doc. 30 at 12 n.9].  Accordingly, the court does not address this argument.  *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."); *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (quotation omitted).

[10] Although Plaintiffs allege that "North Range Crossings has refused to resign [their] lease;" "Dominium is creating an environment to exacerbate my disability until I feel threatened and intimidated and unsafe enough to simply move off the property;" and "Dominium is participating in discrimination by not signing the lease with myself due to my disability;" Plaintiffs do not allege that the refusal to renew was retaliatory in nature.  [Doc. 10 at 6, ¶ 7; 15, ¶ 10].  Accordingly, the court does not address these alleged wrongful acts in the context of Plaintiffs' retaliation claims.

*Adverse Action*.  First, Defendants assert that Plaintiffs have failed to allege a "material" adverse action, as required to state a retaliation claim under either Title VI or the FHA.  [Doc. 30 at 12].  Defendants do not present any argument concerning what constitutes a "material" adverse action in the housing context but suggest that it must amount to more than "'petty slights, minor annoyances, a simple lack of good manners,' or another 'trivial harm.'"  [Doc. 30 at 13 (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (alteration marks omitted))].  The Supreme Court has suggested that an action is materially adverse if it "could well dissuade a reasonable [person]" from engaging in protected activity.  *Burlington*, 548 U.S. at 57 (in Title VII context, stating that a material adverse action might dissuade "a reasonable worker from making or supporting a charge of discrimination").

In their Amended Complaint, Plaintiffs allege that they were subjected to the following adverse acts: retaliation, discrimination, harassment, false allegations, threats of eviction, service of a notice to quit the lease, placing defamatory and false notes in Plaintiffs' housing file, and misplacing Plaintiffs' important documents.  [Doc. 10 at 5, ¶ 5; at 7, ¶ 11; at 10, ¶ 9; at 14, ¶ 4].  At the outset, the court notes that some of Plaintiffs' assertions could amount to more than "petty slights," "minor annoyances," or "trivial harm" and could, in theory, constitute material adverse actions.  *See, e.g.*, *I.G.*, 452 F. Supp. 3d at 1003 ("[A]llegedly defamatory actions can constitute an adverse action."); *Kimmel v. Gallaudet Univ.*, 639 F. Supp. 2d 34, 43 (D.D.C. 2009) (allegation that retaliator "spread falsehoods" about the plaintiff was sufficient to state a Title VI retaliation claim); *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003) (in FHA case, threats of eviction were sufficient to allege an adverse action "at this early pleading stage"); *Chavez v. Aber*, 122 F. Supp. 3d 581, 600 (W.D. Tex. 2015) ("Threats and intimidation after plaintiff filed a

complaint of housing discrimination is direct evidence of retaliation in violation of the FHA.") (quotation omitted).

The court respectfully agrees with Defendants, however, that the Amended Complaint does not "develop the nature, amount, timing, manner, and overall context" of the alleged adverse acts of defamation, harassment, bullying, or threats of eviction, [Doc. 30 at 14-15], and thus, the present allegations in the Amended Complaint are insufficiently specific to plausibly allege that Dominium engaged in any adverse actions against Plaintiffs.   While the Amended Complaint asserts that Plaintiffs have been targeted by illegal conduct, they do not describe the alleged harassment, bullying, or threatening conduct to support an inference that this conduct arises to a "material" adverse action under the FHA.   *See Cain v. Rambert*, No. 13-cv-05807, 2014 WL 2440596, at *6 (E.D.N.Y. May 30, 2014) ("To be actionable [under the FHA], an adverse action must have some materially adverse effect on the plaintiff.").   Further, the lack of supporting facts offered by Plaintiffs concerning the extent, frequency, severity, or nature of the retaliatory conduct precludes an inference that Plaintiffs were the target of conduct that would "dissuade a reasonable [person] from making or supporting a charge of discrimination," as required to state a Title VI retaliation claim.   *Walker v. Dist. of Columbia*, 279 F. Supp. 3d 246, 274 (D.D.C. 2017) (quoting *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007)).

Moreover, the Amended Complaint attributes these alleged adverse acts to staff, [Doc. 10 at 5-6, ¶ 6], management, [*id.* at 7, ¶ 11], and sometimes to no actor at all.   *See* [*id.* at 7, ¶ 13 ("[T]he plaintiffs were . . . threatened to leave the property entirely with an eviction.")].   Absent any factual allegations identifying who allegedly undertook these adverse actions and establishing that those individuals' acts can be attributed to Dominium, Plaintiffs fail to plausibly allege facts supporting Dominium's liability for the alleged unlawful conduct.   *See, e.g.*, *Baldwin v. Hobbs*

*Mun. Sch.*, No. CV 08-149 BB/WPL, 2009 WL 10701265, at *7 (D.N.M. Sept. 8, 2009) (determining that the complaint was deficient where it "[did] not allege who was responsible for [the adverse] actions"); *Kauk v. Okla. ex rel. Okla. Tourism & Recreation Dep't*, No. CIV-13-657-F, 2014 WL 12819499, at *2 (W.D. Okla. Jan. 23, 2014) (the plaintiff failed to state a claim based on her termination where she did not allege who terminated her employment or the reason for her termination).   While the court does not "mandate the pleading of any specific facts in particular, there are certain details the Plaintiff[s] should know and could properly plead to satisfy the plausibility requirement."   *Khalik*, 671 F.3d at 1194.   Plaintiffs "must include some further detail for [their] claim to be plausible."   *Id.*

This is particularly true in the Title VI context, where individual liability is not available and where the plaintiff seeks to impose liability on an entity for individual conduct.   To show that an entity is liable under Title VI, a plaintiff must "demonstrate than an 'appropriate person' at [the entity], that is, someone in a position to" remedy the discriminatory or retaliatory conduct, "had actual notice of the alleged [conduct] and did not respond adequately."   *Assenov v. Univ. of Utah*, 553 F. Supp. 2d 1319, 1335 (D. Utah 2008) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).   In *Gebser*, the Supreme Court set forth this standard in the Title IX context, *see* 524 U.S. at 290, and courts have since applied this rule to the Title VI context, as well.   *See, e.g.*, *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665-66 (2d Cir. 2012); *Stafford v. George Washington Univ.*, No. 18-cv-02789 (CRC), 2022 WL 35627, at *6 (D.D.C. Jan. 4, 2022).   "The purpose of this rule is to avoid making institutional defendants liable under Title VI on the basis of *respondeat superior* alone."   *Assenov*, 553 F. Supp. 2d at 1335; *cf. Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 475 F. Supp. 2d 1092, 1099-1100 (D. Kan. 2007) (explaining that the plain language of title VI does not call for application of the principles of agency).

Because Plaintiffs do not identify an "appropriate person" in this context and do not allege that the appropriate person had knowledge of the alleged retaliatory conduct and failed to take action, their allegations are insufficient to state a Title VI retaliation claim against Dominium. Similarly, the failure to allege any factual details setting out the circumstances of the alleged retaliation or how such retaliation may be tied to Dominium renders Plaintiffs' retaliation claim deficient under the FHA, as well.

***Causal Connection***.  Even if Plaintiffs had sufficiently alleged that Dominium engaged in the requisite adverse actions, the court further concludes that they have failed to establish that any such retaliatory actions were the result of their protected activity.  A causal link between protected activity and an adverse action is sufficiently alleged where the complaint contains allegations setting for circumstances "giv[ing] rise to an inference of retaliatory motive." *Glenn v. Davis Sch. Dist.*, No. 19-cv-00008-DAK, 2019 WL 5423728, at *5 (D. Utah Oct. 23, 2019).  Reviewing the allegations in the Amended Complaint, the court respectfully concludes that Plaintiffs have not sufficiently alleged a causal connection between their protected activity and any adverse action. The court reiterates that Plaintiffs do not identify the staff members to whom they addressed their protected activity, nor do they identify the staff members who allegedly engaged in the adverse conduct, so as to even suggest that the alleged adverse actions were undertaken with knowledge of the protected activity. *See generally* [Doc. 10]; *see also Khalik*, 671 F.3d at 1194 (the plaintiff's allegations were deficient when she provided "no context for when Plaintiff complained, or to whom.").  To establish a causal connection, a plaintiff must show that the individual who took adverse action against her knew of the plaintiff's protected activity. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).  Indeed, an entity's alleged adverse action against an individual cannot be *because of* that individual's protected conduct unless the entity knows the individual has

engaged in the protected activity. *Peterson v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002); *cf. Muragara v. Accountemps*, No. 15-cv-00932-RBJ-NYW, 2015 WL 13730879, at *4 (D. Colo. Sept. 16, 2015), *report and recommendation adopted*, 2015 WL 8133000 (D. Colo. Dec. 8, 2015) (recommending dismissal of Title VII retaliation claim where the plaintiff did not allege that the party who took adverse action knew of the plaintiff's protected activity).  At most, Plaintiffs simply state that some unidentified staff members harassed, targeted, bullied, or inconvenienced Plaintiffs due to Plaintiffs' protected activity.  [Doc. 10 at 5-6, ¶¶ 5-6].  But "general assertions of . . . retaliation," are insufficient to state a claim for relief.  *Khalik*, 671 F.3d at 1193. Plaintiffs must, at minimum, provide "some facts" and "some relevant information to make the claims plausible on their face," *id.*, and the court respectfully cannot conclude that Plaintiffs have done so here.

Accordingly, the court concludes that Plaintiffs' have not sufficiently alleged facts establishing that Dominium engaged in retaliatory conduct or that any retaliatory conduct can be causally linked to Plaintiffs' protected activity, and thus, this court recommends dismissal of Plaintiffs' Title VI and FHA retaliation claims against Dominium.

### b.    Plaintiffs' Discrimination Claims Under Title VI and the FHA

Finally, Defendants assert that the lack of specific facts establishing that Dominium engaged in the conduct at issue in the Amended Complaint, so as to support Plaintiffs' retaliation claims under Title VI or the FHA, similarly render Plaintiffs' discrimination claims under those statutes deficient, as well.  [Doc. 30 at 13].  For the reasons explained below, the court agrees.

Plaintiffs must allege the following elements to sufficient state a Title VI discrimination claim: (1) the defendant intentionally discriminated against Plaintiffs on the basis of race, color, or national origin, and (2) the defendant is receiving federal financial assistance. *Baker*, 991 F.2d

at 631.  To state a discrimination claim under the FHA, Plaintiffs must allege that: (1) Plaintiffs are members of a protected class; (2) Plaintiffs were treated differently in the terms, conditions, or privileges of their rental relationship than others outside of their protected class; and (3) the difference in treatment is attributable to Plaintiffs' protected status.  *Wilson*, 383 F. Supp. 3d at 1108.  And to sufficiently allege an FHA discrimination claim based on a hostile housing environment, Plaintiffs must allege that (1) they are members of a protected class; (2) they suffered unwelcome conduct; (3) the challenged conduct was based on Plaintiffs' membership in a protected class; (4) the challenged conduct was sufficiently severe or pervasive to alter the plaintiff's living conditions and create an abusive environment; and (5) the defendant knew or should have known about the harassment.  *Ngiendo*, 2019 WL 3430570, at *3.

The court respectfully concludes that the Amended Complaint contains insufficient factual detail to allege a discrimination claim under either statute.  First, because Plaintiffs fail to set forth *any* factual detail concerning the harassment, bullying, or threats they allegedly faced—such as who engaged in such conduct, how those actors are connected to the named Defendants, or the severity, frequency, nature, or context of such conduct—they have not plausibly alleged facts showing that the harassment was "severe or pervasive," *Jackson*, 619 F. App'x at 703; *cf. Khalik*, 671 F.3d at 1194, nor do Plaintiffs allege facts suggesting that Dominium knew or should have known about the discriminatory conduct.  *Ngiendo*, 2019 WL 3430570, at *3; *see also* [Doc. 10 at 6-7, ¶¶ 8-13].   The court thus finds the present allegations insufficient to state an FHA discrimination claim on a hostile-housing-environment theory.

Moreover, while Plaintiffs allege that they were treated differently than their white neighbors, *see, e.g.*, [Doc. 10 at 6-7, ¶¶ 8-13], and although discriminatory intent "can be inferred from the mere fact of differences in treatment," *see McAlester v. United Air Lines, Inc.*, 851 F.2d

1249, 1260 (10th Cir. 1988), Plaintiffs have not specifically alleged who engaged in this alleged discriminatory conduct, instead attributing such conduct to "property management," "North Range Crossings," and "staff." *See* [Doc. 10 at 6-7, ¶¶ 8-13]. The failure to plead specific facts setting forth who engaged in this alleged discriminatory conduct also renders Plaintiffs' allegations deficient. *See Khalik*, 671 F.3d at 1194; *Cooper v. Coldwell Banker*, No. CIV. A. 07-1208, 2007 WL 4792982, at *3 (W.D. La. Dec. 3, 2007) (the plaintiff failed to state a claim where she "ma[de] several general allegations" that the owner of a real estate agency "operated his business in a discriminatory manner" but asserted "no factual allegations that tie[d] [the owner] to participation in the allegedly unlawful acts that occurred in this case"); *Ible v. Wells Fargo Bank*, No. 4:21-cv-00025-MW-MAF, 2021 WL 1582419, at *3 (N.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1577789 (N.D. Fla. Apr. 22, 2021) (recommending dismissal where "many of Plaintiff's allegations [were] attributable to no individual nor any specific date"). And finally, while Plaintiffs allege that allege that "North Range Crossings" declined to renew their lease due to their race, *see* [Doc. 10 at 6, ¶ 7], the failure to allege any connection between North Range Crossings and Dominium renders the connection between Dominium and this alleged conduct implausible. *Sorenson v. United States*, No. 2:20-cv-00335-DAK-DAO, 2021 WL 355741, at *3 (D. Utah Jan. 5, 2021), *report and recommendation adopted*, 2021 WL 347833 (D. Utah Feb. 2, 2021). Accordingly, these deficiencies provide an alternative basis to recommend dismissal of Plaintiffs' Title VI and FHA discrimination claims.

For these reasons, the court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED** with respect to the FHA and Title VI claims against Dominium and further **RECOMMENDS** that these claims be **DISMISSED without prejudice**.

IV.     **Leave to Amend**

The Tenth Circuit has instructed that if "it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend," particularly in cases where the "deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). In these circumstances, "dismissal of the complaint without prejudice is preferable." *Id*.; *see also Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (explaining that dismissal without prejudice to allow amendment is appropriate where the plaintiff is "close to stating a claim but [is] missing some element that may not have occurred to [the plaintiff]" (internal quotation marks omitted)).

Here, the court finds that Plaintiffs could potentially correct the pleading deficiencies identified in this Recommendation by amending their Amended Complaint to include more specific, detailed factual allegations supporting their claims. Indeed, Plaintiffs represent that they have "kept a detailed log of documentation" of the discrimination and retaliation they allegedly faced. [Doc. 10 at 6, ¶ 7]. Accordingly, the court further **RECOMMENDS** that in the event the presiding judge agrees with this court's recommendation to grant the Motion to Dismiss, Plaintiffs be granted leave to amend their Amended Complaint only with respect to the FHA claim against Ms. Terrazas and the FHA and Title VI claims against Dominium. *See Schmidt v. Wells Fargo & Co.*, No. 17-cv-01555-RBJ, 2018 WL 1522609, at *8 (D. Colo. Mar. 28, 2018) ("Because the Court cannot rule out the possibility that plaintiff could, in good faith, allege facts that would plausibly support one or more of his claims, this dismissal will be without prejudice and with leave to amend.").

## CONCLUSION

For the reasons stated herein, this court respectfully **RECOMMENDS** that:

(1)    Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 30] be **GRANTED**;

(2)    Plaintiff's Claim One against Mel Terrazas be **DISMISSED with prejudice**;

(3)    Plaintiffs' remaining claims be **DISMISSED without prejudice**; and

(4)    Should the presiding judge accept this court's Recommendation on the Motion to Dismiss, Plaintiffs be **GRANTED** leave to amend their Amended Complaint within an appropriate timeframe determined by the presiding judge.[11]

In addition, it is **ORDERED** that:

(1)    A copy of this Recommendation shall be sent to:

Tonya McDaniel
933 S. Monaco Parkway
Denver, CO 80224

---

[11] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

and

Ashley McDaniel
933 S. Monaco Parkway
Denver, CO 80224

DATED:  May 3, 2022

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge