FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
4:33 pm, Jul 15, 2022
JEFFREY P. COLWELL, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____ 1:21-cv-01997-GPG _____

Tonya McDaniel, Ashley McDaniel_____, Plaintiff's

v.

North Range Crossings, Dominium Management LLC
_____, Defendants

(List each named defendant on a separate line. If you cannot fit the names of all defendants
in the space provided, please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names of the defendants listed in
the above caption must be identical to those contained in Section B. Do not include
addresses here.)

SECOND AMENDED COMPLAINT

NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting
from public access to electronic court files. Under this rule, papers filed with the court
should not contain: an individual's full social security number or full birth date; the full name
of a person known to be a minor; or a complete financial account number. A filing may
include only: the last four digits of a social security number; the year of an individual's birth;
a minor's initials; and the last four digits of a financial account number.

Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other
materials to the Clerk's Office with this complaint.

**A.**     PLAINTIFF INFORMATION

You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address.  Failure to keep a current address on file with the court may result in dismissal of your case.

Ashley McDaniel 933 S Monaco Pkwy Denver, Colorado 80224

(Name and complete mailing address)

720-244-1240, ashaleyreneemcd@gmail.com

(Telephone number and e-mail address)

Tonya Renee McDaniel 933 S Monaco Pkwy Denver, Co 80224

(Name and complete mailing address)

303-332-8952, mommat2real@gmail.com

(Telephone number and e-mail address)

B.      DEFENDANT(S) INFORMATION

Please list the following information for each defendant listed in the caption of the complaint.  If more space is needed, use extra paper to provide the information requested.  The additional pages regarding defendants should be labeled "B.  DEFENDANT(S) INFORMATION."

Defendant 1:   North Range Crossings
 14350 E 104th Ave Commerce City, Colorado 80022
                     (Name and complete mailing address)

        720-259-8076 , north.range.crossings@dominiuminc.com
                     (Telephone number and e-mail address if known)


Defendant 2:        Dominium Management LLC,  2905 Northwest Blvd Suite 150
Plymouth, MN 55441
                     (Name and complete mailing address)

        763-452-3112, 763-354- 5500 DOMINIUMAPARTMENTS.COM
                     (Telephone number and e-mail address if known)



C.      JURISDICTION

Identify the statutory authority that allows the court to consider your claim(s): (check one)

____    Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States)


Title VI of the Civil Rights Act

The Fair Housing Act

Retaliation

D.     STATEMENT OF CLAIM(S)

State clearly and concisely every claim that you are asserting in this action.  For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim.  You do not need to cite specific legal cases to support your claim(s).  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."

CLAIM ONE:  Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq. ("Title VI")

Title VI prohibits discrimination on the basis of race, color, or national origin in any program

or activity that receives Federal funds or other Federal financial assistance._____

Tonya McDaniel and Ashley McDaniel herby allege and assert separately the same claims and the same facts against the defendants as follows. Both plaintiffs are asserting their own individual rights in this claim with the same facts separately as individuals.

I. Factual Allegations

A. The discrimination and Harassment

1. Both plaintiffs Ashley McDaniel and Tonya McDaniel identify as black Hebrew Jews on all applications having anything to do with the North Range Crossings apartment application process beginning on August 31st, 2018.

2. North Range Crossings has refused to resign the lease with the plaintiffs only due to their race and religion and out of retaliation evicted the plaintiffs.

4

3. The racism and discrimination from staff and property management began right after moving into the North Range Crossing property when the plaintiffs asserted religious rights that are protected.

4. The North Range Crossings property is a federally funded property operated by H.U.D Housing of Urban Development. During our official lease signing, it was stated by staff members that North Range Crossings is a smoke-free property. Plaintiffs expressed to property management that due to our race and religious practice we burn various items for ritualistic reasons that would result in smoke, such as candles, sage, smudging, burning incense, spices, herbs, and oils as a form of offering and sacrifice.

5. All of the listed ritualistic practices are protected by religious rights and freedoms under federal law and due to this being a HUD property.

6. At the lease signing meeting with employee Laural Villiard, plaintiffs explained that denying this burning practice is a violation of their religious freedoms and the HUD discrimination laws because North Range is HUD funded building.

7. After a brief verbal exchange and being told no, the property management conceded and finally agreed to allow us to burn our religious sacrifices on the property. However, after this first initial adverse contact with property management for the past 2+ years, both plaintiffs have been the target of apartment management for retaliation, discrimination, harassment, false allegations, and multiple threats of eviction due to their race and religion practices.

8. The plaintiffs have kept a detailed log of documentation of all incidences in which the plaintiffs have been the target of discrimination, retaliation, and harassment by the North Range Crossings staff based upon being members of a protected class being "Black African American" and Jews.

9. On 4-5-2019 the plaintiffs were falsely accused by property management of housing animals not reported to management. This resulted in a 300 fine of 150.00 for the 2 cats.

10. Refusal to pay the fine resulted in a formal complaint/lease violation and the threat of an eviction.

11. However, plaintiffs were able to show that the 4-5-2019 pet incident and the live-in aide issue were actually a product of office sabotage as the pet documents and live-in aide document were signed by the doctor at the same time which were given to office staff and lost intentionally to result in a 300.00 fine.

12. After proving to upper management the proper documentation was given to the office and this was an act of discrimination, retaliation, and sabotage the 300.00 fine was reversed and no eviction occurred.

13. On 8-6-2019 the plaintiffs requested that due to the harassment received from NRC staff that they can break their lease at any time in the future with no penalties or costs. Property management David Lepak agreed to these terms and requested to break the lease at no cost to the plaintiffs.

14. August 26th, 2020 during the plaintiff's lease resigning meeting it was brought to the attention of the plaintiffs that 1,238.00 was "missing an unaccounted for" in the plaintiff's ledger, and the plaintiffs in fact owed this balance.

15. While plaintiffs were being blamed and disputing the missing money with NRC and HUD the second threat of eviction came from management at NRC for refusal to pay the disputed ledger balance.

16. After an investigation the 1230.00 balance was later waived and rectified by HUD and NRC as internal clerical issues and no eviction occurred.

17. On May 26th, 2020 due to the continued harassment and retaliation the plaintiffs inquired about initiating the move-out process. However, as a result of the onsetting the covid-19 pandemic and lockdown, the plaintiffs were unable to move from NRC promptly.

18. Tuesday, Mar 24, 2020, 1:33 PM a property-wide mass email was sent out a warning of noise complaints from several residents due to the stay-at-home mandate.

19. Fri, Jun 26, 2020, a second mass email was sent to all residents in regards to noise complaints generated from the property due to the pandemic.

20. Thu, Dec 3, 2020, 3:27 PM yet another mass email blast to all tenants stated that "noise generated from multiple apartments is disturbing others which is a violation of our lease agreement," Again this email was general and nonspecific.

21. Tue, Jan 5, 2021, 1:29 PM NRC emailed the plaintiffs "A formal notice was submitted to the management office that there was loud noise including stomping and banging being

generated from your home at a level that was a disturbance to your fellow community members."

22. Three follow-up emails were sent to ask what the noises were and when they occurred and no reply email was received from NRC.

23. On May 14th a meeting was scheduled by NRC staff to resign the lease agreement for one more year. Plaintiffs stated that they did not want Mel Terras to perform the lease signing due to a previous issue with her handling our case file and being falsely accused.

24. Monday, May 17, 2021, the plaintiffs were served with a notice to quit for noise complaints after only receiving one formal complaint from NRC. The notice to quit contained false allegations of harassment to neighbors as well as multiple noise complaints, but neither factually occurred.

25. On May 18, 2021, 4:35 PM Mel Terras stated in an email "We are asking that you serve the terms of your lease but that we will not renew the lease based on circumstances that occurred during your tenancy."

26. In the process of moving from NRC the office staff member Mel Terras acted in a discriminatory fashion purposefully and willfully refusing to acknowledge and sign housing papers that dealt with the voucher directly. Mel the acting property manager refusing to sign these documents delayed the submittal and processing of pertinent section 8 paperwork. This paperwork was needed by the plaintiffs to complete the move-out process on time before their lease ended.

27. Due to the NRC property manager's refusal to sign the needed documents the plaintiffs were unable to move promptly.

28. NRC then proceeded to follow through with an unmerited eviction action alleging false noise complaint allegations against the plaintiffs.

29. Instead of going to trial the plaintiffs and NRC went to mediation. The plaintiffs simply requested enough time for their section 8 paperwork that was left unsigned to process to move out willingly.

30. NRC agreed in open court that no eviction would take place until all the missing documents were signed and processed to complete the voucher for move out.

31. After mediation the needed documents were finally signed by NRC management and submitted to HUD. This kept up one part of the mediation, however, the second part was to wait for the paperwork to process and the voucher to be complete before an eviction could take place.

32. NRC decided to move forward with an eviction even though HUD had not completed the processing of the documents handed in late by NRC management to complete the section 8 voucher for the plaintiffs to move.

33. Mediation was used in a discriminatory fashion by NRC and Dominium to garnish an eviction despite no real lease violations having taken place, mediation was used as a tactic to forcefully have the plaintiff removed from the property, refusing to continue to lease the property to two black, Jewish women for no reasons other than race and religion.

34. NRC filed a writ of restitution on the same day as the mediation settlement. Although the settlement states NRC will allow for delays in the processing of necessary paperwork that was not signed. Filing a writ the same day as the settlement agreement before any papers were signed or submitted allowed for the clock to start running towards an eviction that same day.

35. The plaintiffs were unaware the NRC filed a writ the same day as mediation. To add insult to injury NRC along with Dominium Management did not complete the service process of the Writ of Restitution that was filed.

36. The plaintiffs were only informed by the commerce city sheriff's department that an eviction was already scheduled on the books with a final notice sticker being placed on the unit door. After speaking with the sheriffs it was then revealed that a writ was filed the same day as mediation.

37.  Upon hearing this news the plaintiffs went back to the eviction court judge and stated the lack of personal process as neither plaintiff was served with a copy of a writ.

38. The court judge in the eviction refused an emergency hearing to state the claim of lack of service formally to the court and On December 7th, 2021 while moving out the plaintiffs were evicted due to noise complaints and the fact the section 8 voucher was still incomplete during the time of eviction.

39. False noise complaint allegations were used in a discriminatory manner to falsely accuse two black female tenants of stereotypically being loud.

10

40. The plaintiff's white 1st-floor neighbor repeatedly orally complained to the 2nd-floor white neighbor for a noise complaint. The white 1st-floor tenant was never prompted to file a formal written complaint by the office against her white 2nd-floor neighbor.

41. The neighboring 2nd-floor white tenant was never formally emailed a noise violation complaint after being informed of formal complaints multiple times.

42. Instead of filing multiple unnecessary noise complaints, the 2nd-floor white tenant was only informed by property management of sound complaints through a mass email sent to everyone residing in the units.

43. The plaintiff's white 2nd-floor neighbor was offered warnings and corrections. The plaintiff's unit was not extended this courtesy. The noise still continued from the 2nd-floor neighbor and so did the verbal complaints. However, the 2nd-floor neighbor was still not officially served with any noise complaint from property management due to her being white.

44. Management never prompted the neighbor of the 1st floor to file a written complaint against her white neighbor. Instead, Mel Terras mediated the situation and offered either tenant to apply to move to a new unit within the same North Range Complex that was more accommodating to their needs. This option was not extended to the plaintiffs, nor was the offer of mediation between tenants or moving.

45. The plaintiff's unit was served with a notice to quit the lease before any mediation was offered by management. The white neighbor was not harassed with noise complaint emails when complained about, she was able to be warned only through a mass email

11

chain letter from the property, mediation was offered to solve the white tenant's issue before an eviction action was threatened or a notice to quit was served.

46. The 1st-floor tenant was placed on a 3rd-floor unit waitlist to help solve the issue and eventually moved to a 3rd-floor unit within the same building due to the noise issues. At no point and time were the plaintiffs ever given a verbal warning about any alleged noise complaints.

47. The plaintiffs have been bombarded with false noise allegation emails repeatedly. No mediation was ever offered or extended to the plaintiffs to move within the properties to an available unit. Instead of being offered to move units like the white neighbor the plaintiffs were only threatened to leave the property entirely with an eviction.

48. The same noise issue for two separate people resulted in an eviction for one but was simply met with a solution for the other. This type of behavior is discriminatory in nature and should be punishable under this federal statute preventing discrimination in the establishments receiving federal government funding.

D. STATEMENT OF CLAIM(S)

State clearly and concisely every claim that you are asserting in this action. For each claim,

specify the right that allegedly has been violated and state all facts that support your claim,

including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s)

involved in each claim, and the specific facts that show how each person was involved in each

claim. You do not need to cite specific legal cases to support your claim(s). If additional space is

needed to describe any claim or to assert additional claims, use extra paper to continue that claim

or to assert the additional claim(s). Please indicate that additional paper is attached and label the

additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."

CLAIM TWO: The Fair Housing Act: It is illegal to discriminate in the sale or rental of housing,

including against individuals seeking a mortgage or housing assistance, or in other housing-

related activities. The Fair Housing Act prohibits this discrimination because of race, color,

national origin, religion, sex, familial status, and disability.

13

Supporting facts:

Both plaintiffs separately hereby assert all of the same allegations put forth in count one to be

used as supporting facts in support of count two along with new supporting facts. Tonya

McDaniel and Ashley McDaniel herby allege and assert separately the same claims and the same

facts against the defendants as follows. Both plaintiffs are asserting their own separate individual

rights in this claim with the same facts.

49. The Fair Housing Act protects people from discrimination when they are renting or
    buying a home, getting a mortgage, seeking housing assistance, or engaging in other
    housing-related activities. Additional protections apply to federally assisted housing.

50. The fair housing act was violated by the defendants when they refused to resign a lease
    with the plaintiffs solely based on their disability, religion, race, creed, color, income
    status, and family status, engaged in harassment, retaliation, and bullying tactics to
    prevent residency in a HUD unit.

51. The plaintiffs have a section 8 voucher which is provided by the government. The
    defendants have expressed the need to harass and attempt to evict all black Section 8
    tenants as a means to have only white "cash-paying" tenants on the property.

52. When a family is on section 8 the payments come from the government at a later date
    than all the cash-paying tenants. The defendants are attempting to bridge the gap between
    black and Latino section 8 tenants and white cash-paying tenants by harassing section 8

tenants until they move voluntarily or by constantly threatening eviction on the section 8 tenants until eviction occurs.

53.   Blacks and Latinos are section 8 more than their white counterparts, making low-income discrimination a racially discriminatory issue that is prohibited stating, "Including against individuals seeking a mortgage or housing assistance," section 8 is housing assistance, therefore, can be found grounds for discrimination.

54.   Both plaintiffs being black Hebrew tenants on section 8 and both being single mothers have been discriminated against by North Range Crossing office staff members for these reasons.

55.   Threatening an eviction on a section 8 tenant is threatening the entire voucher itself, which can leave the entire household homeless at no fault of their own.

56.   The fair housing act was violated when the defendants began to partake in multiple discriminatory actions against the plaintiffs deliberately to take away the enjoyment of real property.

57.   The fair housing act was violated when the defendants made up false defamatory allegations to prevent the leasing of real property to the plaintiffs. The false defamatory allegations were that of the plaintiffs making threats and harassment to neighbors.

58.   These allegations were only alleged by property management for racially charged discriminatory reasons. Being that the plaintiff's household is made up of black women. The false narrative and stereotype of aggression were placed on my family without having a single incident or interaction with the neighbors.

59. Placing something defamatory and false in the plaintiff's housing file is a deliberate act of discrimination to provoke the false narrative to not lease the property to the plaintiffs.

60. The plaintiffs take these allegations seriously as these false allegations have been used to discriminate against the plaintiffs and garnish a false/illegal eviction. The plaintiffs have a right to enjoy and lease real property without the fear of discrimination and retaliation for being black, female, a single parent, and Jews.

D. STATEMENT OF CLAIM(S)

State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."

CLAIM THREE: Retaliation. The Fair Housing Act also makes it illegal to retaliate against any person because that person reported a discriminatory practice to a housing provider or other authority.

55. The plaintiffs exercised a Fair Housing right. Defendants were aware that the resident exercised such a right. After the plaintiffs exercised a Fair Housing right, the defendants subsequently took adverse action against the resident. Defendants took adverse action against the plaintiffs because they exercised their Fair Housing right. This is called a causal link. A causal connection is established when two events are related, and the second event happens because of or in response to the first event being a complaint by the plaintiffs.

### B. The Context

56. NRC along with Dominium Management are federally funded organizations in the Commerce City area, operating multiple housing facilities located in Colorado.

57. NRC and Dominium are run by upper management David Lepak, Jean Ferguson, and Jill Korkki. Upon information and belief, it is common knowledge at NRC that black tenants in section 8 are more likely to be discriminated against and evicted within the NRC organization. This discriminatory behavior sets the tone for the NRC organization; it lets subordinates, and staff members know that using their power in public housing for discrimination is acceptable. What makes this even more problematic are the demographics of NRC employees. The upper

level of the management team consists of all none black employees. The plaintiffs simply wanted to enjoy their unit located at the NRC property.

### C. The Result

58. The eviction traumatized the plaintiff's whole family, causing Post-Traumatic Stress Disorder in both Tonya McDaniel and Ashley McDaniel. Watching their belongings being put onto the yard at no fault of our own was very traumatic. Not only were the plaintiffs constantly harassed and subjected to various forms of discrimination, but the plaintiffs were forced to suffer through a hostile living environment in constant fear NRC would retaliate against them. The plaintiffs, pro se without counsel, notified NRC of the discrimination. Under information and belief, NRC and Dominium Management did not follow proper procedure during an eviction. Under information and belief, NRC and Dominium Management refused to negotiate with the plaintiffs regarding housing. Under information and belief, NRC and Dominium Management lawyer's refused to speak with the plaintiffs outside of the courtroom because they were acting pro se. Under information and belief, NRC and Dominium Management's refusal to speak with the plaintiffs was discriminatory. Under information and belief, NRC and Dominium Management. Under information and belief, NRC and Dominium Management made up false noise complaint allegations to proceed with an illegal eviction against the plaintiffs.

59. Under information and belief, NRC and Dominium Management staff have lost important documentation on purpose out of the plaintiff's file to set them up for fines, fees, and to gain an eviction. Under information and belief, NRC and Dominium Management did not properly serve

the plaintiff with the Writ of Restitution filed on the same day as mediation. Under information and belief, NRC and Dominium Management through counsel agreed to sign all papers related to the section 8 voucher and allow time for said papers to process to complete the voucher. Under information and belief, NRC and Dominium Management already filed a writ, therefore, leaving no room for negotiation on more time being added for the paperwork to successfully process. Under information and belief, NRC and Dominium Management did not wait for the section 8 housing voucher the be intact before proceeding with an eviction. Under information and belief, NRC and Dominium Management had no intention of working with or negotiating with the plaintiffs. Under information and belief, NRC and Dominium Management treated white tenants better when they were supposedly having the exact same issue. Under information and belief, NRC and Dominium Management ruined the plaintiff's right to the enjoyment of real property. Under information and belief, NRC and Dominium Management called the plaintiffs "problem tenants". Under information and belief, NRC and Dominium Management applied unequal terms and conditions on the rental properties based on race and religion. Under information and belief, NRC and Dominium Management have participated in disparate treatment of the plaintiffs. Under information and belief, NRC and Dominium Management caused the plaintiffs to have suffered from disparate effects. Under information and belief, NRC and Dominium Management denied the plaintiffs the ability to renew their lease, the plaintiffs were evicted and the property was placed up for rent right after. Under information and belief, NRC and Dominium Management through an illegal eviction caused the plaintiffs to suffer the loss of wages as Ashley McDaniel was unable to attend work during the eviction moving process. Under

information and belief, NRC and Dominium Management forced the plaintiffs to experience

homelessness of the entire family, including 2 pets and a minor child, plaintiff's were forced to

get rid of family valuables and precious items that could not fit into a storage unit. Valuable

items were lost and or stolen during the course of the eviction. Multiple movers were paid during

the course of the eviction to remove the plaintiff's belongings off the lawn promptly. Two storage

units were needed to fit what could be saved and stored. Due to this eviction, the plaintiffs have

suffered severe financial hardship paying storage units and paying rent in cash due to the loss of

the section 8 voucher, adverse credit history is being recorded as an eviction on the plaintiff's

credit history report. However, the plaintiffs would not give up and timely filed a charge of

discrimination in retaliation for complaining about the discrimination with the Department of

Housing.

E. REQUEST FOR RELIEF

State the relief you are requesting or what you want the court to do. If additional space is needed

to identify the relief you are requesting, use extra paper to request relief. Please indicate that

additional paper is attached and label the additional pages regarding relief as "E. REQUEST

FOR RELIEF."

Claims against defendants North Range Crossings and Dominium Management

Count One Title VI of the Civil Rights Act

Discrimination, harassment, coercion, intimidation

60. Both plaintiffs Ashley and Tonya McDaniel are black and Hebrew Jews

61. Both plaintiffs are members of a protected class.

62. Plaintiffs were subjected to discrimination and harassment by NRC and Dominium Management due to their race and religion.

63. The severity of the unwelcome harassment created an abusive living environment by altering a term, condition, or privilege, specifically the privilege of being free from fear of discrimination and retaliation.

64. And NRC and Dominium are liable for this because both were negligent when they failed to remedy this hostile living environment when its management-level employees knew, or in the exercise of reasonable care should have known, that discrimination and harassment were taking place. NRC and Dominium failed to provide ANY remedy for the plaintiffs. Specifically, NRC and Dominium took no steps to guarantee the plaintiffs would not encounter discriminatory housing practices and that retaliation did not take place after formal complaints of discrimination were made.

65. This hostile living environment created an intolerable living condition, specifically, the constant triggering of post-traumatic stress disorder symptoms in both plaintiffs as a result of a discriminatory eviction.

21

66. Accordingly, Defendants NRC and Dominium Management are liable to Plaintiffs for economic and non-economic damages.


### Count Two: The Fair Housing Act

### Discrimination, harassment, coercion, intimidation


67. Both plaintiffs Ashley McDaniel and Tonya McDaniel are black and Hebrew, Jews.

68. Both plaintiffs are members of a protected class.

69. Plaintiffs were subjected to discrimination and harassment by NRC and Dominium Management due to their race and religion.

70. The severity of the unwelcome harassment created an abusive living environment by altering a term, condition, or privilege, specifically the privilege of being free from fear of discrimination while practicing the enjoyment of a physical housing dwelling.

71. NRC and Dominium are liable for this because both were negligent when they failed to remedy this hostile living environment when its management-level employees knew, or in the exercise of reasonable care should have known, that discrimination and harassment were taking place. NRC and Dominium failed to provide ANY remedy for the plaintiffs. Specifically, NRC and Dominium took no steps to guarantee the plaintiffs would not encounter discriminatory housing practices.

72. This hostile living environment created an intolerable living condition, specifically, the constant triggering of post-traumatic stress disorder symptoms in both plaintiffs as a result of a discriminatory eviction.

73. Accordingly, Defendants NRC and Dominium Management are liable to the Plaintiffs for economic and non-economic damages.

Count Three: Retaliation for exercising the Fair Housing Act

74. Plaintiffs made their first complaint about housing discrimination from the plaintiffs on Sun, Apr 21, 2019, at 5:31 PM through email.

75. Plaintiff's routinely made complaints about the Defendants. NRC and Dominium's failed to take action to provide ANY remedy for the plaintiffs suffering discrimination. Specifically, the Plaintiff complained to Defendant human resources personnel that Defendant NRC was taking no steps to guarantee the plaintiffs would not encounter retaliation on the premises and this was creating a hostile living environment based on the plaintiff's protected race and religion.

76. Plaintiffs' complaints were in opposition to what both reasonably believed was unlawful race and religious discrimination faced because of NRC's and Dominium's intentional retaliation.

77. During this hostile living environment both plaintiffs were faced the constant triggering of post-traumatic stress disorder symptoms.

78. Defendant's retaliated against Plaintiffs soon after their complaints by creating an intolerable living conditions due to constant harassment , that Plaintiff would have no protection from encountering future discrimination and harassment and be subjected to the constant triggering of

their post-traumatic stress disorder symptoms, which resulted in an adverse living condition and eviction.

79. These intolerable living conditions amounted to an eviction taking place against the plaintiff's

80. Accordingly, Defendant's NRC and Dominium Management are liable to the Plaintiff for economic and non-economic damages.

81. At this time the plaintiff's Tonya McDaniel and Ashley McDaniel both request the following damages. We respectfully pray for the court to grant the following damages as a relief: $1,000,000 for exemplary damages to be awarded to the victims due to the conduct of the defendants who caused the victims harm in a willfully malicious, oppressive, fraudulent, wanton, or grossly reckless manner. For punitive damages to be imposed so that the defendants will no longer engage in the illegal behavior alleged in this case in the future, to add more regulations in place for staff to properly mediate with black tenants. Injunctive relief to clear the adverse Section 8 housing record and the North Range Crossing housing file of any and all false claims, disability bias, and discriminatory statements and evictions. $1,000,000 for moral damages including physical pain and suffering, mental anguish, fright, serious anxiety, besmirched reputation, wounded feelings, moral shocks, social humiliation, and depression caused by the eviction. $2,000,000 in compensatory damages as a result of severe emotional distress from the eviction. A letter of apology, and legal reversal of the evictions on the plaintiff's record. $2,000,000 in money damages for emotional distress, $2,000,000 in money damages for physical distress and public humiliation, Statutory damages, lost wages, hotel costs, storage unit costs,

and rental costs occurred as a result of the unlawful discriminatory retaliation eviction and loss of section 8 voucher.

F.      PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct.  See 28 U.S.C.

§1746; 18 U.S.C. §1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an

improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost

of litigation; (2) is supported by existing law or by a non-frivolous argument for extending or

modifying existing law; (3) the factual contentions have evidentiary support or, if specifically

so identified, will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and (4) the complaint otherwise complies with the requirements

of Rule 11.

(Plaintiff's signature)

7-15-2022

(Date)

(Plaintiff's signature)

7-15-2022

(Date)