IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-01997-RMR-NYW

TONYA MCDANIEL and
ASHLEY MCDANIEL,

      Plaintiffs,

v.

NORTH RANGE CROSSINGS and
DOMINIUM MANAGEMENT LLC,

      Defendants.

## MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant Dominium Management Services, LLC[1] ("Dominium") pursuant to Fed. R. Civ. P. 12(b)(6) moves to dismiss the Second Amended Complaint ("SAC") [ECF 65] as follows:[2]

### STATEMENT OF FACTS

The following is drawn from the SAC and only presumed true on this Motion, for the reasons detailed in the Standard of Review section below, to the extent they are alleged in a specific, non-conclusory, and non-speculative manner.

Plaintiffs Tonya and Ashley McDaniel (the "McDaniels" or "Plaintiffs") are former tenants within the North Range Crossings ("NRC") housing complex who were allegedly harassed and

---

[1] The SAC erroneously names Dominium as "Dominium Management LLC" despite prior pleadings appropriately naming the actual company name of "Dominium Management Services, LLC." *Compare* [ECF 65] at 1, 3 *with* [ECF 1] at 1 *and* [ECF 10] at 1.

[2] **CERTIFICATE OF CONFERRAL**: Pursuant to D.C.COLO.L.CivR 7.1(b), no conferral between the parties is required before the filing of this Rule 12 Motion, and no such conferral is required under Judge Rodriguez's Civil Action Practice Standards posted on the Court's website.

discriminated and retaliated against by Defendants vis-à-vis that rental. *See* [ECF 65] ¶¶1-3, 7-8.[3] The NRC housing complex is "a federally funded property operated by H.U.D. Housing of Urban Development." *See id.* ¶4. The McDaniels moved-in after they signed their lease on or about August 31, 2018, and resided there until they were evicted on December 7, 2021, following notice on May 17-18, 2021, of non-renewal/to quit. *See id.* ¶¶1, 24-25, 38.

Dominium and Defendant North Range Crossing ("North Range Crossing") are named as separate party-defendants. *See* [ECF 65] at 1, 3. Each entity is a "federally funded organization[]"run by shared "upper management." *See id.* at 17 [¶¶56-57]. The only individual specifically alleged to have personally participated in the Defendants' alleged discrimination and retaliation is Mel Terras ("Terras"). *See* [ECF 65] ¶¶25-27, 44. Terras is alleged to be the NRC complex's "acting property manager" and an "office staff member." *See id.* ¶26. But it is not alleged whether Terras performed as the "acting property manager" and an "office staff member" for or on behalf of Dominium, North Range Crossings, and/or HUD and their responsibilities and authority in those positions. *See id*. ¶¶25-27, 44. It is also not alleged whether the unidentified individual(s) labelled "NRC staff," "NRC organization," "North Range Crossing office staff members," "property management," and "management" (or not even labelled), and those unidentified individuals who participated in the discrimination and retaliation against Plaintiffs, acted for or on behalf of Dominium, North Range Crossing, and/or HUD and their positions,

---

[3] Citation to SAC paragraphs sequentially numbered 1 through 60 starting on page 4 and ending on page 16 are made through the following citation form: [ECF 65] ¶__. Citation to SAC paragraphs sequentially numbered 55 though 59 starting on page 17 and ending on page 15 of the SAC are made through citing the page number the paragraph appears on prior to the paragraph in the following citation form: [ECF 65] at __ [¶__]. Citation to other statements made within the SAC are made through citation to the page number their appear on, i.e. [ECF 65] at __.

responsibilities, and/or authority therewith. *See id.* ¶¶7-9, 14-15, 17-21, 23-24, 39-48, 51-52, 54, 56-58, 60; *see also id.* at 17-24 [¶¶55, 57-59, 62-65, 69-71, 74-79].

In their 2018 NRC unit application process, the McDaniels self-identified as "Black Hebrew Jews." *See id.* ¶1. While signing their initial NRC unit lease, the McDaniels sought an accommodation of the NRC complex's "smoke free property" policy by informing unidentified members of "property management" of their "race and religious practices" involving regular burning of items within the unit that they "explained" was required to be granted as result of their' "religious freedoms and the HUD discrimination laws …." *See id.* ¶¶4-6. In response the McDaniels were initially told by an unidentified person that their request could not be granted, but "[a]fter a brief verbal exchange," "property management" granted the request. *See id.* ¶7.

Following the initial NRC unit lease signing, the McDaniels claim in repeated conclusory and conjectural fashion to have been continuing "targets of apartment management for retaliation, discrimination, harassment, false allegations, and multiple threats of eviction due to their race and religion practices." *See* [ECF 65] ¶7; *see also id.* ¶¶8, 13, 38, 48, 50-52, 54, 56-60 (additionally asserting targeting resulted in defamatory allegations and eviction and to also be based on the McDaniels' gender); *see also id.* at 17-22 [¶¶55, 57-59, 62, 64, 69, 71, 74-76, 78 (alleging intentional misplacement of important documents and other harassment)]. The McDaniels generally assert in the same fashion that "[d]efendants have expressed the need to harass and attempt to evict all black Section 8 tenants as a means to have only white 'cash-paying' tenants on the property" and are "attempting to bridge the gap between black and Latino section 8 tenants and white-cash-paying tenants by harassing section 8 tenants until they move voluntarily or by constantly threatening eviction on section 8 tenants until eviction occurs." *See id.* ¶¶51-52.

Specifically in reference to the McDaniels, the SAC asserts that Terras and unidentified NRC "[m]anagement" purportedly treated a white neighbor more favorably than the McDaniels with respect to neighbor noise complaints against both on the "same noise issue." *See id.* ¶¶18-21, 39-48. The "same noise issue" at most is specified in the SAC as "noise complaints from several residents due to the stay-at-home mandate …. generated from the property due to the pandemic." *See id.* ¶¶18-19. Unidentified person(s) "bombarded" the McDaniels with "false noise allegation emails repeatedly," which was then followed by the McDaniels being given by unidentified person(s) notice to quit and of non-renewal of their NRC unit lease based on "false allegations of harassment to neighbors as well as multiple noise complaints." *See id.* ¶¶24-25; *see also id.* ¶38; *but see id*. ¶¶18-21 (only alleging being sent three "property-wide"/"mass" emails from March-December 2020, and one email in January 2021 directed only to the McDaniels, about noise complaints). Unlike the accused white neighbor, the McDaniels were not "extended th[e] courtesy" of unspecified "warnings and corrections. *See id.* ¶43. Unlike the McDaniels, the accused white neighbor was not "officially served any noise complaint" or had "an eviction action … threatened" against "or notice to quit … served" on them by "property management" despite continuing noise complaints against the neighbor – rather, NRC management only "warned" the neighbor "through a mass email chain letter from the property." *See id*. ¶¶41, 43, 45. NRC property management also never "prompted" the complaining white neighbor to file a formal complaint against the accused white neighbor, but rather Terras "mediated" the dispute between the two "and gave each the option to move to a new unit within the" NRC complex. *See id* ¶¶44-46.  Neither an offer of mediation nor a move to a different NRC rental unit was an "option … extended" to the McDaniels, who instead were told they would have to end their NRC unit tenancy at the end of their lease. *See*

*id.* But, like with respect to the "warnings and corrections," the SAC lacks allegations establishing the McDaniels were each entitled to the offer or transfer. *See id.* ¶¶43, 44-46.[4]

The McDaniels also assert that they "routinely made complaints about the Defendant to Defendant human resources personnel that Defendant NRC was taking no steps to guarantee the plaintiffs would not encounter retaliation on the premises and this was creating a hostile living environment based on the plaintiffs' protected race and religion." *See* [ECF 65] at 23 [¶75]. The SAC claims that, as a result, "Defendant's retaliated against Plaintiffs soon after their complaints by creating an intolerable living conditions due to constant harassment" and denying them "protection from encountering future discrimination and harassment" in their NRC unit rental, "which resulted in an adverse living condition and eviction." *See id.* at 23-24 [¶78]. The only complaint alleged with any specificity in the SAC, however, is a complaint about generalized "housing discrimination"—not by any specific Defendant—emailed on 4/21/19. *See id.* ¶74. Like the more generalized allegations within the SAC, this allegation fails to indicate *who* the complaint was sent or made to and that person's position and authority for themselves and on behalf of Dominium in general and vis-à-vis that complaint. *See id.* ¶¶74-76, 78.

---

[4] Additionally, the SAC alleges that: (a) in April 2019, the McDaniels were "falsely accused" and fined by "property management" for housing unreported cats but the fine was eventually "reversed"; (b) in August 2020, the McDaniels were accused of owing $1,238 that, following investigation, was "waived and rectified by HUD and NRC as internal clerical issues"; (c) after the McDaniels were provided notice to quit and non-renewal of their lease in May 2021, Terras "purposefully and willfully refus[ed] to acknowledge and sign housing papers" dealing with their Section 8 voucher in a manner that "delayed the submittal and processing of pertinent section 8 paperwork" that "was needed by the [P]laintiffs to complete the move-out process on-time before their lease ended"; and (d) in the course of court eviction proceedings that preceded and ordered their eviction, "NRC and Dominium" used mediation with the McDaniels "in a discriminatory fashion to garnish an eviction" by using it "as a tactic to forcefully have the [P]laintiff[s] removed from the property." *See* [ECF 65] ¶¶9, 11-12, 14, 16, 24-27.

## PROCEDURAL HISTORY

On June 15, 2022, this Court upon magistrate recommendation that no Plaintiff subsequently objected too ordered the Rule 12 dismissal of Plaintiffs' Amended Complaint while granting leave for Plaintiff to file another complaint. [ECF 62] at 1-3. The SAC subsequently filed by Plaintiffs newly names and asserts claims against North Range Crossings as a separate and distinct party-defendant from Dominium while dropping as an individual defendant Mel Terrazas. *See* [ECF 65] at 1, 3, 21-22 [¶¶62, 64, 66, 69, 71, 73, 75-76, 80]; *compare with* [ECF 10] at 1, 3. The SAC further indicates that Plaintiffs now limit the claims they bring only to the following: (a) disparate treatment race, religious, and gender discrimination claims under Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. ¶2000d *et seq.*, and the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. ¶3601 *et seq.*, *see* [ECF 65] at 21-23 [¶¶60-73]; (b) FHA disparate impact race discrimination claims, *see id.* ¶¶52-53, 55; and (c) FHA retaliation claims. *See id.* at 17, 23 [¶55]. Now, Dominium herein seeks this Court's dismissal of the SAC under Rule 12(b)(6).

## STANDARD OF REVIEW

On a motion under Rule 12(b)(6), to withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted)). In turn, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (cite omitted). Either the entire complaint or a specific asserted claim therein is subject to dismissal "with prejudice," with an opportunity for the plaintiff to replead deemed futile, when "no amendment could cure the defect[s]" the court relies on to order dismissal. *See Brereton v.*

*Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Facial plausibility analysis considers whether the factual material stated within a complaint is sufficient to have "nudged [the plaintiff's] claims across the line from conceivable to plausible…." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In this analysis, *only* specific, non-conclusory, and non-speculative alleged facts are presumed true and considered. *Id.* at 555-56; *Iqbal* at 678-80. Any allegation that constitutes a conclusory, bare, or conjectural statement of law, fact, or application of law to fact must be disregarded in the analysis. *Id*; *see also Frey v. Town of Jackson*, *Wyoming*, __ F.4th __, 2022 U.S. App. LEXIS 20652, at *37-38, 2022 WL 2948909 (10th Cir. Jul. 27, 2022) ("A plaintiff must plead concrete facts sufficient 'to raise a reasonable expectation that discovery will reveal evidence' supporting his claims.'") (cite omitted). Then, a claim is only plausibly alleged when the complaint's alleged specific, non-generalized facts "enough to raise a right to relief above the speculative level…." *Twombly*, 550 U.S. at 555-56 (cites omitted). "The nature and specificity of the allegations required to state a plausible claim for relief," rather than a speculative one, "will vary based on context." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). When "a complaint" at best "pleads facts that are 'merely consistent' with a defendant's liability" on a claim, "it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). If the specific, non-conclusory, and non-speculative factual material contained in the complaint "do[es] not permit the court to infer more than the mere possibility" of liability by a defendant on an asserted claim, in relation to <u>any</u> required *prima facie* element thereof, then the claim must be dismissed. *See Davis v. BAE Sys. Tech. Sols. & Servs.*, 764 F. App'x 741, 743-47 (10th Cir. 2019) (unpublished). While a complaint filed by a *pro se* plaintiff requires a liberal construction, the plaintiff's *pro se* status "<u>does not</u>

relieve" them of "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (emphasis added); *see also Chase v. Divine*, 543 F. App'x 767, 769 (10th Cir. 2013) (unpublished)

## ARGUMENT

**I.  Title VI/FHA Discrimination Claims are Implausibly Plead**

To plausibly plead Title VII and FHA disparate treatment discrimination claims, concrete and non-conclusory facts must be alleged raising a reasonable inference that a defendant engaged in an adverse action against a plaintiff on account of their protected status(es) under those statutes. *See Khalik*, 671 F.3d at 1192-94; *Davis,* 764 F. App'x at 744-47; *see also* [ECF 59] at 9, 26-27 (cites omitted). Here, there are multiple pleading defects in the SAC's attempt to state such circumstances for the alleged differential treatment and harassment of the McDaniels. While the McDaniels' religion is a cognizable FHA protected status, it is not under Title VI, and consequently their plead Title VI religious discrimination claims cannot survive. *Compare* 42 U.S.C. § 3604(a)-(f) *with* 42 U.S.C. § 2000d; *see* [ECF 65] at 21 [¶62]. Then, the SAC is heavily reliant on impermissible conclusion, sheer speculation, and "on information and belief allegations" without specifying concrete facts supporting how Plaintiffs knew of such alleged facts or the SAC elsewhere stating such facts. *See* [ECF 65] ¶¶2, 7-26, 28, 32-48, 50-54, 56-60; *see also id.* at 17-22 [¶¶57-59, 62, 69]; *Hatfield v. Cottages on 78th Cmty. Ass'n*, 2022 U.S. App. LEXIS 18603, at *15, 2022 WL 2452379 (10th Cir. 2022) (unpublished); *Walker v. Hickenlooper*, 627 F. App'x 710, 715 (10th Cir. 2015) (unpublished) (cites omitted).[5] The SAC's specific factual allegations

---

[5] For example, the SAC asserts "[u]pon information and belief it is common knowledge at NRC that black tenants in section 8 are more likely to be discriminated against and evicted within the NRC organization," *see* [ECF 65] at 17 [¶57] – but without alleging facts stating the basis for the

focus predominantly on the McDaniels' race and conclusory and vaguely alleged neighbor comparators who are white (<u>not</u> of a different gender or religion from the McDaniels). *See* [ECF 65] ¶¶39-48, 50-54; *see also id.* at 17, 19 [¶¶57, 59]. But there are no specific facts stated sufficiently developing circumstances reasonably suggesting that alleged adverse actions and harassment occurred on account of illicit discriminatory racial, religious, or gender-based classification, intent, or motivation under either Title VI or the FHA, *see Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*, 685 F.3d 917, 921-22 (10th Cir. 2012); *McGowan v. Eufala*, 472 F.3d 736, 746-47 (10th Cir. 2006), let alone acts and harassment <u>by or on behalf of both Defendants</u>. *See* [ECF 59] at 27-28 (requiring sufficiently plead connection between a defendant and discriminatory act/harassment). Indeed, as discussed above, the SAC fails to sufficiently develop the nature, manner, and overall context of Defendants' involvement in the alleged discrimination/retaliation and, specifically, fails to connect to Defendants the alleged participation by Terras and unidentified property management staff in the alleged discrimination/retaliation and their position or authority on behalf of either Defendant. The SAC therefore makes an apparent, speculative leap of logic that simply because white neighbors were treated differently than the McDaniels, <u>both</u> Defendants adversely acted against them on account of their race, religion, and/or gender. But a reasonable inference of discrimination is not plead by vague and conclusory allegations that Terras and NRC property management treated unidentified white NRC tenants more favorably than Black Hebrew single mother NRC tenants like the McDaniels. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1274-75 (10th Cir. 2019); *Ghareeb v. Bd. of Trs. at the Univ. of N. Colo.*,

---

McDaniels knowing this "common knowledge" and its connection to Dominium. *See id.* at 17-24 [¶¶55-59, 64, 71, 78]; *see also id.* at ¶¶52-60.

849 F. App'x 746, 749-50 (10th Cir. 2021) (unpublished). The SAC also provides no specific facts of any procedural irregularity under applicable law, rule, or Dominium policy or custom in the alleged disparate treatment of the McDaniels. *See Ghareeb*, 849 F. App'x at 749-50; [ECF 65] at 18-19 [¶¶58-59]. There is simply no reasonable inference raised by the alleged differential treatment and harassment that both Defendants mistreated the McDaniels <u>and</u> on account of their protected statuses. *See also Khalik,* 671 F.3d at 1193-94; *Davis*, 764 F. App'x at 744-47.

Then, another required element of the disparate treatment discrimination claims is the defendant taking a <u>materially</u> adverse action against a plaintiff. *See Bertsch v. Overstock.com,* 684 F.3d 1023, 1028-29 (10th Cir. 2012); *see also* [ECF 59] at 7; *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 & n. 17 (2d Cir. 2021); *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, (4th Cir. 2016) (unpublished). Such an action is plead through alleging concrete facts beyond conclusion and speculation reasonably suggesting an objectively reasonable person would find a Defendant subjected a Plaintiff to a significant adverse change in or a significant denial of a housing benefit, privilege, or opportunity in their NRC unit rental. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). It is only sufficiently alleged if the specific facts stated within the SAC allow a reasonable inference the act was objectively more than a "petty slight[], minor annoyance[], [a] simple lack of good manners," or another "trivial harm[]." *See Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006); *see also EEOC v. C.R Eng., Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011). But, as discussed above, the SAC fails to allege concrete facts identifying who engaged in the purported adverse acts by either Defendant and the connection between Dominium, North Range Crossings, and the NRC housing complex. That "renders the connection between [Defendants] and this alleged conduct implausible." *See* [ECF 59] at 28 (cites

omitted).[6] Then, in reference to asserted more favorable treatment of the McDaniels' white neighbor over the McDaniels with respect to the "same" neighbor noise complaints, the SAC does not contain specific facts providing the timing, amount, and manner of the allegedly "same" neighbor complaints and specifically the nature, timing, amount, and manner of the allegedly "same" noise emanating from each unit that the complaints put at-issue, but rather, describes both the complaints and noise in conclusory, overgeneralized, and conjectural fashion. *See* [ECF 65] ¶¶18-21, 24, 39-48; *see also id.* at 18 [¶58]. The SAC insufficiently alleges how the McDaniels and their white neighbors were, at the time, similarly situated NRC tenants in all material respects, including having engaged in comparably serious complained-of conduct by their neighbors. *See Bekkem*, 915 F.3d at 1274-75; *Khalik,* 671 F.3d at 1193-94, *Lucero v. Sandia Corp.*, 09-908 JH/WDS, 2011 U.S. Dist. LEXIS 21863, at *14-15 (D.N.M. Jan. 3, 2011), *aff'd* 495 F. App'x 903, 909-12 (10th Cir. 2012) (unpublished). The other purported instances of mistreatment and harassment are similarly set forth in overgeneralized, speculative, and conclusory manner unable to plausibly plead material adverse acts constituting a significant adverse change in or denial of a housing benefit, privilege, or opportunity *See* [ECF 65] ¶¶9, 11-12, 14-16, 26-27, 33, 57-59; *see also id.* at 18-24 [¶¶58-59, 63-65, 69-72]. The SAC does not sufficiently develop the nature, amount, timing, manner, and overall context of the alleged fabricated complaints of "threats and harassment" claimed alongside the noise complaints to justify the failure to renew the lease and

---

[6] As this Court previously ruled, "in the Title VI context, … a plaintiff must demonstrate than [sic] an 'appropriate person' at the entity, that is, someone in a position to remedy the discriminatory or retaliatory conduct, had actual notice of the alleged conduct and did not respond adequately." *See* [ECF 59] at 24-25 (citations and internal quotes/brackets omitted). The SAC fails as necessary to allege through concrete facts a connection between Dominium, North Range Crossing, and the NRC housing complex and therefore fails to identify an "appropriate person" on their behalf had knowledge of the alleged discriminatory conduct and failed to act. *See id.*

their eviction and the purportedly false defamatory statements. *See id*. On the failure to mediate and permit the McDaniels to transfer NRC units after the lodging of neighbor noise complaints against them, the SAC fails to specify (a) the McDaniels' entitlement to such a mediation opportunity or unit transfer, (b) the McDaniels having requested both Defendants for a such an opportunity or transfer that one or both denied, and (c) both Defendants any individual on behalf of either Defendant had authority or control over extending such an opportunity or transfer to the McDaniels. *See id.*; *see also* [ECF 59] at 15 (finding lack of sufficiently alleged defendant involvement in the failure to mediate or transfer units on similar grounds).[7] Even viewed as a whole, the SAC insufficiently alleges an actionable hostile housing environment by both Defendants, i.e., Defendants subjected the McDaniels to severe or pervasive and objectively offensive conduct over an around three-year tenancy, because the SAC fails to allege concrete facts suggesting: (a) that either Defendant knew or should have known about the alleged harassment; and (b) the alleged harassment was "severe or pervasive" considering the SAC's failure to sufficiently allege: (1) the connection between Terras' and other unidentified staff's participation in the harassment; (2) their position or authority on behalf of either Defendant; and (3) the severity, frequency, nature, and context of their alleged harassment. *See* [ECF 59] at 9, 27. Accordingly, the disparate treatment discrimination claims must be dismissed.

---

[7] The alleged reversed punishments/fines/restrictions lacking in the SAC any specifically alleged unremedied detrimental impact on the McDaniels, and thus imposed temporarily, also do not reasonably infer more than nonactionable "trivial harms" on discrimination claims. *See* [ECF 65] ¶¶9-12, 15-16; *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005) ("life's little reverses are not causes of litigation."); *see, e.g., Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (collecting and applying authority).

Finally, to plausibly plead an FHA disparate impact discrimination claim, a plaintiff must plausibly allege "a specific policy caused a significant disparate effect on a protected group." *See Cinnamon Hills*, 685 F.3d at 922 (quotation omitted); *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 961-65 (9th Cir. 2021) (clarifying based on U.S. Supreme Court guidance post-dating *Cinnamon Hills* that an FHA disparate impact claim requires proof of "a significant, adverse, and disproportionate effect on a protected class" and a "robust causality that shows … that the challenged policy caused the disproportionate effect."). Yet specific facts are not alleged reasonably suggesting *any* of these claim elements are satisfied; but rather entirely vague, conclusory, and overgeneralized assertions. *See* [ECF 65] ¶¶51-55; *see also id.* at 18-19 [¶59]. No concrete facts are asserted about NRC unit lease non-renewals and evictions of the McDaniels and purportedly similarly situated black and Latino tenants rendering plausible a policy of either Defendant has a tight and direct causal connection to a "pattern or practice of discrimination" against both the McDaniels and those other tenants – whether through sufficiently plead statistical evidence or other specific information so reasonably suggesting and providing necessary context. *See Grays v. Kittredge Co.*, 1:20-cv-00208-WJM-SKC, 2021 U.S. Dist. LEXIS 50900, at *7-9 (D. Colo. Feb. 17, 2021), *adopted by* 2021 U.S. Dist. LEXIS 49926, at *7-9 (D. Colo. Mar. 17, 2021)*; Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 906-09 (5th Cir. 2019); *Bruzga v. Cty. Of Boulder*, No. 18-cv-00594-CMA-MEH, 2018 U.S. Dist. LEXIS 222733, at *30-32, 2018 WL 8220546 (D. Colo. Oct. 19, 2018), *adopted by* 2019 U.S. Dist. LEXIS 41575, 2019 WL 1198819 (D. Colo. Mar. 14, 2019), *aff'd* 795 F. App'x 599 (10th Cir. 2020) (unpublished); *Inclusive Comtys. Project, Inc. v. Heartland Cmty. Ass'n*, 399 F. Supp. 3d 657, 665-68 (N.D. Tex. 2019). The SAC is best interpreted as only presenting a claim of disparate

<u>treatment</u> discrimination grounded in the Defendants' purported differential treatment of the McDaniels on account of their protected statuses. Indeed, the SAC insufficiently alleges a facially neutral policy of *either* Defendant, but rather, at best, a policy based on express race- and ethnicity-based grounds. *See, e.g., Gomez v. Quicken Loans,* 629 F. App'x 799, 802 (9th Cir. 2015) (unpublished) (no plausible pleading of an "outwardly neutral" policy) (cites omitted). The SAC demonstrates that Plaintiffs' FHA disparate impact claim sounds only in Plaintiffs' "singular experience" and thus only presents a disparate treatment claim. *See Grays*, 2021 U.S. Dist. LEXIS 50900 at *7-9. The disparate impact claims accordingly must be dismissed.

**II.     FHA Retaliation Claims are Implausibly Plead**

FHA retaliation claims against Defendants require a sufficiently alleged causal connection between alleged adverse act(s) committed by both and the McDaniels' alleged protected activity. *See* [ECF 59] at 20, 25. The only specifically alleged protected activity within the SAC is the McDaniels' repeated complaints on 4/21/19 (and then on subsequent unidentified dates) to unidentified "Defendant human resources personnel" about generalized "housing discrimination," a "hostile living environment," and/or "Defendant NRC was taking no steps to guarantee the plaintiffs would not encounter retaliation on the premises." [ECF 65] ¶¶74-78. Yet the SAC does not sufficiently specify, *see id.*, whether the McDaniels addressed their complaints to both Defendants' staff, or that both Defendants' staff members purportedly engaged in the alleged retaliatory act of subjecting them to a hostile living environment via harassment, "to even suggest that the alleged adverse actions were undertaken with [both Defendants'] knowledge of the protected activity." *See* [ECF 59] at 25-26.  Then, with the only dated complaint alleged as 4/21/19 and given the allegations of protected activity and Defendants' involvement in the adverse acts are

not supported by stated concrete facts, the SAC fails to allege a sufficiently close temporal connection between the alleged adverse acts and protected activity. *See McGowan*, 472 F.3d at 744; *Anderson v. Coors Brewing, Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). Further, to properly plead an FHA retaliation claim, there must be the same set of facts alleged reasonably suggesting an objectively reasonable person would have been deterred from engaging in the alleged activity protected from retaliation under the FHA if that person had known, prior to engaging in that activity, they would be subject to that adverse action. *See McGowan*, 472 F.3d at 742-43. For the same reasons noted above with respect to the SAC's Title VI/FHA discrimination claims, the SAC does not sufficiently develop the nature, amount, timing, manner, and overall context of the alleged harassment by both Defendants' staff creating a hostile living environment – including the extent, frequency, severity, and nature of the alleged harassment. retaliatory intent. That renders the alleged retaliatory harassment "insufficiently specific to plausibly allege" both Defendants subjected the McDaniels to that harassment and were subjected to harassment "that would dissuade a reasonable person from making or supporting a charge of discrimination…." [ECF 59] at 23 (cites and internal brackets omitted). Further, by lacking specific factual allegations "identifying who allegedly" engaged in the alleged harassment "and establishing that those individuals' acts can be attributed to" both Defendants, "Plaintiffs fail to plausibly allege facts supporting [both Defendants'] liability for the alleged unlawful conduct." *See id.* at 23-24 (cites omitted). Accordingly, the FHA retaliation claims must be dismissed.

## CONCLUSION

Based on the foregoing, Dominium's Motion to Dismiss must be granted and the SAC dismissed in its entirety.

Dated this 29th day of July 2022.

                                       **ROBINSON & HENRY, P.C.**

                                       s/Daniel A. Jacobs
                                       Daniel A. Jacobs, Esq.
                                       Eric J. Neeper, Esq.
                                       1805 Shea Center Drive
                                       Highlands Ranch, Colorado
                                       Telephone: (303) 688-0944
                                       Facsimile: (303) 470-0620
                                       E-mail:  daniel.jacobs@robinsonandhenry.com
                                       eric@robinsonandhenry.com
                                       *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July, 2022, a true and correct copy of the foregoing **MOTION TO DISMISS SECOND AMENDED COMPLAINT** was filed electronically via the CM/ECF system and a copy of the foregoing will be served and mailed, via email and U.S. Mail at the address on currently on file with the Court, postage prepaid, to the *pro se* Plaintiffs, as follows:

Ashley McDaniel
933 S. Monaco Parkway
Denver, CO 80224
Email: ashaleyreneemcd@gmail.com

Tonya McDaniel
933 S. Monaco Parkway
Denver, CO 80224
Email: mommat2real@gmail.com

Additionally, pursuant to D.C.COLO.LCivR 7.1(e), all unpublished citations identified in the above Motion to Dismiss are provided to *pro se* Plaintiffs, electronically and via U.S. Mail, postage prepaid, to the addresses indicated above.

**ROBINSON & HENRY, P.C.**

s/Joyce M. Vigil
Joyce M. Vigil | Senior Paralegal