# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.       1:21-cv-01997-GPG

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
12:08 pm, Aug 23, 2022
JEFFREY P. COLWELL, CLERK

Tonya McDaniel, Ashley McDaniel_____, Plaintiff's

v.

North Range Crossings, Dominium Management LLC _____,
Defendants

## REPLY MOTION TO DISMISS SECOND AMENDED COMPLAINT

ARGUMENT

Plaintiffs are alleging claims that discriminatory behavior took place from the named defendants employees and representatives, resulting in the defendant's liability. Each claim alleged in the complaint is specific to the set of facts that qualify each plaintiff to allege a specific claim. In a claim of discrimination against religion specific facts are alleged that only pertain to religious discrimination in which the defendant's are liable. In claims of racial discrimination and disparate treatment only facts are presumed that pertain to race. The plaintiffs

in this case are only pleading the most plausible racial and religious discriminatory behavior and facts that should be heard at trial. During the discovery process with the defendant's any and all evidence will be collected in support of the plaintiffs claims, such as affidavits complaints from other black and latino tenants suffering discrimination and disparate treatment on the NRC property, records of all religious and discriminatory history with non white tenants, and the eviction rates of non white tenants vs black tenants personal to NRC. The religious discrimination in the second amendment is properly and plausibly plead in this case. The racial discrimination in the second amendment is properly and plausibly plead in this case. The retaliation claim in the second amended complaint is reasonably and plausibly plead. The plaintiffs have suffered disparate impact in this case at the fault of the defendant's as they both hold liability for the actions and inactions of their employees and representatives while employed under the Dominium, NRC brand. The plaintiffs can prove all the elements to establish an adverse disparate impact under title VI. The plaintiffs identified the specific **policy and practice** at issue; "noise complaints". Plaintiffs establish **adversity/harm,** by being evicted for said "noise complaints". Plaintiffs establish **disparity**; by illustrating white neighbors being treated in an opposite manner for the same alleged issue. Plaintiffs can establish the **causation** of this is the result of discrimination, both racial and religious and retaliation for complaints of such discrimination. NRC and Dominium as stated collect federal funding and are liable for the actions and inactions of all employed under both companies respective titles and brands.

The disparate impact regulations seek to ensure that programs accepting federal money are not administered in a way that perpetuates the repercussions of past discrimination. As the Supreme Court has explained, even benignly-motivated policies that appear neutral on their face may be traceable to the nation's long history of invidious race discrimination in employment, education, housing, and many other areas. See Griggs v. Duke Power Co., 401 U.S. 424, 430–31 (1971); City of Rome v. United States, 446 U.S. 156, 176–77 (1980); Gaston Cty. v. United States, 395 U.S. 285, 297 (1969). The disparate impact regulations ensure "that public funds, to which all taxpayers of all races contribute, not be spent in any fashion which encourages, entrenches, subsidizes, or results in racial discrimination." H.R. Misc. Doc. No. 124, 88th Cong., 1st Sess. 3, 12 (1963). The Supreme Court explained in Griggs, 401 U.S. at 429–30, that under Title VII, which was enacted at the same time as Title VI, "practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices." Id. at 430; see also Texas Dep't of Hour. & Cmty. Affairs v. Inclusive Communities, 135 S. Ct. 2507, 2521 (2015) (noting that "[r]ecognition of disparate impact claims is consistent with the [Fair Housing Act's] central purpose" as it "was enacted to eradicate discriminatory practices within a sector of our Nation's economy") (citations omitted). The regulations task agencies to take a close look at neutral policies that disparately exclude minorities from benefits or services, or inflict a disproportionate share of harm on them. A growing body of social psychological research has also reaffirmed the need for legal tools that address disparate impact. This research demonstrates that implicit bias

3

against people of color remains a widespread problem.[1]Such bias can result in discrimination that federal agencies can prevent and address through enforcement of their disparate impact regulations. Because individual motives may be difficult to prove directly, Congress has frequently permitted proof of only discriminatory impact as a means of overcoming discriminatory practices. The Supreme Court has, therefore, recognized that disparate impact liability under various civil rights laws, "permits plaintiffs to counteract unconscious prejudices and disguised animus that escape easy classification as disparate treatment." Id. at 2522. In a disparate impact case, the investigation focuses on the consequences of the recipient's practices, rather than the recipient's intent. Lau v. Nichols, 414 U.S. 563, 568 (1974). As explained throughout this Section, "a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." Inclusive Communities, 135 S. Ct. at 2513 (quoting Ricci v. DeStefano, 557 U.S. 557, 577 (2009). [2]

A recipient, in determining the type of disposition, services, financial aid, benefits, or facilities which will be provided under any such program, or the class of individuals to whom, or the situations in which, such will be provided under any such program, or the class of individuals to be afforded an opportunity to participate in any such program, may not, directly or through contractual or other arrangements, utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the

program as respects individuals of a particular race, color, or national origin. See, e.g., 28 C.F.R. § 42.104(b)(2) (emphasis added)(DOJ regulations). The Supreme Court has repeatedly held that Title VI regulations validly prohibit practices having a discriminatory effect on protected groups, even if the actions or practices are not intentionally discriminatory. Guardians Ass'n v. Civil Serv. Comm'n, 463 U.S. 582, 643 (1983) (Stevens, J., dissenting) (citing Lau, 414 U.S. at 568, 571 (Stewart, J., concurring) and Fullilove v. Klutznick, 448 U.S. 448, 479 (1980) (opinion of Burger, C.J.)); Alexander v. Choate, 469 U.S. 287, 293 (1985)). Funding agencies require that entities receiving federal financial assistance enter into standard agreements or provide assurances that the recipient will comply with the funding agency's implementing regulations under Title VI. See, e.g., 28 C.F.R. § 42.105 (DOJ) (requiring applications for federal financial assistance to be accompanied by an assurance of compliance with Title VI implementing regulations); see also United States v. Marion Cty Sch. Dist., 625 F.2d 607, 609, 612–13 (5th Cir. 1980) (confirming legitimacy of assurance requirement); Guardians, 463 U.S. at 642 n.13 (Stevens, J., dissenting) (quoting from HUD assurance). The Supreme Court has stated that agencies have a great deal of discretion in establishing discriminatory impact standards: "Title VI had delegated to the agencies in the first instance the complex determination of what sorts of disparate impact upon minorities constituted sufficiently significant social problems, and were readily enough remediable, to warrant altering the practices of the federal grantees that had produced those impacts." Choate, 469 U.S. at 293–94; see also Sandoval, 532 U.S. at 306 (Stevens, J., dissenting). And lower courts have consistently recognized and deferred to agency interpretations of the disparate impact standard. See, e.g., United States v. Maricopa Cty, 915 F.

Supp. 2d 1073, 1080 (D. Ariz. 2012) (citing Auer v. Robbins, 519 U.S. 452, 461 (1997)) (agency interpretation of its own regulations "controlling unless plainly erroneous or inconsistent with the regulations"); S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot., 145 F. Supp. 2d 446, 496 (D.N.J. 2001). This method has been applied in Fair Housing Act cases relating to access to nondiscriminatory housing, Betsey v. Turtle Creek Assoc., 736 F.2d 983, 987 (4th Cir. 1984).

## CONCLUSION

Based on the foregoing, Dominium's Motion to Dismiss should not be granted and the SAC should remain intact in its entirety and this case should remain open and active.

Dated this 19th day of August 2022.

Ashley McDaniel
933 S. Monaco Parkway
Denver, CO 80224

Tonya McDaniel
933 S. Monaco Parkway
Denver, CO 80224

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of August, 2022, a true and correct copy of the foregoing **REPLY MOTION TO DISMISS SECOND AMENDED COMPLAINT** was filed electronically via the pro se e-file system and a copy of the foregoing will be served and mailed, via email and U.S. Mail at the address on currently on file with the Court, postage prepaid, as follows:

**ROBINSON & HENRY, P.C.**

Daniel A. Jacobs, Esq.
Eric J. Neeper, Esq.
1805 Shea Center Drive

Highlands Ranch, Colorado
Telephone: (303) 688-0944
Facsimile: (303) 470-0620
E-mail: daniel.jacobs@robinsonandhenry.com
eric@robinsonandhenry.com

Attorneys for Defendants