IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01997-NYW-KLM

TONYA MCDANIEL, and
ASHLEY MCDANIEL

      Plaintiffs,

v.

NORTH RANGE CROSSINGS, and
DOMINIUM MANAGEMENT LLC,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Dismiss Second Amended Complaint** [#66][1] filed by Defendants North Range Crossings ("NRC"), and Dominium Management Services, LLC ("Dominium").[2]  Plaintiffs Tonya McDaniel and Ashley McDaniel, who proceed as pro se litigants,[3] filed a Response [#70] in opposition to the

---

[1]  "[#66]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).   This convention is used throughout this Recommendation.

[2]  The Court notes that while Plaintiffs refer to Dominium as "Dominium Management LLC" (*See* Second Amended Complaint [#65] at 3), the Court has referred to Dominium's correct name as stated in the Motion [#66].

[3]  The Court must construe liberally the filings of pro se litigants.   *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).   In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."   *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).   In addition, a pro se litigant must follow the same procedural rules that govern other litigants.   *Nielsen v. Price*, 17

- 1 -

Motion [#66], and Defendants filed a Reply [#75].   The Motion [#66] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c).   *See* [#68].   The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises.   For the reasons set forth below, the Court respectfully recommends that the Motion [#66] be **granted in part and denied in part**.

## I.      Procedural Background

Plaintiffs initiated this action on July 22, 2021, naming Mel Terrazas ("Terrazas")[4] and Dominium as Defendants in this matter.   *See Compl.* [#1].   Plaintiffs were granted leave to proceed In Forma Pauperis (Order [#6]), and were ordered to file an amended pleading.   *Order* [#9].   Plaintiffs filed an Amended Complaint [#10] on November 12, 2021, asserting claims under Title VI of the Civil Rights Act of 1964 ("Title VI)*,* the Fair Housing Act (the "FHA"), Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act ("ADA").

On December 2, 2021, Magistrate Judge Gordon P. Gallagher conducted a preliminary review of the Amended Complaint [#10], recommending that the ADA and Rehabilitation Act claims be dismissed without prejudice and the other claims be drawn to a presiding judge.   *Recommendation of United States Magistrate Judge* [#13].   This Recommendation [#13] was accepted and adopted by Senior Judge Lewis T. Babcock.

---

F.3d 1276, 1277 (10th Cir. 1994).

   4  Both Plaintiffs and Defendants incorrectly refer to Terrazas as "Mel Terras" throughout the record.   *See e.g.*, *Motion* [#66] at 2; *Second Am. Compl.* [#65] at 8.

*Order* [#14].   The case was then assigned to District Judge Regina M. Rodriguez and to then Magistrate Judge Nina Y. Wang as the referral judge.   [#28].

A Recommendation of United States Magistrate Judge [#59] ("Recommendation") was issued on May 3, 2022 by Judge Wang, recommending that Defendants' Motion to Dismiss Plaintiff's Amended Complaint [#30] be granted.   This Recommendation [#59] was accepted and adopted by Judge Rodriguez by Order [#62] of June 1, 2022. Pursuant to that Order [#62], the Title VI claim was dismissed with prejudice against Terrazas.   The FHA claim against Terrazas and the FHA and Title VI claims against Dominium were dismissed without prejudice, and Plaintiffs were granted leave to amend as to those claims.   *Id.* at 3.   The case was later reassigned to Judge Wang upon her appointment as a District Court Judge (see [#69]), and the undersigned became the referral judge.   [#68].

Plaintiffs filed the Second Amended Complaint [#65] on July 15, 2022, which is the operative Complaint.   Defendants then filed the instant Motion [#66].   In the Second Amended Complaint [#65], Plaintiffs drop Terrazas as an individual Defendant, reassert their Title VI and FHA claims against Dominium, and assert these same claims against NRC, a new party-defendant.   *See id.*   Plaintiffs thus assert the following claims:   (1) a violation of Title VI for discrimination based on race and religion, (2) a violation of the FHA for discrimination based on race and religion, (3) retaliation under Title VI and the FHA; and (4) a harassment claim under the FHA.   *Second Am. Compl.* [#65] at 21-25.

In the Motion [#66], Defendants assert that the Second Amended Complaint [#65] makes "multiple pleading defects" and requires dismissal pursuant to Fed. R. Civ. P.

12(b)(6).   *See, e.g., id.* at 8.   Generally, Defendants argue in regard to the discrimination and harassment claims that Plaintiffs fail to allege "concrete" facts which show that either of the Defendants knew or should have known about the facts at issue, that the Second Amended Complaint [#65] fails to show that there was any relation between Defendants and the alleged discrimination, or that the alleged harassment and disparate treatment was significant enough to constitute a violation of either the FHA or Title VI.   *See Motion* [#66] at 8-10, 12.   In regard to the retaliation claim, Defendants argue that Plaintiffs have failed to plausibly plead that Defendants were involved in the retaliatory acts, failed to plausibly plead a sufficient temporal connection between the alleged acts of retaliation and the protected activity, and failed to plausibly plead a retaliation claim.   *Id.* at 14-15.

Plaintiffs' Response [#70] argues in a conclusory fashion that the claims are properly and plausibly pled, and cites purported applicable law and legal authorities on their FHA disparate impact claim.   However, Plaintiffs offer little to address the specific arguments by Defendants.   As Defendants note in the Reply [#75], the Response "provides no supportive citation to specific and concrete fact(s)" in the Second Amended Complaint, and no explanation of how the fact(s) render their claims plausibly alleged under applicable law.   *Id.* at 2.   Even without a substantive response, however, the Court must "test 'the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true" to determine if the claims are plausible.   *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003).[5]

---

5   To the extent Plaintiffs argue that the claims will be supported by discovery in the case (Response [#70] at 2), this is not a proper basis to defeat the Motion [#66] because the Court must take the facts from the complaint.   *Frey v. Town of Jackson*, 41 F.4th 1223, 1229 (10th Cir.

## II.   Factual Allegations[6]

On August 31, 2018, Plaintiffs applied to live in an apartment at North Range Crossings, which is a federally funded property operated by the United States Department of Housing and Urban Development ("HUD").   *Second Am. Compl.* [#66] at 4.   Plaintiffs are single mothers who identify as "[B]lack Hebrew Jews" and who, at all times relevant to this action, were eligible for Section 8 housing.   *Id.*   Plaintiffs allege that they disclosed these protected characteristics on all applicable documents during the lease application process.   *Id.*

Also at the lease signing, Plaintiffs informed NRC that their religious practice required them to burn "various items for ritualistic reasons . . . "   *Second Am. Compl.* [#65] at 5.   Although Plaintiffs were first told that they could not engage in these practices because NRC is a smoke-free property, NRC staff eventually agreed to let them perform their religious "sacrifices" on the property.   *Id.*   Plaintiffs allege that following this incident, Defendants engaged in "discrimination, harassment, false allegations, and multiple threats of eviction due to their race and religion" which continued for the next two years.   *Id.*

Plaintiffs claim to have kept a "detailed log" of these incidents.   *Second Am.*

---

2022).   In addition, Plaintiffs have not pled "concrete facts sufficient to 'raise the reasonable expectation that discovery will reveal evidence supporting [their claims].'"   *Id.* at 1243 (quotation omitted).   They have merely expressed their belief that discovery will support their claims, which is not sufficient.   *Id.*

[6]   All well-pled facts from the Second Amended Complaint [#65] are accepted as true and viewed in the light most favorable to Plaintiffs as the nonmovant.   *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

*Compl.* [#65] at 6, 12.   The Second Amended Complaint [#65] often presents these incidents out of order, and it is not necessarily clear how some of the entries actually relate to the claims brought against Defendants.   *Id.*   For example, Plaintiffs first describe an incident on April 5, 2019, where they were fined for having unreported pets in their apartment, and informed that failure to pay the fine could be grounds for eviction. *Id.* at 6.   Although Plaintiffs aver that this incident was "an act of discrimination, retaliation, and sabotage," they nonetheless concede that, after having offered documentation for the pets as "live-in aide[s]" and showing that they had previously submitted that documentation, the fine was reversed, and no eviction occurred.   *Id.* at 6.

Similarly, Plaintiffs allege that on August 6, 2019, due to "harassment received from NRC staff," they requested that they be able to break their lease.   *Second Am. Compl.* [#65] at 6.   According to Plaintiffs, a manager, David Lepak, agreed that they could break the lease at no cost to Plaintiffs.   *Id.*   Nevertheless, on August 26, 2020, nearly a year after the parties allegedly agreed to amicably break the lease, Plaintiffs report that they met with NRC management to re-sign the lease.   *Id.* at 7.   At this meeting, Plaintiffs claim that NRC informed them that $1,238.00 was missing from their account ledger, and that if they refused to pay, they would be evicted.   *Id.*   After an investigation into the missing money, Plaintiffs aver that HUD rectified the balance, which was attributed to an "internal clerical issue[,]" and no eviction occurred.   *Id.*

The most relevant of the incidents described by Plaintiffs to the claims at issue concerns noise complaints.   According to Plaintiffs, on March 24, 2020, NRC management sent a "property-wide mass email" warning the residents that they had

received numerous noise complaints from several residents during the stay-at-home mandate. *Second Am. Compl.* [#65] at 7. NRC sent two more property-wide emails in 2020 which similarly notified residents of noise complaints and warned that noise disturbance was a violation of the lease agreements. *Id.* On January 5, 2021, Plaintiffs received an email from NRC which informed them that a formal complaint had been submitted against them for "loud noise including stomping and banging" emanating from their apartment which was purportedly disturbing other residents. *Id.* at 7-8. Plaintiffs sent three emails to NRC inquiring about the nature of the noises and when they occurred, but received no response. *Id.* at 8.

In comparison, Plaintiffs allege that their white neighbors received different treatment when it came to noise complaints. *See Second Am. Compl.* [#65] at 11-12. Plaintiffs first claim that although a white tenant who lived beneath them complained "orally" and repeatedly about noise produced by Plaintiffs' white neighbor, the downstairs tenant was never prompted by NRC to file a formal written complaint about the issue. *Id.* Plaintiffs also claim that their white neighbor never received specific notice about the noise complaints against the neighbor, only receiving the emails sent to the entire property about noise. *Id.* Further, Plaintiffs aver that the noise and complaints continued against the white neighbor, who was offered warnings and corrections, and that Terrazas did not require that a written complaint be made against the neighbor. Instead, Terrazas mediated the situation, and offered both the downstairs white tenant and the upstairs white neighbor new units on the property which were "more accommodating to their needs" in order to resolve the noise issues. *Id.* Plaintiffs state

that no similar offer to move, mediation, warnings, or corrections were extended to them because they are black women.   *Id.*

Finally, on May 14, 2021, Plaintiffs were scheduled to meet with NRC staff to re-sign the lease agreement for another year.   *Second Am. Compl.* [#65] at 8.   Due to previous hostile interactions with Terrazas, a property manager, Plaintiffs requested that they deal with a different NRC staff member.   Plaintiffs do not state whether or not this meeting actually occurred.   *Id.*   Three days later, on May 17, 2021, NRC served Plaintiffs a Notice to Quit which cited the formal noise complaint, other noise complaints, and allegations that Plaintiffs had harassed their neighbors.   *Id.*   The next day, May 18, 2021, Terrazas informed Plaintiffs that, although they would be allowed, and obligated, to finish their current lease, NRC would not renew their lease for another term based on the circumstances indicated in the Notice to Quit.   *Id.*   Plaintiffs aver that the refusal to resign the lease with Plaintiffs was due to their race and religion.   *Id.* at 4.   Plaintiffs further aver that "placing something defamatory and false" (the noise complaints) in their "housing file is a deliberate act of discrimination to provoke the false narrative to not lease the property to plaintiffs."   *Id.* at 16.

The Second Amended Complaint [#65] further alleges that Terrazas refused to "acknowledge and sign" various documents relating to their Section 8 vouchers, and otherwise delayed the submittal and processing of the paperwork which Plaintiffs needed to secure alternative housing arrangements before the term of their lease was up.   *Id.* at 9.   Plaintiffs claim that as a result of this delay they were unable to move out before their lease expired, prompting NRC to initiate an eviction action.   *Id.*   Plaintiffs went to

mediation with NRC in order to delay eviction, and NRC agreed to a delay until NRC completed its paperwork and the Section 8 housing voucher was processed by HUD.   *Id.* Plaintiffs allege that NRC violated that agreement by continuing with the eviction action despite the fact that the HUD voucher was not yet processed.   *Id.* at 9-10.   Plaintiffs argue that mediation was used in a "discriminatory fashion" to obtain an eviction because they are :"Black Jewish women[,]" and further contend that no actual violations of the lease occurred.   *Id.*   The same noise issue for two different sets of tenants resulted in an eviction of Plaintiffs but a solution for the white tenant.   *Id.* at 12.   Plaintiffs also argue that the "[f]alse noise allegations were used in a discriminatory manner to falsely accuse two black female tenants of stereotypically being loud."   *Id* at 10.

Defendants filed a Writ of Restitution the same day as the mediation, which allowed the clock to start running towards an eviction.   *Second Am. Compl.* [#65] at 10. Plaintiffs were unaware of the filing of the Writ, and Defendants did not complete the notice of service of process of the Writ.   *Id.*   Plaintiffs were only informed of the Writ when the sheriff's department put a final notice of eviction sticker on their door.   *Id.* Defendants did not follow the proper procedure for an eviction and, according to Plaintiffs, had no intention of working with or negotiating with Plaintiffs.   *Id.* at 18.   Upon finding out about the eviction notice and the lack of service of the Writ, Plaintiffs unsuccessfully tried to get an emergency hearing with the eviction judge.   *Id.* at 10.

Because they were unable to secure a stay of the eviction proceedings while their HUD paperwork was processed, Plaintiffs were forcibly evicted from their apartment on December 7, 2021.   *Second Am. Compl.* [#65] at 10.   Plaintiffs were otherwise unable

to secure alternative housing arrangements and were thus homeless, and aver they suffered adverse credit history in connection with the recorded eviction.   *Id.* at 20. Plaintiffs' belongings were placed out in the yard, and Plaintiffs were forced to get rid of family valuables and items that would not fit in a storage unit.   *Id.* at 18, 20.   Plaintiffs allege that Defendants' conduct is part of a larger scheme to "evict all black Section 8 tenants as a means to have only white 'cash-paying' tenants on the property."   *Id.* at 14. In support of this allegation, Plaintiffs allege that NRC prefers rent from "cash-paying tenants" as opposed to Section 8 tenants, who Plaintiffs claim are predominately Black and Latino minorities.   *Id.* at 14-15.   Defendants are allegedly "attempting to bridge the gap between black and Latino section 8 tenants and white-cash-paying tenants by harassing section 8 tenants until they move voluntarily or by constantly threatening eviction on section 8 tenants until eviction occurs."   *Id.* at 14-15.   Plaintiffs further aver that threatening an eviction on a Section 8 tenant is threatening the entire HUD housing voucher, which can leave the household homeless.   *Id.* at 15.   Plaintiffs conclude that they have "the right to enjoy and lease real property without the fear of discrimination and retaliation for being black, female, a single parent, and Jews."   *Id.*

### III.   Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").   "The court's function on a Rule 12(b)(6) motion is

not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.   Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."   *Id.* (brackets in original; internal quotation marks omitted).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."   *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ] that the pleader is entitled to relief."   *Iqbal*, 552 U.S. at 679

(second brackets added; citation and internal quotation marks omitted).

## IV.   Analysis

### A.   Personal Participation

The Court first addresses Defendants' argument that Plaintiffs have failed to establish that the alleged discrimination or the purported adverse acts were committed by Dominium or NRC.   *Motion* [#66] at 9-10.   Specifically, Defendants argue that the Second Amended Complaint [#65] "fails to sufficiently develop the nature, manner, and overall context of Defendants' involvement in the alleged discrimination/retaliation and, specifically, fails to connect Defendants to the alleged participation by [Terrazas] and other unidentified property management staff" in the alleged discrimination/retaliation, and fails to aver the unidentified staff members' position or authority on behalf of either Defendant.   *Id.* at 9.   Defendants further argue that Plaintiffs fail to allege concrete facts identifying who engaged in the purported adverse acts by either Defendant and the connection between Dominium, NRC, and the North Range Crossings housing complex. According to Defendants, that "renders the connection between [Defendants] and th[e] alleged conduct implausible."   *Id.* at 10.

Turning to the analysis, the Court first notes that Plaintiffs do not clearly explain the relationship between NRC and Dominium.   *See, e.g., Second Am. Compl.* [#65]. Plaintiffs simply state that both Defendants are federally funded organizations in the Commerce City area, operating multiple housing units in Colorado, and that they "are run by the same upper management David Lepak, Jean Ferguson, and Jill Korkki."   *Id.* ¶¶ 56-57.   Plaintiffs also do not specifically aver which Defendant Terrazas worked for.

However, drawing all reasonable inferences in Plaintiffs' favor, *Maehr v. IRS*, No. 22-cv-00830-NYW-NRS, 2023 WL 155708, *2 (D. Colo. Jan. 11, 2023), the Court infers for purposes of the Motion [#66] that Terrazas was part of the staff/property management of NRC.   *See Second Am. Compl.* [#65] at ¶ 23 (stating that Plaintiffs were scheduled to meet with NRC staff but did not want to meet with Terrazas); ¶ 25 (referring to "office staff member" Terrazas in connection with reference to NRC); ¶ 26 (referring to Mel [Terrazas] as the "acting property manager" for NRC).

The Court first addresses the allegations against Dominium.   Dominium is sparingly mentioned in the Second Amended Complaint [#66].   *See generally id.*   More importantly, Plaintiffs do not appear to attribute any of the alleged discriminatory, retaliatory or harassing actions to Dominium in the factual allegations; the actions are attributed to NRC or its staff or management.   *See, e.g.,* 4-12.[7]   Despite the lack of reference to Dominium in the factual allegations that support Plaintiffs' claims, Plaintiffs then lump Dominium in with NRC in a formulaic and conclusory way in Plaintiffs' Statement of Claims.   *See, e.g., id.* ¶ 56 ("The fair housing act was violated when the defendants began to partake in multiple discriminatory actions against the plaintiffs deliberately to take away the enjoyment of real property."); *see also* ¶¶ 51-52, 55, 57-59. Such conclusory allegations of discrimination, retaliation, and harassment by Dominium, unsupported by any of the factual allegations, "are not entitled to the presumption of truth"

---

7   The only exception is ¶ 33 where Plaintiff states that NRC and Dominium used mediation in a discriminatory fashion.   *Id.* at 9.   However, all of the events related to the mediation that Plaintiff claims were discriminatory were alleged to have been committed by NRC. *Id.* ¶¶ 29-32.

and do not state plausible claims. *Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (finding that dismissal was appropriate where there was "no nexus between the person(s) to whom [the plaintiff] complained" and the person committing the alleged discrimination).

As Judge Wang found in the Recommendation [#59] as to the previous Motion to Dismiss, failure to plead specific facts showing that a defendant engaged in the alleged discriminatory conduct renders a plaintiff's allegations deficient. *See id.* at 27-28 (citing, e.g, *Cooper v. Coldwell Banker*, No. CIV. A. 07-1208, 2007 WL 4792982, at *3 (W.D. La. Dec. 3, 2007) (the plaintiff failed to state a claim where she "ma[de] several general allegations" that the owner of a real estate agency "operated his business in a discriminatory manner" but asserted "no factual allegations that tie[d] [the owner] to participation in the allegedly unlawful acts that occurred in this case"). Similarly, as also noted in the Recommendation [#57], personal participation is a necessary element of individual liability under the FHA, and courts routinely find that a plaintiff fails to state an FHA claim where the plaintiff has not tied any of the alleged wrongful conduct to a named defendant. *Id.* at 13 (citing cases).

Here, it is implausible that Dominium discriminated or retaliated against Plaintiffs when the Second Amended Complaint [#65] lacks even the slightest indication that Dominium or its staff personally participated in the alleged conduct. While Plaintiffs allege both entities share upper management staff (which the Court notes does not include Terrazas), Plaintiffs do not provide any facts from which the Court can infer that Dominium can be held responsible for the conduct of NRC's staff. The failure to allege

any such facts renders the connection between Dominium and alleged conduct of NRC implausible.   The Court cannot plausibly find that NRC's acts are attributable in any way to Dominium for purposes of the claims.

Accordingly, it is recommended that the Motion [#66] be **granted** as to Dominium, and that it be **dismissed** from the case.

In comparison, to the extent the Motion [#66] argues that Plaintiffs have not tied NRC to the actions at issue, the Court disagrees and recommends **denying** the Motion [#66] as to this issue.   Plaintiffs allege, for example, that Defendant NRC and its staff/management denied re-execution of Plaintiffs' lease on the basis of Plaintiffs' race and religion under the false pretext of a noise complaint; denied offering Plaintiffs the same mediative remedies and alternative housing arrangements as their white neighbors; intentionally delayed and refused to complete Plaintiffs' Section 8 housing paperwork resulting in their eviction because of their race and religion; and that NRC similarly discriminates against all Section 8 tenants, who Plaintiffs contend are predominately Black and Latino, in order to increase the amount of "cash paying" white tenants.   *See Second Am. Compl.* [#65] at 4-18.   Having established that Plaintiffs have sufficiently established a nexus between Defendant NRC and the alleged Title VI and FHA violations, the Court will next analyze if Plaintiffs have plausibly alleged a claim against NRC entitling them to relief.   Accordingly, the Court proceeds to assess the merits of the claims.

**B.     Title VI Discrimination Claim Based on Religion**

The Court first addresses the Title VI claim against Defendant NRC for discrimination based on religion.   *Second Am. Compl.* [#65] at 20-21.   NRC argues that

religion is not a cognizable class protected by Title VI, and so dismissal of this claim is warranted to the extent it is brought on the basis of religious discrimination.   *Motion* [#66] at 8.   The Court agrees.   The statute, 42 U.S.C. 2000d (2002), states that "[no] person in the United States shall, on the ground of *race, color, or national origin* . . . be subjected to discrimination under any program or activity receiving federal financial assistance." (emphasis added).   The statute does not refer to religion as a basis for a claim, and such a claim is not proper under Title VI, as previously found by Judge Wang.   *See Recommendation* [#59] at 8 ("While the McDaniels' religion is a cognizable FHA protected status, it is not under Title VI, and consequently their pled Title VI religious discrimination claims cannot survive.");   *Compare* 42 U.S.C. § 3604(a)-(f) *with* 42 U.S.C. § 2000d.

Accordingly, , the Court **recommends** that the Motion [#66] be **granted** as to the religious discrimination claim under Title VI.[8]

## C.    Title VI Discrimination Claim Based on Race

Again, Title VI prohibits discrimination on the basis of race, color, or national origin in any federally funded program or activity.   42 U.S.C. § 2000d.   The Supreme Court has held that only intentional discrimination is prohibited by Title VI.   *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).   Title VI claims are analyzed using the same legal standards which apply to Title VII claims.   *See Bird v. Regents of N.M. State Univ.*, 619 Fed. App'x 733, 741 (10th Cir. 2015).   In order to state a claim of discrimination, a plaintiff must allege facts from which the Court can plausibly find or infer both that the defendant

---

8   To the extent Plaintiff's claim can be construed as stating a Title VI discrimination claim based on gender, the Court recommends that this claim be **dismissed** on the same basis.   As with religion, gender is not a cognizable class protected by Title VI.

discriminated against the plaintiff on the basis of race, color, or national origin, and that the defendant receives federal financial assistance.   *Gokool v. Okla. City Univ.*, 716 Fed. App'x 815, 819 (10th Cir. 2017) *(citing Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993)); *see also Recommendation* [#59] at 7.   Here, Plaintiffs are members of a protected class on account of their race, and Plaintiffs have alleged that NRC receives federal financial assistance.   Thus, the Court turns to whether Plaintiffs have pled facts to support the discrimination element.

Under Title VII, a plaintiff may establish that she has been discriminated against either by showing direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (hereinafter the "*McDonnell Douglas* framework") utilized in Title VII claims.   *Khalik*, 671 F.3d at 1192. Under the *McDonnell Douglas* framework "a three-step analysis requires the plaintiff first prove a prima facie case of discrimination."   *Id.*   A prima facie cause of discrimination is met by establishing that (1) the plaintiff is a member in a protected class; (2) the plaintiff suffered an adverse action; and (3) the circumstances of the alleged adverse action give rise to an inference of discrimination, such as when similarly situated individuals of a different class receive favorable treatment.   *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007); *see also Recommendation* [#57] at 8.   Again, this standard applies to the Title VI claim.

While the Rule 12(b()6) standard does not require that Plaintiffs establish a prima facie case in the complaint, "the elements of each alleged cause of action help determine whether Plaintiff has set forth a plausible claim."   *Khalik*, 671 F.3d at 1192.   Conclusory

- 17 -

allegations, unsupported by facts, are not sufficient. *Id.*[9]  Thus, while Plaintiffs do not need to conclusively set forth a prima facie case for each element, *id.* at 1193, the complaint "must contain more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (quotation and alteration marks omitted).   Based on the foregoing, the Court turns to whether Plaintiffs have alleged sufficient factual detail to state a plausible claim of discrimination.

Defendants argue that Plaintiffs have failed to meet the second and third elements of a prima facie case of discrimination.   *Motion* [#66] at 8-12.   In regard to the second requirement, Defendants argue that Plaintiffs fail to allege any "*materially*" adverse actions against Plaintiffs.   *Id.* at 10 (emphasis in original).   According to Defendants, the Second Amended Complaint [#65] does not contain specific facts "suggesting that an objectively reasonable person would find that the Defendants subjected the Plaintiffs to a significant adverse change in or denial of a housing benefit, privilege, or opportunity in their NRC rental."   *Id.*   Rather, Defendants contend that the acts alleged against Plaintiffs in the Second Amended Complaint [#65] were trivial—not more than a "petty slight, minor annoyance, [or] a simple lack of good manners."   *Id.* (citing *Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted)).

The Court is unpersuaded by this argument.   Plaintiffs aver, and Defendants do not appear to dispute, that not only were Plaintiffs denied the opportunity to re-lease their

---

9  "An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement."   *Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1233 (10th Cir. 2022.)

apartment by Defendant NRC, but also that the allegedly discriminatory conduct by NRC resulted in their forcible eviction, which compromised their eligibility for Section 8 housing status.    *Second Am. Compl.* [#65] at 4-13, 18.    Plaintiffs further allege that their belongings were thrown out on the lawn, and that they were homeless.    The Court finds from these allegations that an objectively reasonable person could find that Defendants subjected Plaintiffs to a significant adverse change in or denial of a housing benefit, privilege, or opportunity in their NRC rental.

In regard to the third requirement for a prima facie case, Defendants argue that the complaint does not permit an inference that the circumstances of the alleged materially adverse actions were the result of discrimination.    More specifically, Defendants assert that while Plaintiffs aver that their white neighbor was treated differently from them in connection with noise complaints, Plaintiffs have not shown that that the white neighbor was similarly situated to Plaintiffs as tenants in all "material respects."    *Motion* [#66] at 11.    Thus, Defendants argue that Plaintiffs have not averred that they were eligible for or entitled to the same mediation or relief as their neighbor, that Plaintiffs requested such a remedy, or that Defendants have authority or control over offering such an opportunity or the transfer of units.    *Motion* [#66] at 12.    In the context of a Title VII discrimination claim, "[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance, evaluation and discipline."    *Arambu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997) (quoting *Wilson v. Utica Park Clinic*, Inc., 76 F.3d 394 (10th Cir. 1996)).    While neither party has addressed the test for determining who similarly situated tenants are, the Court infers, applying the

- 19 -

above rationale to a Title VI claim, that similarly situated tenants would logically be those who deal with the same management company and are subject to the same standards in connection with their housing.  *Id.; see also Glenn*, 41 F.4th at 1233 (finding that the court can draw on its experience and common sense in assessing the plausibility of a claim).

Here, again it is reasonable to infer, and Defendants have not shown otherwise, that tenants in a multi-unit housing complex like that of North Range Crossing are subject to the same lease requirements, conditions, and supervised by the same entity, Defendant NRC.   The Second Amended Complaint [#65], taken as true and viewed in the light most favorable to Plaintiffs, avers that Plaintiffs' white neighbor, a co-tenant, was treated differently from Plaintiffs in connection with the same type of noise complaints, which is supported by specific factual allegations.   *See Second Am. Compl.* [#65] at 12 ("the same noise issue for two separate people resulted in an eviction for one but was met with a solution for the other").   According to Plaintiffs, despite the fact that their downstairs neighbor had similarly complained about noise produced by their white neighbor, NRC did not require that a formal complaint be lodged against the neighbor, even though all were tenants at the same property and subject to the same lease conditions.   *Id.* at 11-12.   Plaintiffs also state that Terrazas, "the acting property manager" for NRC, mediated a solution to the noise complaint whereby the white tenant was moved to remedy the issue, whereas the noise complaint resulted in an eviction for the Plaintiffs.   *Id.* at 12.   Finally, Plaintiffs aver that they attempted to contact NRC three times by email to address the noise issues but were ignored.   *Id.* at 8.

Construing the evidence in the light most favorable to Plaintiffs, they have alleged facts from which the Court can plausibly infer that (1) as black women they are members of a protected class; (2) they were denied the opportunity to re-lease and were forcibly evicted (materially adverse actions) in a manner that threatened and ultimately impacted their eligibility for Section 8 housing; and (3) that similarly situated white tenants were treated differently.   As Judge Wang stated in her Recommendation [#59] regarding the earlier Amended Complaint, discriminatory intent "can be inferred from the mere fact of differences in treatment."   *Id.* at 27-28 (citing *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1260 (10th Cir. 1988)).   The Court finds from the foregoing that Plaintiffs have alleged sufficient factual detail to state a plausible claim of racial discrimination.   *See Ngiendo v. Univ. Partners, LLC*, No. 2:20-cv-02393-HLT-TJJ, 2021 WL 5038780, at *7 (D. Kan. Oct. 27, 2021) (finding the plaintiff adequately stated a race discrimination claim where she alleged that she was given a filthy, moldy apartment while white tenants were given better housing, as such facts were sufficient at the pleading stage to allege a racial animus); *Ross v. Midland Mgmt. Co.*, No. 02 C 8190, 2003 WL 21801023, *5-6 (N.D. Ill. Aug. 1, 2003) (finding a civil rights violation when the plaintiff alleged that the caucasian-occupied apartments, owned and operated by the defendants and which were generally un-subsidized, were maintained in better condition merely because of the occupants' race as compared to her apartment and the other subsidized rental units, thus adequately alleging that similarly situated white tenants were provided with better living conditions).

The Court recognizes that Judge Wang came to a different result in her Recommendation regarding Defendants' Motion to Dismiss [#30] as to the Amended

Complaint [#10].   However, Plaintiffs did not allege in the Amended Complaint [#10] what entity Terrazas served as property manager for, and sued Terrazas individually. *Recommendation* [#59] at 10-11.   Moreover, Judge Wang agreed with Defendants that the Amended Complaint [#10] lacked specific, non-conclusory factual allegations from which an inference could be drawn that Terrazas exercised discretionary power and authority over the alleged wrongdoers such that any unlawful conduct could be attributed to her.   *Id.* at 12-15.   In other words, Plaintiffs failed to tie any of the alleged wrongful conduct to a named defendant through Terrazas or other staff.   *Id.*   Thus, Plaintiffs did not allege facts suggesting that Terrazas had authority or control over providing options of mediation or moving to a new unit to Plaintiffs.   *See id.* at 15.   Judge Wang stated as to that issue that "while Plaintiffs suggest that Ms. Terrazas is a 'representative' of Dominium, . . . they raise no allegations with respect to her position or authority at North Range Crossings or Dominium—so as to plausibly allege that Ms. Terrazas was in 'a position to directly effectuate' the alleged disparate treatment."   *Id.* (quotation omitted).

Here, by contrast, Plaintiffs allege that Terrazas was the acting property manager for NRC.   The Court can reasonably infer from this that Terrazas would have had authority to extend the options she gave to the white neighbors to Plaintiffs if she so chose, even if Plaintiffs did not specifically ask for such options.[10]   Moreover, as acting property manager for NRC, Terrazas would appear to be "an 'appropriate person' at the

---

10   Plaintiffs do allege, however, that they sent three emails to NRC inquiring about the noises but received no response.   *Id.* at 8.   It can be reasonably inferred from this that Plaintiffs did attempt to contact NRC about the noise complaints, where they could have inquired about options, but did not hear back from Terrazas or anyone else at NRC.   This is also a difference in treatment between Plaintiffs and the white tenants.

entity, that is, someone in a position to remedy the discriminatory or retaliatory conduct."
*See Recommendation* [#59] at 24-25.   Terrazas is alleged to have had actual notice of
the alleged conduct and did not respond adequately.   *Id.*

Based on the foregoing, it is recommended that the Motion [#70] be **denied** as to
the Title VI claim of discrimination based on race against Defendant NRC.

**D.    Fair Housing Act Discrimination Claims**

Plaintiffs also assert a claim under the FHA for discrimination based on race and
religion.   *Second Am. Compl.* [#65] at 22-23.   The FHA, 42 U.S.C. §§ 3601, *et seq.*,
prohibits discrimination in the sale or rental of a dwelling to any renter, or discrimination
against any person in the terms, conditions or privileges of the rental of a dwelling, or in
the provision of services of facilities in connection with such dwelling, because of the
renter's race, color, religion, sex, familial status, national origin, or handicap.   *See* 42
U.S.C. §§ 3604(a), (b), and (f).   Thus, unlike Title VI, the FHA includes religion and sex
as a basis for a claim.

A plaintiff alleging discrimination under the FHA may bring three general types of
claims: (1) intentional discrimination claims (disparate treatment claims); (2) disparate
impact claims; and (3) claims alleging a defendant refused to make reasonable
accommodations for his or her handicap.   *Reinhart v. Lincoln Cnty.*, 482 F.3d 1225, 1229
(10th Cir. 2007).   Because Plaintiffs proceed pro se, the Court liberally construes the
Second Amended Complaint [#65] as stating claims of both disparate treatment and
disparate impact.

**1.    Disparate Treatment**

- 23 -

As Judge Wang stated in the Recommendation [#59] regarding the previous Motion to Dismiss, to state an FHA discrimination claim based on disparate treatment, a plaintiff must allege that "(1) she is a member of a protected class; (2) she was denied a rental relationship or otherwise treated differently in the terms, conditions, or privileges of her rental relationship or in the provision of services or facilities to her as a tenant; and (3) the different treatment was, at least in part, because of her [protected status]." *Id.* at 8-9 (citing *Wilson v. Guardian Mgmt., LLC*, 383 F. Supp. 3d 1105, 1108 (D. Or. 2019)). The alleged discriminatory treatment must be attributable to the named defendants. *Id.* at 9 (citing *Cox v. Phase III, Invs.*, No. CIV.A. H-12-3500, 2013 WL 3110218, at *10 (S.D. Tex. June 14, 2013)).   Further, disparate treatment claims brought under the FHA are analyzed under the same *McDonnell-Douglas* Framework discussed in Section IV.C, *supra*, to evaluate discrimination claims brought under Title VI.   *Cinnamon Hills Youth Crisis Ctr., Inc. v. St. George City*, 685 F.3d 917, 919 (10th Cir. 2012); *see also Ashbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989).

As to the disparate treatment claim based on race, the Court finds that Plaintiffs have sufficiently alleged facts which plausibly state an FHA disparate treatment claim under the *McDonnell-Douglas* Framework for the same reasons discussed in connection with the Title VI discrimination claim.   *See* Section IV.C, *supra*.   The Court can plausibly infer from the allegations in the Second Amended Complaint [#65] that 1) as black women Plaintiffs are members of a protected class; (2) they were denied the opportunity to re-lease and were forcibly evicted (materially adverse actions) in a manner that threatened and ultimately impacted their eligibility for Section 8 housing; and (3) that similarly situated

- 24 -

white tenants were treated differently.   From this, the Court can reasonably infer that the different treatment was, at least in part, because of Plaintiffs' protected status. Accordingly, it is recommended that the Motion [#66] be **denied** as to the disparate treatment claim under the FHA based on race.

Plaintiffs also bring an FHA disparate treatment claim on the basis of religion. *Second Am. Compl.* [#65] at 22.   However, while Plaintiffs alleged that their similarly situated neighbors are of a different race, they have not alleged that their neighbors are of a different religion.   *See Second Am. Compl.* [#65] at 11-12.   The "circumstances of the adverse action" thus cannot give rise to an "inference of discrimination" based on religion.   *See Morris v. Leon N. Weiner & Assocs.*, No. TDC-16-2860, 2017 WL 1169522, *4 (D. Md. Mar. 28, 2017) (finding that the plaintiffs' allegations were insufficient to state a plausible claim of housing discrimination, in that case based on race or color, because they failed to allege facts to show that tenants of a different race or color were treated differently under similar circumstances).   Accordingly, the Court recommends that the Motion [#66] be **granted** as to the FHA disparate treatment based on religion.[11]

**2.      Disparate Impact**

In contrast to the disparate treatment standard, a disparate impact claim challenges a facially neutral policy that "actually or predictably results in discrimination." *Cinnamon Hills Youth Crisis Ctr.*, 685 F.3d at 922.   The policy at issue need not be formulated with discriminatory intent.   *Id.*   However, a disparate impact claim "must

---

11   To the extent Plaintiffs are alleging gender or sex discrimination under the FHA, this claim fails for the same reason.

allege a pattern or practice of discrimination, not merely an isolated instance of it." *Grays v. Kittredge Co*, No. 1:20-CV-00208-WJM-SKC, 2021 WL 1300601 at *7 (D. Colo, Feb. 17, 2021) (citations omitted).  Disparate impact "'is generally shown by statistical evidence involving the appropriate comparables necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors.'" *Id.* (citation omitted).  Even if statistical evidence is not required to overcome a motion to dismiss, a plaintiff must still nudge the claim "across the line from conceivable to plausible[,]" alleging "facts to reasonably support the inference of a 'pattern or practice of discrimination[.]'" *Id.* (internal quotation marks and citations omitted).

Defendants argue that Plaintiffs fail to assert a plausible FHA disparate impact claim because there are no specific facts reasonably suggesting that the claim elements are satisfied; "but rather entirely vague, conclusory, and overgeneralized assertions." *Motion* [#66] at 13.  The Court agrees.  While Plaintiffs allege in their Response [#70] that the policy at issue is "noise complaints", *id.* at 2, Plaintiffs have not identified what the policy is as to noise complaints, let alone that there is a pattern or practice of discrimination regarding noise complaints.

Plaintiffs also allege that Defendant NRC prefers non-Section 8 tenants because their payments come "sooner" than Section 8 tenants, and so engages in harassing conduct to remove Section 8 tenants from its rental property.  *Second Am. Compl.* [#65] at 14-15.  Further, it is alleged that Section 8 tenants are predominately Black and Latino, and therefore that this policy has a discriminatory impact on Black and Latino minorities. *Id.* at 15.  However, other than Plaintiffs' own experience, the Second Amended

- 26 -

Complaint [#65] fails to allege any instance of other Section 8 tenants experiencing discriminatory or harassing treatment from Defendant NRC.   Similarly, the contention that Section 8 tenants are predominately Black and Latino is not supported by any fact or statistic found in the Second Amended Complaint [#65].   Plaintiffs' averment that Section 8 tenants are less desirable from a financial standpoint because NRC receives their payments later in the month, *id.* at 14, is also unpersuasive because it is conclusory and unsupported by any facts.   *Id.* at 14.   Further, the FHA disparate impact claim sounds only in Plaintiffs' "singular experience," and does not involve a pattern or practice of discrimination based on a facially neutral policy. *See Grays*, 2021 WL 1300601, at * 4 (citing *Nat'l Far Hous. All. V. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 28-29 (D.D.C 2017) ("There is a robust causality requirement at the prima facie stage" of an FHA disparate impact claim.) (citing *Texas Dep't of Hous. And Cmty.  Affairs v. Imperial Communities Project, Inc.*, 576 U.S. 519, 542 (2015)).[12]

In sum, the Plaintiffs have failed to plausibly allege a disparate impact discrimination claim under the FHA.   Accordingly, the Court recommends that the Motion [#66] be **granted** as to this claim.

## E.  Retaliation Claims

Plaintiffs also assert a claim against Defendant NRC for retaliating against them for exercising rights afforded to them by the Fair Housing Act.   *Second Am. Compl.* [#65] at 23-24.   The Court also construes the Second Amended Complaint [#65] as asserting

---

12      In fact, Plaintiffs do not allege a facially neutral policy of *either* Defendant, but rather, at best, a policy based on express race and ethnicity-based grounds.

a retaliation claim under Title VI.   In support of their retaliation claim, Plaintiffs allege, for example, that following the initial lease signing, they were continuing "targets of apartment management for retaliation, discrimination, harassment, false allegations, and multiple threats of eviction due to their race and religion practices."   *Second Am. Compl.* [#65] ¶7; *see also* ¶¶ 8, 13, 38, 48, 50-52, 54, 56-60 (additionally asserting targeting resulted in defamatory allegations and eviction); *see also id.* at ¶¶ 55, 57-59, 62, 64, 69, 71, 74-76, 78 (alleging intentional misplacement of important documents and other harassment). Defendants assert that Plaintiffs have failed to state a plausible claim of retaliation. *Motion* [#66] at 14-15.   Defendants argue, for example, that the Second Amended Complaint [#65] fails to allege "a sufficiently close temporal connection between the alleged adverse acts and protected activity" or that Defendants were involved in the purported adverse acts.   *Id.*

To state a Title VI claim based on alleged retaliation, a plaintiff must allege that (1) the plaintiff engaged in protected activity; (2) the plaintiff suffered a material adverse action; and (3) there exists a causal connection between the protected activity and the adverse action.   *I.G.by & through Grunspan v. Jefferson Cnty. Sch. Dist. through Bd. of Educ. for Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 1002 (D. Colo. 2020). Similarly, to state a claim of retaliation under the FHA, Plaintiffs must allege that (1) they engaged in a protected activity; (2) they suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there is a causal link between their protected activity and the adverse action.   *Arnal v. Aspen View Condo. Ass'n, Inc.*, 226 F. Supp. 3d 1177, 1187 (D. Colo. 2016) (citing *Dubois v. Ass'n of Apartment Owners of 2987*

*Kalakaua*, 453 F.3d 1175, 1180 (9th Cir. 2006)).

The Court finds that Plaintiffs fail to plausibly allege a retaliation claim under either Title VI or the FHA for substantially the same reasons discussed by Judge Wang in her Recommendation [#59] as to the previous Complaint [#10].  First, there is no clear statement alleging what right the Plaintiffs exercised for which they were allegedly retaliated against.  While Plaintiffs state that they made a complaint "about housing discrimination" on April 21, 2019, via email (Second Amended Complaint [#65] at 23), they do not allege who they made this statement to or what acts they were complaining of.  The Court notes that only the lease signing and the incident involving the unreported cats are mentioned in the Second Amended Complaint [#64] as occurring before April 21, 2019, and both of these incidents appear to have been resolved between the parties amicably and without consequence.  *Id.* at 5-6.

Plaintiffs also state that they "routinely made complaints about Defendants" to "human resources personnel" that Plaintiffs were suffering discrimination, *id.*, but fail to show when these complaints were made, who specifically the complaints were made to, or which entity these personnel were associated with, i.e., Dominium or NRC. Consistent with Judge Wang's findings in the Recommendation [#59] regarding the prior Complaint, "Plaintiffs do not identify the staff members to whom they addressed their protected activity, nor do they identify the staff members who allegedly engaged in [much of] the adverse conduct, so as to even suggest that the alleged adverse actions were undertaken with knowledge of the protected activity."  *Id.* at 25; *see Khalik*, 671 F.3d at 1194 (finding that the allegations were deficient when Khalik provided "no context for

when Plaintiff complained, or to whom.").   To establish a causal connection, a plaintiff must show that the individual who took adverse action against her knew of the plaintiff's protected activity.   *Recommendation* [#59] at 25 (citing *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993)).   Thus, the retaliation claims are subject to dismissal on this ground alone.

Second, beyond conclusory statements, the Second Amended Complaint [#65] lacks any evidence of retaliation such as intimidation, threats, or interference.   At most as Judge Wang found with respect to the Amended Complaint [#10], "Plaintiffs simply state that some unidentified staff members harassed, targeted, bullied, or inconvenienced Plaintiffs due to Plaintiffs' protected activity."   *Recommendation* [#59] at 26.   General assertions of retaliation are, however, insufficient to state a claim for relief.   *Khalik*, 671 F.3d at 1193.   While Plaintiffs also allege that the eviction was part of the retaliation (Second Amended Complaint [#65] ¶ 2), Plaintiffs do not provide any facts from which the Court can find a causal connection between the eviction and any protected activity. Thus, retaliation claims may be supported through circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing, which "may be sufficient to support allegations of retaliation"   *Davis v. Hoffman*, No. 03-cv-01956-WYD-BNB, 2006 WL 1409433, at *7 (D. Colo. May 18, 2006)).   Here, however, Plaintiffs have not shown that any of these circumstances exist.   There is no allegation, for example, that the eviction was in temporal proximity to a complaint about discrimination or retaliation or other protected activity.   Finally, as noted by Judge Wang regarding the prior Complaint, Plaintiffs fail to offer supporting facts concerning the extent, frequency, severity, or nature

of the retaliatory conduct.   *See Recommendation* [#59] at 23.   Accordingly, the Court finds that this precludes an inference that Plaintiffs were the target of conduct that would "dissuade a reasonable [person] from making or supporting a charge of discrimination," as required to state a Title VI retaliation claim.   *See id.* (citing *Walker v. Dist. of Columbia*, 279 F. Supp. 3d 246, 274 (D.D.C. 2017) (quoting *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007)).

Accordingly, the Court recommends that the Motion [#66] be **granted** as to the retaliation claims under the Title VI and the FHA.

**F.    Harassment Claim**

Finally, as discussed in some detail in the previous section relating to retaliation, Plaintiffs also allege continuing harassment.   *See, e.g., Second Am. Compl.* [#65] ¶¶ 7-8, 13, 17.   As explained by Judge Wang in the Recommendation [#59] as to the prior Complaint, the FHA prohibits "discriminatory harassment that unreasonably interferes with the use and enjoyment of a home, i.e., a hostile housing environment."   *Id.* at 9 (citing *Ngiendo v. Pep-KU, LLC*, No. 18-4127-SAC-TJJ, 2019 WL 3430570, at *3 (D. Kan. July 30, 2019), *aff'd*, 825 F. App'x 577 (10th Cir. 2020)).   To state an FHA discrimination claim based on a hostile housing environment, a plaintiff must allege facts showing that (1) the plaintiff is a member of a protected class; (2) the challenged conduct was unwelcome; (3) the challenged conduct was based on the plaintiff's protected characteristic; (4) the challenged conduct was sufficiently severe or pervasive to alter the plaintiff's living conditions and create an abusive environment; and (5) the defendant knew or should have known about the harassment.   *Id.* (citing *Ngiendo*, 2019 WL

3430570, at *3); *see also Jackson v. Park Place Condos. Ass'n, Inc.*, 619 F. App'x 699, 703 (10th Cir. 2015) (explaining that the Tenth Circuit has looked to hostile-work-environment decisions for guidance in assessing claims of a hostile housing environment).

Here, as discussed in connection with the retaliation claims, Plaintiffs have not alleged to whom specifically they complained and they have thus failed to show that NRC knew or should have known about the alleged ongoing harassment.   Second, as Judge Wang found with regard to the prior Complaint, Plaintiffs do not set forth sufficient factual detail concerning the harassment, bullying, or threats they allegedly faced—such as who engaged in such conduct, how those actors are connected to the named Defendants, or the severity, frequency, nature, or context of such conduct.   *See Recommendation* [#59] at 27.   Accordingly, they still have not plausibly alleged facts showing that the harassment was "severe or pervasive."   *Jackson*, 619 F. App'x at 703; *cf. Khalik*, 671 F.3d at 1194.

Accordingly, the Court recommends that the Motion [#66] be **granted** as to the harassment claim under the FHA.

## G.   Dismissal With or Without Prejudice

The Court recommends that the claims for religious or gender discrimination under Title VI be **dismissed with prejudice** because those are not viable claims under that title.   As to the other claims, the Court would normally recommend dismissal without prejudice for pleading deficiencies.   *See Reynoldson v. Shillinger*, 907 d 124, 125 (10th Cir. 1990).   However, Plaintiffs were previously advised of the deficiencies on multiple

occasions (see [#9], [#59], ]#62], and have failed to address the noted deficiencies. Accordingly, it appears at this juncture that amendment would be futile, and the Court recommends that these claims, and Defendant Dominium, be **dismissed with prejudice**. *Brereton v. Bountiful City Corp.,*.434 F.3d 1213, 1218 (10th Cir.2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim for relief under Rule 12(b)(6) and   granting leave to amend would be futile").

## I**V.   Conclusion**

For the reasons stated above,

IT IS HEREBY **RECOMMENDED** that the Motion [#66] be **GRANTED IN PART AND DENIED IN PART**.   Specifically, the Court recommends that the Motion [#66] be **GRANTED** as to all claims against Defendant Dominium.   It is also recommended as to Defendant NRC that the Motion [#66] be **GRANTED** as to Plaintiffs' claims of discrimination based on religion and gender brought under Title VI and the FHA, the disparate impact claim brought under the FHA, the retaliation claims under Title VI and the FHA, and the harassment claim under the FHA, and that these claims be **DISMISSED WITH PREJUDICE.**   It is recommended that the Motion [#66] be **DENIED** as to Plaintiffs' claims of discrimination against NRC on the basis of race brought under Title VI and the FHA.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo

review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep t of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:   February 6, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

- 34 -