**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-cv-01997-NYW-KLM

TONYA MCDANIEL and
ASHLEY MCDANIEL,

      Plaintiffs,

v.

NORTH RANGE CROSSINGS

      Defendant.

---

**ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

---

COMES NOW Defendant North Range Crossings ("NRC"), by and through its undersigned counsel, Robinson & Henry, P.C., and for its Answer, states as follows:

A.    PLAINTIFF INFORMATION

Ashley McDaniel 933 S Monaco Pkwy Denver, Colorado 80224

**NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in the section, Plaintiff Information, and therefore denies the same.**

720-244-1240, ashaleyreneemcd@gmail.com

**NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in the section, Plaintiff Information, and therefore denies the same.**

Tonya Renee McDaniel 933 S Monaco Pkwy Denver, Co 80224

**NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in the section, Plaintiff Information, and therefore denies the same.**

303-332-8952, mommat2real@gmail.com

**NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in the section, Plaintiff Information, and therefore denies the same.**

  B.    DEFENDANT(S) INFORMATION

Defendant 1:   North Range Crossings 14350 E 104th Ave Commerce City, Colorado 80022

**NRC admits Defendant's Information as it concerns Defendant 1, NRC.**

720-259-8076, north.range.crossings@dominiuminc.com

**NRC admits Defendant's Information as it concerns Defendant 1, NRC.**

Defendant 2:  Dominium Management LLC,  2905 Northwest Blvd Suite 150 Plymouth, MN 55441

**[DEFENDANT 2 DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]**

763-452-3112, 763-354- 5500 DOMINIUMAPARTMENTS.COM

**[DEFENDANT 2 DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]**

  C.    JURISDICTION

Federal question pursuant to 28 U.S.C. § 1331 (claims arising under the Constitution, laws, or treaties of the United States), Title VI of the Civil Rights Act, The Fair Housing Act Retaliation.

**NRC admits that this Court has jurisdiction to hear Plaintiffs' claims, but otherwise denies that Plaintiffs have any viable claims against NRC.**

D.      STATEMENT OF CLAIM(S)

CLAIM ONE: Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq. ("Title VI") Title VI prohibits discrimination on the basis of race, color, or national origin in any program or activity that receives Federal funds or other Federal financial assistance.

**This allegation in the Statement of Claim(s) section calls for a legal conclusion, for which no response is required. However, to the extent a response is required, NRC denies the same.**

Tonya McDaniel and Ashley McDaniel herby allege and assert separately the same claims and the same facts against the defendants as follows.

**NRC admits that Plaintiffs asserted the same claims and facts against both NRC and Dominium Management LLC ("Dominium"), but states that Dominium was dismissed from this case per the Court's February 24, 2023 Order Adopting Magistrate Judge's Recommendation [Doc #77].**

Both plaintiffs are asserting their own individual rights in this claim with the same facts separately as individuals.

**NRC admits that Plaintiffs assert the same facts for each of their claims and do not separately assert facts. NRC otherwise denies this facts in Plaintiffs' Statement of Claim(s) section.**

I. Factual Allegations

A. The discrimination and Harassment

1. Both plaintiffs Ashley McDaniel and Tonya McDaniel identify as black Hebrew Jews on all applications having anything to do with the North Range Crossings apartment application process beginning on August 31st, 2018.

**NRC states in response to Paragraph 1 of the Second Amended Complaint, Statement of Claim(s) section that according to the Resident File, Plaintiffs chose not to provide this information. NRC otherwise lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 1 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

2. North Range Crossings has refused to resign the lease with the plaintiffs only due to their race and religion and out of retaliation evicted the plaintiffs.

**NRC denies the allegations set forth in Paragraph 2 of the Second Amended Complaint, Statement of Claim(s) section.**

3. The racism and discrimination from staff and property management began right after moving into the North Range Crossing property when the plaintiffs asserted religious rights that are protected.

**NRC denies the allegations set forth in Paragraph 3 of the Second Amended Complaint, Statement of Claim(s) section.**

4. The North Range Crossings property is a federally funded property operated by H.U.D Housing of Urban Development. During our official lease signing, it was stated by staff members that North Range Crossings is a smoke-free property. Plaintiffs expressed to

property management that due to our race and religious practice we burn various items for ritualistic reasons that would result in smoke, such as candles, sage, smudging, burning incense, spices, herbs, and oils as a form of offering and sacrifice.

**NRC admits in Paragraph 4 of the Second Amended Complaint, Statement of Claim(s) section that NRC is a federally funded property operated by HUD. NRC also admits that NRC is a smoke-free property, but lacks sufficient information at this time to admit or deny whether property management made any representations to Plaintiffs, and thus denies such allegations set forth in Paragraph 4 of the Second Amended Complaint, Statement of Claim(s) section. Similarly, NRC admits that it learned of Plaintiffs' desire to burn various items, which would result in smoke, but at this time lacks sufficient information to admit or deny whether NRC made certain representations to Plaintiffs regarding same, and thus denies such allegations set forth in Paragraph 4 of the Second Amended Complaint, Statement of Claim(s) section.**

5. All of the listed ritualistic practices are protected by religious rights and freedoms under federal law and due to this being a HUD property.

**Paragraph 5 of the Second Amended Complaint, Statement of Claim(s) section, calls for a legal conclusion to which no response is required. However, to the extent a response is required, NRC denies the same.**

6. At the lease signing meeting with employee Laural Villiard, plaintiffs explained that denying this burning practice is a violation of their religious freedoms and the HUD discrimination laws because North Range is HUD funded building.

**NRC lacks sufficient information at this time to admit or deny whether Plaintiffs made such representations to Plaintiffs, and thus denies such allegations set forth in Paragraph 6 of the Second Amended Complaint, Statement of Claim(s) section.**

7. After a brief verbal exchange and being told no, the property management conceded and finally agreed to allow us to burn our religious sacrifices on the property. However, after this first initial adverse contact with property management for the past 2+ years, both plaintiffs have been the target of apartment management for retaliation, discrimination, harassment, false allegations, and multiple threats of eviction due to their race and religion practices.

**NRC denies the allegations set forth in Paragraph 7 of the Second Amended Complaint, Statement of Claim(s) section that it conceded and agreed to allow Plaintiffs to burn their religious sacrifices. As to the remaining allegations in Paragraph 7 of the Second Amended Complaint, the Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required. However, to the extent a response is required, NRC denies such allegations in Paragraph 7 of the Second Amended Complaint, Statement of Claim(s) section.**

8. The plaintiffs have kept a detailed log of documentation of all incidences in which the plaintiffs have been the target of discrimination, retaliation, and harassment by the North Range Crossings staff based upon being members of a protected class being "Black African American" and Jews.

**NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 8 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

9. On 4-5-2019 the plaintiffs were falsely accused by property management of housing animals not reported to management. This resulted in a 300 fine of 150.00 for the 2 cats.

**NRC admits in Paragraph 9 of the Second Amended Complaint, Statement of Claim(s) section that Plaintiffs were fined $300 for housing two unreported cats on the premises, which was in violation of Plaintiffs' lease, but that this fine was ultimately waived. As to the remaining allegations contained in the first sentence of Paragraph 9 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required. However, to the extent a response is required, NRC denies the same.**

10. Refusal to pay the fine resulted in a formal complaint/lease violation and the threat of an eviction.

**NRC admits in Paragraph 10 of the Second Amended Complaint, Statement of Claim(s) section that Plaintiffs' refusal to pay said fine was a violation of Plaintiffs' lease.**

11. However, plaintiffs were able to show that the 4-5-2019 pet incident and the live-in aide issue were actually a product of office sabotage as the pet documents and live-in aide document were signed by the doctor at the same time which were given to office staff and lost intentionally to result in a 300.00 fine.

**NRC denies the allegations in Paragraph 11 of the Second Amended Complaint, Statement of Claim(s) section.**

12. After proving to upper management the proper documentation was given to the office and this was an act of discrimination, retaliation, and sabotage the 300.00 fine was reversed and no eviction occurred.

**NRC admits in Paragraph 12 of the Second Amended Complaint, Statement of Claim(s) section that it waived the $300 fine. As to the remaining allegations in Paragraph 12 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required. However, to the extent a response is required, NRC denies the same.**

13. On 8-6-2019 the plaintiffs requested that due to the harassment received from NRC staff that they can break their lease at any time in the future with no penalties or costs. Property management David Lepak agreed to these terms and requested to break the lease at no cost to the plaintiffs.

**NRC admits in Paragraph 13 of the Second Amended Complaint, Statement of Claim(s) section that David Lepak agreed to let Plaintiffs' break their lease with no penalties and costs. To the extent the allegations contained in the first sentence of Paragraph 13 of the Second Amended Complaint, Statement of Claim(s) section, call for a legal conclusion, no response is required; however, to the extent a response is required, NRC denies the same.**

14. August 26th, 2020 during the plaintiffs lease resigning meeting it was brought to the attention of the plaintiffs that 1,238.00 was "missing an unaccounted for" in the plaintiffs ledger, and the plaintiffs in fact owed this balance.

**NRC admits in Paragraph 14 of the Second Amended Complaint, Statement of Claim(s) section that NRC discussed with Plaintiffs the $1,238 ledger balance on Plaintiffs' lease, which was for back-billed utilities. As to the remaining allegations in Paragraph 14 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient information or knowledge to admit or deny such allegations, and thus denies the same.**

15. While plaintiffs were being blamed and disputing the missing money with NRC and HUD the second threat of eviction came from management at NRC for refusal to pay the disputed ledger balance.

**NRC denies the allegations in Paragraph 15 of the Second Amended Complaint, Statement of Claim(s) section. Rather, NRC states that per policy, residents are told that an unpaid balance would result in a termination of their lease if there was no response or action taken. Per Plaintiffs' lease, Plaintiffs were responsible for the utilities (gas/electric). NRC offered a payment plan to Plaintiffs, so they could keep up with their regular rent portion and pay it off over time.**

16. After an investigation the 1230.00 balance was later waived and rectified by HUD and NRC as internal clerical issues and no eviction occurred.

**NRC denies in Paragraph 16 of the Second Amended Complaint, Statement of Claim(s) section that ledger fees were waived by NRC or the result of an internal clerical issue. Rather, this amount was paid for by HUD as part of the voucher program. As to the remaining allegations in Paragraph 16 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient information or knowledge to admit or deny such allegations, and thus denies the same.**

17. On May 26th, 2020, due to the continued harassment and retaliation the plaintiffs inquired about initiating the move-out process. However, as a result of the onsetting the covid-19 pandemic and lockdown, the plaintiffs were unable to move from NRC promptly.

**NRC admits in Paragraph 17 of the Second Amended Complaint, Statement of Claim(s) section that Plaintiffs inquired about the move-out process. To the extent the**

**allegations contained in the first sentence of Paragraph 17 of the Second Amended Complaint, Statement of Claim(s) section, contain legal conclusions, no response is required; however, to the extent a response is required, NRC denies the same. As to the remaining allegations contained in the second sentence of Paragraph 17 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient information or knowledge at this time to admit or deny the allegations and therefore denies the same.**

18. Tuesday, Mar 24, 2020, 1 :33 PM a property-wide mass email was sent out a warning of noise complaints from several residents due to the stay-at-home mandate.

**To the extent said email in Paragraph 18 of the Second Amended Complaint, Statement of Claim(s) section exists, the document speaks for itself and no admission or denial is required. NRC otherwise lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 18 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

19. Fri, Jun 26, 2020, a second mass email was sent to all residents in regards to noise complaints generated from the property due to the pandemic.

**To the extent said email in Paragraph 19 of the Second Amended Complaint, Statement of Claim(s) section exists, the document speaks for itself and no admission or denial is required. NRC otherwise lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 19 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

20. Thu, Dec 3, 2020, 3:27 PM yet another mass email blast to all tenants stated that "noise generated from multiple apartments is disturbing others which is a violation of our lease

agreement," Again this email was general and nonspecific.

**To the extent said email in Paragraph 20 of the Second Amended Complaint, Statement of Claim(s) section exists, the document speaks for itself and no admission or denial is required. NRC otherwise lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 20 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

21. Tue, Jan 5, 2021, 1:29 PM NRC emailed the plaintiffs "A formal notice was submitted to the management office that there was loud noise including stomping and banging being generated from your home at a level that was a disturbance to your fellow community members."

**To the extent said email in Paragraph 21 of the Second Amended Complaint, Statement of Claim(s) section exists, the document speaks for itself and no admission or denial is required. NRC admits a warning email was sent to Plaintiffs but otherwise lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 21 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

22. Three follow-up emails were sent to ask what the noises were and when they occurred and no reply email was received from NRC.

**To the extent said emails in Paragraph 22 of the Second Amended Complaint, Statement of Claim(s) section exist, the documents speak for themselves and no admission or denial is required. Without waiving the foregoing, NRC denies that it did not reply to Plaintiffs' follow-up emails.**

23. On May 14th a meeting was scheduled by NRC staff to resign the lease agreement for one more year. Plaintiffs stated that they did not want Mel Terras to perform the lease signing due to a previous issue with her handling our case file and being falsely accused.

**NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 23 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

24. Monday, May 17, 2021, the plaintiffs were served with a notice to quit for noise complaints after only receiving one formal complaint from NRC. The notice to quit contained false allegations of harassment to neighbors as well as multiple noise complaints, but neither factually occurred.

**NRC admits in Paragraph 24 of the Second Amended Complaint, Statement of Claim(s) section that a Notice to Quit for good cause (non-renewal) was issued to Plaintiffs after a formal notice was issued and continued violation occurred. In addition, NRC states that Plaintiffs had several interactions with NRC staff and emails regarding the complaints. The Notice to Quit speaks for itself and no additional admission or denial is required. As to the allegations contained in the second sentence of Paragraph 24 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein. NRC otherwise lacks sufficient information or knowledge at this time to admit or deny the remaining allegations set forth in Paragraph 24 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

25. On May 18, 2021, 4:35 PM Mel Terras stated in an email "We are asking that you serve the terms of your lease but that we will not renew the lease based on circumstances that occurred during your tenancy."

**To the extent said email in Paragraph 25 of the Second Amended Complaint, Statement of Claim(s) section exists, the document speaks for itself and no admission or denial is required. NRC otherwise lacks sufficient information or knowledge at this time to admit or deny the remaining allegations set forth in Paragraph 25 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

26. In the process of moving from NRC the office staff member Mel Terras acted in a discriminatory fashion purposefully and willfully refusing to acknowledge and sign housing papers that dealt with the voucher directly. Mel the acting property manager refusing to sign these documents delayed the submittal and processing of pertinent section 8 paperwork. This paperwork was needed by the plaintiffs to complete the move out process on time before their lease ended.

**NRC admits in Paragraph 26 of the Second Amended Complaint, Statement of Claim(s) section that Mel Terrazas did not immediately sign Plaintiffs' Section 8 voucher paperwork. As to the allegations in sentence 1 of Paragraph 26 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein. As to the remaining allegations contained in Paragraph 26 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth and therefore denies the same.**

27. Due to the NRC property manager's refusal to sign the needed documents the plaintiffs were unable to move promptly.

**NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 27 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

28. NRC then proceeded to follow through with an unmerited eviction action alleging false noise complaint allegations against the plaintiffs.

**NRC denies the allegations as set forth in Paragraph 28 of the Second Amended Complaint, Statement of Claim(s) section.**

29. Instead of going to trial the plaintiffs and NRC went to mediation. The plaintiffs simply requested enough time for their section 8 paperwork that was left unsigned to process to move out willingly.

**NRC admits in Paragraph 29 of the Second Amended Complaint, Statement of Claim(s) section that the parties mediated. As to the remaining allegations contained in Paragraph 29 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth and therefore denies the same.**

30. NRC agreed in open court that no eviction would take place until all the missing documents were signed and processed to complete the voucher for move out.

**NRC denies the allegations set forth in Paragraph 30 of the Second Amended Complaint, Statement of Claim(s) section.**

31. After mediation the needed documents were finally signed by NRC management and submitted to HUD. This kept up one part of the mediation, however, the second part was to wait for the paperwork to process and the voucher to be complete before an eviction could take place.

**NRC admits in Paragraph 31 of the Second Amended Complaint, Statement of Claim(s) section that NRC signed the needed documents; that the parties' mediation stipulation stated no physical move out before December 6, 2021; and that NRC complied with its obligations pursuant to the mediation stipulation. NRC otherwise denies the remaining allegations of Paragraph 31, of the Second Amended Complaint, Statement of Claim(s) section.**

32. NRC decided to move forward with an eviction even though HUD had not completed the processing of the documents handed in late by NRC management to complete the section 8 voucher for the plaintiffs to move.

**NRC admits in Paragraph 32 of the Second Amended Complaint, Statement of Claim(s) section that it evicted Plaintiffs. NRC otherwise denies the allegations set forth in Paragraph 32 of the Second Amended Complaint, Statement of Claim(s) section.**

33. Mediation was used in a discriminatory fashion by NRC and Dominium to garnish an eviction despite no real lease violations having taken place, mediation was used as a tactic to forcefully have the plaintiff removed from the property, refusing to continue to lease the property to two black, Jewish women for no reasons other than race and religion.

**NRC denies the allegations contained in Paragraph 33 of the Second Amended Complaint, Statement of Claim(s) section.**

34. NRC filed a writ of restitution on the same day as the mediation settlement. Although the settlement states NRC will allow for delays in the processing of necessary paperwork that was not signed. Filing a writ the same day as the settlement agreement before any papers were signed or submitted allowed for the clock to start running towards an eviction that same day.

**NRC admits in Paragraph 34 of the Second Amended Complaint, Statement of Claim(s) section that court documents stated that "It was also agreed that a writ of restitution would issue in 48 hours". NRC further states that the Court's minute order required Plaintiffs to adhere to certain contingencies in the parties' resolution agreement, and set a date for execution of the writ if all provisions were not met. Plaintiffs had the full 30 days (standard for housing authority processing) to fulfill their part of the agreement. The writ of restitution otherwise speaks for itself, and thus no further admission or denial is required. NRC otherwise denies the remaining allegations contained in Paragraph 34 of the Second Amended Complaint, Statement of Claim(s) section.**

35. The plaintiffs were unaware the NRC filed a writ the same day as mediation. To add insult to injury NRC along with Dominium Management did not complete the service process of the Writ of Restitution that was filed.

**NRC denies the allegations set forth in sentence 2 of Paragraph 35 of the Second Amended Complaint, Statement of Claim(s) section. NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in sentence 1 of Paragraph 35 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

36. The plaintiffs were only informed by the commerce city sheriffs department that an eviction was already scheduled on the books with a final notice sticker being placed on the unit door. After speaking with the sheriffs it was then revealed that a writ was filed the same day as mediation.

**NRC admits in Paragraph 36 of the Second Amended Complaint, Statement of Claim(s) section that the writ was filed the same day as the mediation. As to the remaining allegations contained in Paragraph 36 of the Second Amended Complaint, NRC lacks sufficient information or knowledge at this time to admit or deny the allegations and therefore denies the same.**

37. Upon hearing this news the plaintiffs went back to the eviction court judge and stated the lack of personal process as neither plaintiff was served with a copy of a writ.

**NRC denies the allegations set forth in Paragraph 37 of the Second Amended Complaint, Statement of Claim(s) section and therefore denies the same.**

38. The court judge in the eviction refused an emergency hearing to state the claim of lack of service formally to the court and On December 7th, 2021 while moving out the plaintiffs were evicted due to noise complaints and the fact the section 8 voucher was still incomplete during the time of eviction.

**NRC admits in Paragraph 38 of the Second Amended Complaint, Statement of Claim(s) section that it evicted Plaintiffs and the Court refused an emergency hearing. As to the remaining allegations in Paragraph 38 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient information or knowledge at this time to admit or deny and therefore denies the same.**

39. False noise complaint allegations were used in a discriminatory manner to falsely accuse two black female tenants of stereotypically being loud.

**NRC denies the allegations set forth in Paragraph 39 of the Second Amended Complaint, Statement of Claim(s) section.**

40. The plaintiffs white 1st-floor neighbor repeatedly orally complained to the 2nd-floor white neighbor for a noise complaint. The white 1st-floor tenant was never prompted to file a formal written complaint by the office against her white 2nd-floor neighbor.

**NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in sentence 1 of Paragraph 40 of the Second Amended Complaint, Statement of Claim(s) section and therefore denies the same. NRC denies the allegation contained in sentence 2 of Paragraph 40 of the Second Amended Complaint, Statement of Claim(s) section.**

41. The neighboring 2nd-floor white tenant was never formally emailed a noise violation complaint after being informed of formal complaints multiple times.

**NRC states in response to Paragraph 41 of the Second Amended Complaint, Statement of Claim(s) section that the issue with the neighboring tenant was self-resolved by the lower unit being proactive and transferring units. The situation did not escalate because the downstairs tenant utilized their resources provided to them by NRC. NRC otherwise lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 41 of the Second Amended Complaint, Statement of Claim(s) section and therefore denies the same.**

42. Instead of filing multiple unnecessary noise complaints, the 2nd-floor white tenant was only informed by property management of sound complaints through a mass email sent to everyone residing in the units.

**NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 42 of the Second Amended Complaint, Statement of Claim(s) section and therefore denies the same.**

43. The plaintiff's white 2nd-floor neighbor was offered warnings and corrections. The plaintiff's unit was not extended this courtesy. The noise still continued from the 2nd floor neighbor and so did the verbal complaints. However, the 2nd-floor neighbor was still not officially served with any noise complaint from property management due to her being white.

**NRC states in response to Paragraph 43 of the Second Amended Complaint, Statement of Claim(s) section that the issue with the neighboring tenant was self-resolved by the lower unit being proactive and transferring units. The situation did not escalate and no further or continued complaints were made because the downstairs tenant utilized their resources provided to them by NRC and thus a resolution was already in progress. As to the allegations contained in sentence 2 of Paragraph 43 of the Second Amended Complaint, Statement of Claim(s) section, NRC denies that Plaintiffs requested such courtesy, and thus NRC could not have denied the same as represented. NRC otherwise lacks sufficient information or knowledge at this time to admit or deny the allegations set forth in Paragraph 43 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

44. Management never prompted the neighbor of the 1st floor to file a written complaint against her white neighbor. Instead, Mel Terras mediated the situation and offered either tenant to apply to move to a new unit within the same North Range Complex that was more accommodating to their needs. This option was not extended to the plaintiffs, nor was the offer of mediation between tenants or moving.

**As to the allegations contained in sentence 1 and 2 of Paragraph 44 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient information or knowledge at this time to admit or deny the allegations set forth therein and therefore denies the same. As to the allegations contained in sentence 3 of Paragraph 44 of the Second Amended Complaint, Statement of Claim(s) section, NRC states that Plaintiffs never made such requests, which is why such options would not have been extended to Plaintiffs. NRC further states the other tenant initiated the request for another unit, NRC did not offer it.**

45. The plaintiffs unit was served with a notice to quit the lease before any mediation was offered by management. The white neighbor was not harassed with noise complaint emails when complained about, she was able to be warned only through a mass email chain letter from the property, mediation was offered to solve the white tenant's issue before an eviction action was threatened or a notice to quit was served.

**NRC admits in Paragraph 45 of the Second Amended Complaint, Statement of Claim(s) section that said Notice to Quit was served on May 18, 2021, and that said mediation occurred on November 5, 2021. As to the remaining allegations of Paragraph 45 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient**

information or knowledge at this time to admit or deny the allegations set forth therein and therefore denies the same.

46. The 1st-floor tenant was placed on a 3rd-floor unit waitlist to help solve the issue and eventually moved to a 3rd-floor unit within the same building due to the noise issues. At no point and time were the plaintiffs ever given a verbal warning about any alleged noise complaints.

**As to the allegations contained in sentence 1 of Paragraph 46 of the Second Amended Complaint, Statement of Claim(s) section, NRC denies the allegations set forth therein with regards to the first-floor tenant being placed on a 3rd-floor unit waitlist. NRC further states that the first-floor tenants were offered this option and refused. The tenants above did not pose any complaints. Last, NRC states that it did offer an in-office meeting to resolve the issue between Plaintiffs and the first-floor tenants, and the first floor tenants refused. Thus, there was no need to present Plaintiffs with this option. NRC otherwise denies the remaining allegations in Paragraph 46 of the Second Amended Complaint, Statement of Claim(s) section.**

47. The plaintiffs have been bombarded with false noise allegation emails repeatedly. No mediation was ever offered or extended to the plaintiffs to move within the properties to an available unit. Instead of being offered to move units like the white neighbor the plaintiffs were only threatened to leave the property entirely with an eviction.

**To the extent said emails in Paragraph 47 of the Second Amended Complaint, Statement of Claim(s) section exist, the documents speak for themselves and no admission or denial is required. As to the allegations contained in sentences 2 and 3 of Paragraph 47 of the Second Amended Complaint, Statement of Claim(s) section, NRC states that Plaintiffs**

**never made such requests, which is why such options would not have been extended to Plaintiffs. NRC further states the other tenant initiated the request for another unit, NRC did not offer it. NRC otherwise denies the remaining allegations in Paragraph 47 of the Second Amended Complaint, Statement of Claim(s) section.**

48. The same noise issue for two separate people resulted in an eviction for one but was simply met with a solution for the other. This type of behavior is discriminatory in nature and should be punishable under this federal statute preventing discrimination in the establishments receiving federal government funding.

**As to the allegations contained in sentence 2 of Paragraph 48 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein. NRC otherwise denies the remaining allegations in Paragraph 48 of the Second Amended Complaint, Statement of Claim(s) section.**

D. STATEMENT OF CLAIMS

CLAIM TWO: The Fair Housing Act: It is illegal to discriminate in the sale or rental of housing, including against individuals seeking a mortgage or housing assistance, or in other housing related activities. The Fair Housing Act prohibits this discrimination because of race, color, national origin, religion, sex, familial status, and disability.

**These allegations in Claim Two of the Statement of Claim(s) section call for legal conclusions, for which no response is required. However, to the extent a response is required, NRC denies the same. NRC also states that Claim Two has been dismissed, to the extent that it alleges claims of discrimination based on religion and gender brought under the Fair**

Housing Act ("FHA"); retaliation claims under the FHA; and harassment claims under the FHA.

Supporting facts:

Both plaintiffs separately hereby assert all of the same allegations put forth in count one to be used as supporting facts in support of count two along with new supporting facts. Tonya McDaniel and Ashley McDaniel herby allege and assert separately the same claims and the same facts against the defendants as follows. Both plaintiffs are asserting their own separate individual rights in this claim with the same facts.

**NRC admits that Plaintiffs assert the same facts for each of their claims and do not separately assert facts. NRC also admits that Plaintiffs assert the same claims and facts against both NRC and Dominium, but states that Dominium was dismissed from this case per the Court's February 24, 2023 Order Adopting Magistrate Judge's Recommendation [Doc #77]. NRC otherwise denies all remaining facts in Plaintiffs' Statement of Claim(s) section.**

49. The Fair Housing Act protects people from discrimination when they are renting or buying a home, getting a mortgage, seeking housing assistance, or engaging in other housing-related activities. Additional protections apply to federally assisted housing.

**As to the allegations contained in Paragraph 49 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required. However, to the extent a response is required, NRC denies the same.**

50. The fair housing act was violated by the defendants when they refused to resign a lease with the plaintiffs solely based on their disability, religion, race, creed, color, income status, and

family status, engaged in harassment, retaliation, and bullying tactics to prevent residency in a HUD unit.

**As to the allegations contained in Paragraph 50 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein. NRC otherwise denies the allegations set forth in paragraph 50 of the Second Amended Complaint, Statement of Claim(s) section.**

51. The plaintiffs have a section 8 voucher which is provided by the government. The defendants have expressed the need to harass and attempt to evict all black Section 8 tenants as a means to have only white "cash-paying" tenants on the property.

**As to the allegations contained in sentence 1 of Paragraph 51 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient information or knowledge at this time to admit or deny the allegations and therefore denies the same. NRC otherwise denies the remaining allegations in Paragraph 51 of the Second Amended Complaint, Statement of Claim(s) section.**

52. When a family is on section 8 the payments come from the government at a later date than all the cash-paying tenants. The defendants are attempting to bridge the gap between black and Latino section 8 tenants and white cash-paying tenants by harassing section tenants until they move voluntarily or by constantly threatening eviction on the section 8 tenants until eviction occurs.

**As to the allegations contained in sentence 1 of Paragraph 52 of the Second Amended Complaint, Statement of Claim(s) section, NRC lacks sufficient information or knowledge at**

this time to admit or deny the allegations and therefore denies the same. NRC otherwise denies the remaining allegations in Paragraph 52 of the Second Amended Complaint, Statement of Claim(s) section.

53. Blacks and Latinos are section 8 more than their white counterparts, making low-income discrimination a racially discriminatory issue that is prohibited stating, "Including against individuals seeking a mortgage or housing assistance," section 8 is housing assistance, therefore, can be found grounds for discrimination.

As to the allegations in Paragraph 53 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the same. NRC otherwise lacks sufficient information and knowledge to either admit or deny the allegations set forth in in Paragraph 53 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same for this additional reason.

54. Both plaintiffs being black Hebrew tenants on section 8 and both being single mothers have been discriminated against by North Range Crossing office staff members for these reasons.

NRC denies the allegations set forth in Paragraph 54 of the Second Amended Complaint, Statement of Claim(s) section.

55. Threatening an eviction on a section 8 tenant is threatening the entire voucher itself, which can leave the entire household homeless at no fault of their own.

As to the allegations in Paragraph 55 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the same. NRC

otherwise lacks sufficient information and knowledge to either admit or deny the allegations set forth in in Paragraph 55 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same for this additional reason.

56. The fair housing act was violated when the defendants began to partake in multiple discriminatory actions against the plaintiffs deliberately to take away the enjoyment of real property.

**NRC denies the allegations in Paragraph 56 of the Second Amended Complaint, Statement of Claim(s) section.**

57. The fair housing act was violated when the defendants made up false defamatory allegations to prevent the leasing of real property to the plaintiffs. The false defamatory allegations were that of the plaintiffs making threats and harassment to neighbors.

**As to the allegations in Paragraph 57 of the Second Amended Complaint, Statement of Claim(s) section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the same. NRC otherwise denies the allegations set forth in Paragraph 57 of the Second Amended Complaint, Statement of Claim(s) section.**

58. These allegations were only alleged by property management for racially charged discriminatory reasons. Being that the plaintiff's household is made up of black women. The false narrative and stereotype of aggression were placed on my family without having a single incident or interaction with the neighbors.

**NRC denies the allegations contained in Paragraph 58 of the Second Amended Complaint, Statement of Claim(s) section.**

59. Placing something defamatory and false in the plaintiffs housing file is a deliberate act of discrimination to provoke the false narrative to not lease the property to the plaintiffs.

**As to the allegations in Paragraph 59 of the Second Amended Complaint, Statement of Claim section, the allegations constitute a legal conclusion to which no response is required. However, to the extent a response is required, NRC denies the same.**

60. The plaintiffs take these allegations seriously as these false allegations have been used to discriminate against the plaintiffs and garnish a false/illegal eviction. The plaintiffs have a right to enjoy and lease real property without the fear of discrimination and retaliation for being black, female, a single parent, and Jews.

**NRC denies the allegations in Paragraph 60 of the Second Amended Complaint, Statement of Claim(s) section that it has discriminated against Plaintiffs. NRC otherwise lacks information and knowledge as to allegations set forth in Paragraph 60 of the Second Amended Complaint, Statement of Claim(s) section, and therefore denies the same.**

D. STATEMENT OF CLAIMS

CLAIM THREE: Retaliation. The Fair Housing Act also makes it illegal to retaliate against any person because that person reported a discriminatory practice to a housing provider or other authority.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77].**

55. **[sic, should be 61]** The plaintiffs exercised a Fair Housing right. Defendants were aware that the resident exercised such a right. After the plaintiffs exercised a Fair Housing right,

the defendants subsequently took adverse action against the resident. Defendants took adverse action against the plaintiffs because they exercised their Fair Housing right. This is called a causal link. A causal connection is established when two events are related, and the second event happens because of or in response to the first event being a complaint by the plaintiffs.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]. NRC otherwise denies the allegations contained in Paragraph 61 of the Second Amended Complaint, Statement of Claim(s) section.**

B. The Context

56. **[sic, should be 62]** NRC along with Dominium Management are federally funded organizations in the Commerce City area, operating multiple housing facilities located in Colorado. **NRC admits in Paragraph 56 (62) of the Second Amended Complaint, Statement of Claim(s) section that it is a federally funded organization. [DOMINIUM WAS DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77. MOREOVER, CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77].**

57.**[sic, should be 63]**  NRC and Dominium are run by upper management David Lepak, Jean Ferguson, and Jill Korkki. Upon information and belief, it is common knowledge at NRC that black tenants in section 8 are more likely to be discriminated against and evicted within the

NRC organization. This discriminatory behavior sets the tone for the NRC organization; it lets subordinates, and staff members know that using their power in public housing for discrimination is acceptable. What makes this even more problematic are the demographics of NRC employees. The upper level of the management team consists of all none black employees. The plaintiffs simply wanted to enjoy their unit located at the NRC property.

**NRC denies the allegations in Paragraph 57 (63) of the Second Amended Complaint, Statement of Claim(s) section. [DOMINIUM WAS DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77. MOREOVER, CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77].**

### C. The Result

58. **[sic, should be 64]** The eviction traumatized the plaintiff's whole family, causing Post-Traumatic Stress Disorder in both Tonya McDaniel and Ashley McDaniel. Watching their belongings being put onto the yard at no fault of our own was very traumatic. Not only were the plaintiffs constantly harassed and subjected to various forms of discrimination, but the plaintiffs were forced to suffer through a hostile living environment in constant fear NRC would retaliate against them. The plaintiffs, pro se without counsel, notified NRC of the discrimination. Under information and belief, NRC and Dominium Management did not follow proper procedure during an eviction. Under information and belief, NRC and Dominium Management refused to negotiate with the plaintiffs regarding housing. Under information and belief, NRC and

Dominium Management lawyer's refused to speak with the plaintiffs outside of the courtroom because they were acting pro se. Under information and belief, NRC and Dominium Management's refusal to speak with the plaintiffs was discriminatory. Under information and belief, NRC and Dominium Management. Under information and belief, NRC and Dominium Management made up false noise complaint allegations to proceed with an illegal eviction against the plaintiffs.

**NRC denies the allegations in Paragraph 58 (64) of the Second Amended Complaint, Statement of Claim(s) section. [DOMINIUM WAS DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77. MOREOVER, CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77].**

59. **[sic, should be 65]** Under information and belief, NRC and Dominium Management staff have lost important documentation on purpose out of the plaintiff's file to set them up for fines, fees, and to gain an eviction. Under information and belief, NRC and Dominium Management did not properly serve the plaintiff with the Writ of Restitution filed on the same day as mediation. Under information and belief, NRC and Dominium Management through counsel agreed to sign all papers related to the section 8 voucher and allow time for said papers to process to complete the voucher. Under information and belief, NRC and Dominium Management already filed a writ, therefore, leaving no room for negotiation on more time being added for the paperwork to successfully process. Under information and belief, NRC and

Dominium Management did not wait for the section 8 housing voucher the be intact before proceeding with an eviction. Under information and belief, NRC and Dominium Management had no intention of working with or negotiating with the plaintiffs. Under information and belief, NRC and Dominium Management treated white tenants better when they were supposedly having the exact same issue. Under information and belief, NRC and Dominium Management ruined the plaintiffs right to the enjoyment of real property. Under information and belief, NRC and Dominium Management called the plaintiffs "problem tenants". Under information and belief, NRC and Dominium Management applied unequal terms and conditions on the rental properties based on race and religion. Under information and belief, NRC and Dominium Management have participated in disparate treatment of the plaintiffs. Under information and belief, NRC and Dominium Management caused the plaintiffs to have suffered from disparate effects. Under information and belief, NRC and Dominium Management denied the plaintiffs the ability to renew their lease, the plaintiffs were evicted and the properly was placed up for rent right after. Under information and belief, NRC and Dominium Management through an illegal eviction caused the plaintiffs to suffer the loss of wages as Ashley McDaniel was unable to attend work during the eviction moving process. Under infonnation and belief, NRC and Dominium Management forced the plaintiffs to experience homelessness of the entire family, including 2 pets and a minor child, plaintiff's were forced to get rid of family valuables and precious items that could not fit into a storage unit. Valuable items were lost and or stolen during the course of the eviction. Multiple movers were paid during the course of the eviction to remove the plaintiffs belongings off the lawn promptly. Two storage units were needed to fit what could be saved and stored. Due to this eviction, the plaintiffs have suffered severe financial hardship

paying storage units and paying rent in cash due to the loss of the section 8 voucher, adverse credit history is being recorded as an eviction on the plaintiffs credit history report. However, the plaintiffs would not give up and timely filed a charge of discrimination in retaliation for complaining about the discrimination with the Department of Housing.

**NRC admits in Paragraph 59 (65) of the Second Amended Complaint, Statement of Claim(s) section that it followed the parties' mediation stipulation by waiting 30 days before proceeding with the eviction. NRC otherwise denies the allegations in Paragraph 59 (65) of the Second Amended Complaint, Statement of Claim(s) section. [DOMINIUM WAS DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77. MOREOVER, CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77].**

E. REQUEST FOR RELIEF

Claims against defendants North Range Crossings and Dominium Management

Count One Title VI of the Civil Rights Act

Discrimination, harassment, coercion, intimidation

60. **[sic, should be 66]** Both plaintiffs Ashley and Tonya McDaniel are black and Hebrew Jews

**NRC lacks information and knowledge as to allegations set forth in Paragraph 60 (66) of the Second Amended Complaint, Request for Relief section, and therefore denies the same.**

61. **[sic, should be 67]** Both plaintiffs are members of a protected class.

**NRC lacks information and knowledge as to allegations set forth in Paragraph 61 (67) of the Second Amended Complaint, Request for Relief section, and therefore denies the same.**

62. **[sic, should be 68]** Plaintiffs were subjected to discrimination and harassment by NRC and Dominium Management due to their race and religion.

**NRC denies the allegations in Paragraph 62 (68) of the Second Amended Complaint, Request for Relief section.**

63. **[sic, should be 69]** The severity of the unwelcome harassment created an abusive living environment by altering a term, condition, or privilege, specifically the privilege of being free from fear of discrimination and retaliation. 63.

**As to the allegations in Paragraph 63 (69) of the Second Amended Complaint, Request for Relief section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein. NRC otherwise denies the allegations in Paragraph 63 (69) of the Second Amended Complaint, Request for Relief section.**

64. **[sic, should be 70]** And NRC and Dominium are liable for this because both were negligent when they failed to remedy this hostile living environment when its management-level employees knew, or in the exercise of reasonable care should have known, that discrimination and harassment were taking place. NRC and Dominium failed to provide ANY remedy for the plaintiffs. Specifically, NRC and Dominium took no steps to guarantee the plaintiffs would not

encounter discriminatory housing practices and that retaliation did not take place after formal complaints of discrimination were made.

**As to the allegations contained in sentences 1, 2, and 3 of Paragraph 64 (70) of the Second Amended Complaint, Request for Relief section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein.**

65. **[sic, should be 71]** This hostile living environment created an intolerable living condition, specifically, the constant triggering of post-traumatic stress disorder symptoms in both plaintiffs as a result of a discriminatory eviction

**As to the allegations in Paragraph 65 (71)  of the Second Amended Complaint, Request for Relief section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein.**

66. **[sic, should be 72]**Accordingly, Defendants NRC and Dominium Management are liable to Plaintiffs for
economic and non-economic damages.

**As to the allegations in Paragraph 66 (72) of the Second Amended Complaint, Request for Relief section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein.**

Count Two: The Fair Housing Act

Discrimination, harassment, coercion, intimidation

67. **[sic, should be 73]** Both plaintiffs Ashley McDaniel and Tonya McDaniel are black and Hebrew, Jews.

**NRC lacks information and knowledge as to allegations set forth in Paragraph 67 (73) of the Second Amended Complaint, Request for Relief section, and therefore denies the same.**

68. **[sic, should be 74]** Both plaintiffs are members of a protected class.

**NRC lacks information and knowledge as to allegations set forth in Paragraph 68 (74) of the Second Amended Complaint, Request for Relief section, and therefore denies the same.**

69. **[sic, should be 75]**Plaintiffs were subjected to discrimination and harassment by NRC and Dominium Management due to their race and religion.

**As to the allegations in Paragraph 69 (75) of the Second Amended Complaint, Request for Relief section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein.**

70. **[sic, should be 76]** The severity of the unwelcome harassment created an abusive living environment by altering a term, condition, or privilege, specifically the privilege of being free from fear of discrimination while practicing the enjoyment of a physical housing dwelling.

**As to the allegations in Paragraph 70 (76) of the Second Amended Complaint, Request for Relief section, the allegations constitute a legal conclusion to which no response**

is required; however, to the extent a response is required, NRC denies the allegations contained therein.

71. **[sic, should be 77]** NRC and Dominium are liable for this because both were negligent when they failed to remedy this hostile living environment when its management-level employees knew, or in the exercise of reasonable care should have known, that discrimination and harassment were taking place. NRC and Dominium failed to provide ANY remedy for the plaintiffs. Specifically, NRC and Dominium took no steps to guarantee the plaintiffs would not encounter discriminatory housing practices.

**As to the allegations contained in sentence 1 of Paragraph 71 (77) of the Second Amended Complaint, Request for Relief section, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein. As to the allegations contained in sentences 2 and 3, NRC denies the allegations.**

72. **[sic, should be 78]** This hostile living environment created an intolerable living condition, specifically, the constant triggering of post-traumatic stress disorder symptoms in both plaintiffs as a result of a discriminatory eviction.

**As to the allegations in Paragraph 72 (78) of the Second Amended Complaint, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein.**

73. **[sic, should be 79]** Accordingly, Defendants NRC and Dominium Management are liable to the Plaintiffs for economic and non-economic damages.

**As to the allegations in Paragraph 73 (79) of the Second Amended Complaint, the allegations constitute a legal conclusion to which no response is required; however, to the extent a response is required, NRC denies the allegations contained therein.**

Count Three: Retaliation  for Exercising the Fair Housing Act

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77].**

74. **[sic, should be 80]** Plaintiffs made their first complaint about housing discrimination from the plaintiffs on Sun, Apr 21, 2019, at 5 :31 PM through email.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]. NRC otherwise denies the allegations contained in Paragraph 74 (80) of the Second Amended Complaint, Statement of Claim(s) section.**

75. **[sic, should be 81]** Plaintiff's routinely made complaints about the Defendants. NRC and Dominium's failed to take action to provide ANY remedy for the plaintiffs suffering discrimination. Specifically, the Plaintiff complained to Defendant human resources personnel that Defendant NRC was taking no steps to guarantee the plaintiffs would not encounter retaliation on the premises and this was creating a hostile living environment based on the plaintiffs protected race and religion.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER**

**ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]. NRC otherwise denies the allegations contained in Paragraph 75 (81) of the Second Amended Complaint, Statement of Claim(s) section.**

76. **[sic, should be 82]** Plaintiffs1 complaints were in opposition to what both reasonably believed was unlawful race and religious discrimination faced because of NRC's and Dominium's intentional retaliation.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]. NRC otherwise denies the allegations contained in Paragraph 76 (82) of the Second Amended Complaint, Statement of Claim(s) section.**

77. **[sic, should be 83]** During this hostile living environment both plaintiffs were faced the constant triggering of post-traumatic stress disorder symptoms.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]. NRC otherwise denies the allegations contained in Paragraph 77 (83) of the Second Amended Complaint, Statement of Claim(s) section.**

78. **[sic, should be 84]** Defendant's retaliated against Plaintiffs soon after their complaints by creating an intolerable  living conditions due to constant harassment, that Plaintiff would have no protection from encountering future discrimination and harassment and be

subjected to the constant triggering of their post-traumatic stress disorder symptoms, which resulted in an adverse living condition and eviction.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]. NRC otherwise denies the allegations contained in Paragraph 78 (84) of the Second Amended Complaint, Statement of Claim(s) section.**

79. **[sic, should be 85]** These intolerable living conditions amounted to an eviction taking place against the plaintiff's.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]. NRC otherwise denies the allegations contained in Paragraph 79 (85) of the Second Amended Complaint, Statement of Claim(s) section.**

80. **[sic, should be 86]** Accordingly, Defendant's NRC and Dominium Management are liable to the Plaintiff for economic and non-economic damages.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]. NRC otherwise denies the allegations contained in Paragraph 80 (86) of the Second Amended Complaint, Statement of Claim(s) section.**

81. **[sic, should be 87]** At this time the plaintiffs Tonya McDaniel and Ashley McDaniel both request the following damages. We respectfully pray for the court to grant the following damages as a relief: $1,000,000 for exemplary damages to be awarded to the victims due to the conduct of the defendants who caused the victims harm in a willfully malicious, oppressive, fraudulent, wanton, or grossly reckless manner. For punitive damages to be imposed so that the defendants will no longer engage in the illegal behavior alleged in this case in the future, to add more regulations in place for staff to properly mediate with black tenants. Injunctive relief to clear the adverse Section 8 housing record and the North Range Crossing housing file of any and all false claims, disability bias, and discriminatory statements and evictions. $1,000,000 for moral damages including physical pain and suffering, mental anguish, fright, serious anxiety, besmirched reputation, wounded feelings, moral shocks, social humiliation, and depression caused by the  eviction. $2,000,000 in compensatory damages as a result of severe emotional distress from the eviction. A letter of apology, and legal reversal of the evictions on the plaintiffs record. $2,000,000 in money damages for emotional distress, $2,000,000 in money damages for physical distress and public humiliation, Statutory damages, lost wages, hotel costs, storage unit costs, and rental costs occurred as a result of the unlawful discriminatory retaliation eviction and loss of section 8 voucher.

**[CLAIMS REGARDING PLAINTIFFS' RETALIATION CLAIMS UNDER THE FHA WERE DISMISSED PER THE COURT'S FEBRUARY 24, 2023 ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, DOC #77]. NRC otherwise denies the allegations contained in Paragraph 81 (87) of the Second Amended Complaint, Statement of Claim(s) section.**

## **AFFIRMATIVE DEFENSES**

1.   NRC denies any allegation set forth in the Second Amended Complaint that has not been specifically admitted herein.

2.   The Court does not have jurisdiction over NRC because Plaintiffs have failed to serve NRC with the Second Amended Complaint, and NRC by answering the Second Amended Complaint has not waived this defense pursuant to F.R.C.P. 12(b).

3.   Plaintiffs' allegations fail to state a claim upon which relief can be granted.

4.   Plaintiffs' claims fail for lack of any damages sustained, and in the alternative, failure to mitigate any damages sustained.

5.   Plaintiffs' claims are barred by the doctrines of laches, waiver, unclean hands, compromise, and/or release.

6.   Plaintiffs are in pari delicto and thus not entitled to any remedy for their claims.

7.   Plaintiffs' claims are barred by Plaintiffs' prior knowledge of and acquiescence to the facts of which they complain.

8.   Plaintiffs' claims are barred by the doctrine of ratification or consent.

9.   Plaintiffs' claims are barred by the doctrine of equitable estoppel.

10. Plaintiffs' claims may be reduced or barred by their failure to substantially perform.

11. Plaintiffs failed to meet required conditions precedent, and their claims are limited or barred.

12. Plaintiffs' claims are barred by State and Federal Statutes.

13. Plaintiffs' claims are barred in part based on illegality.

14. Plaintiffs' claims are barred at least in part by res judicata.

15. NRC reserves the right to amend this Answer and add additional defenses as warranted by subsequent investigation and ongoing discovery in this lawsuit.

## **CONCLUSION**

WHEREFORE, NRC respectfully requests this Court enter judgment against the Plaintiffs for an amount to be determined at trial, with prejudgment and post judgment interest thereon at the maximum legal rate per year, plus court costs, expert costs and reasonable attorneys' fees, and for such other and further relief as the Court deems just and proper.

Dated this 24th day of March 2023.


**ROBINSON & HENRY, P.C.**


s/*Victoria E. Edwards*
Victoria E. Edwards, Esq.
Eric J. Neeper, Esq.
1805 Shea Center Drive
Highlands Ranch, Colorado
Telephone: (303) 688-0944
Facsimile: (303) 470-0620
E-mail: victoria.edwards@robinsonandhenry.com
eric@robinsonandhenry.com
Attorneys for Defendant NRC

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 24th day of March 2023, a true and correct copy of the foregoing **DEFENDANT'S ANSWER** was filed electronically via the CM/ECF system and a copy of the foregoing will be served and mailed, via email and U.S. Mail at the address on currently on file with the Court, postage prepaid, to the pro se Plaintiffs, as follows:

Ashley McDaniel
14270 East 104th Avenue
Mailbox #72
Commerce City, CO 80022
Email: ashaleyreneemcd@gmail.com

Tonya McDaniel
14270 East 104th Avenue
Mailbox #72
Commerce City, CO 80022
Email: mommat2real@gmail.com


                                                  **ROBINSON & HENRY, P.C.**


                                             s/*Joyce M. Vigil*
                                           Joyce M. Vigil | Senior Paralegal